## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,**
1299 Zurich Way
Schaumburg, IL 60196,

      Plaintiff,

      v.

**MAIN STREET PHASE II, L.P.**
120 W. Germantown Pike
Plymouth Meeting, PA 19462

and

**MAIN STREET PHASE III, L.P.,**
120 W. Germantown Pike
Plymouth Meeting, PA 19462

      Defendants.

Case No: 2:21-CV-3576

## <u>COMPLAINT</u>

Plaintiff, Fidelity and Deposit Company of Maryland, by and through its undersigned counsel, files this Complaint against Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P., and in support thereof alleges as follows:

### THE PARTIES

1.      Plaintiff, Fidelity and Deposit Company of Maryland ("the Surety"), is a corporation organized and existing under the law of the state of Illinois, with its principal place of business in Schaumburg, Illinois. The Surety is registered to do business in the Commonwealth of Pennsylvania.

2.      Defendant Main Street Phase II, L.P. is a limited partnership organized and existing under the law of the Commonwealth of Pennsylvania, with its principal place of business located at 120 W. Germantown Pike, Plymouth Meeting, PA 19462.

3.      Defendant Main Street Phase III, L.P. is a limited partnership organized and existing under the law of the Commonwealth of Pennsylvania, with its principal place of business located at 120 W. Germantown Pike, Plymouth Meeting, PA 19462.  Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. shall be referenced herein as "the Defendants" or "the Owner."

## JURISDICTION AND VENUE

4.      Upon information and belief, none of the partners that comprise Main Street Phase II, L.P. are citizens of Illinois.

5.      Upon information and belief, none of the partners that comprise Main Street Phase III, L.P. are citizens of Illinois.

6.      Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over the claims asserted in this action because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and, upon information and belief, there is complete diversity of citizenship between the parties.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, a substantial amount of the property that is the subject of this action is located in this judicial district, and, upon information and belief, the Defendants reside in this judicial district and are residents of the Commonwealth of Pennsylvania.

## BACKGROUND

### A.    The Project

8.    The Ashbridge Apartments, also known as Multi-Family Residential Development – Main Street at Exton TMP # 41-5-131.1, 41-5-138.6, 41-5-138.7, 415-5-138.8, 41-5-138.9 & 138.13, is a multifamily residential and commercial property developed by the Owner and located at the Main Street at Exton shopping center in Exton, Pennsylvania ("the Project").

9.    On or about September 17, 2018, the Owner executed a written contract with Jeffrey M. Brown Associates, LLC ("JMB") to construct the Project ("the Base Contract").

### B.    The Performance Bond

10.    At the request of JMB in connection with its work under the Base Contract, the Surety issued Performance Bond No. 9281093 with the penal sum of $31,860,715.00, naming the Owner as obligees ("the Bond"). Attached hereto as **Exhibit A** is a true and correct copy of the Bond.

11.    The Bond contains certain obligations of the Owner prior to the Surety's obligation to perform, including that the Owner must "pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract." (Exhibit A, § 3.3.)

12.    As stated in the Bond, if (i) the Contractor [JMB] were to be in default under the Base Contract, (ii) the Owner declares JMB in default and notifies the Surety of such default, and (iii) the Owner commits the Balance of the Contract Price to the Surety, then, provided there is no ongoing Owner Default under the Base Contract, the Surety may elect to remedy the Contractor Default by selecting among several performance options, including but not limited to, by arranging

"for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract." (Exhibit A, §§ 3, 5.)

13.     The Bond further provides in this regard that, if the conditions stated in Paragraph 14 above occur and the Surety elects to arrange for the Contractor to perform and complete the Base Contract, the Surety's obligations remain "[s]ubject to the commitment by the Owner to pay the Balance of the Contract Price." (Exhibit A, § 7.)

      **C.**     **The Settlement and Dedication of Contract Balance Agreement**

14.     On or about June 25, 2020, the Owner sent a Notice of Default to JMB, declaring JMB in default of the Base Contract.

15.     On or about June 25, 2020, the Owner sent a Notice of Contractor Default and Request for Conference to the Surety, which declared JMB in default under the Base Contract and requested a conference with the Surety and JMB under § 3.1 of the Bond.

16.     On or about July 16, 2020, the Surety, the Owner, and JMB participated in a conference under § 3.1 of the Bond.

17.     In July 2020, the Surety began funding JMB's performance under § 5.1 of the Bond, subject to a full reservation of rights.

18.     On or about August 18, 2020, the Surety forwarded the Owner an irrevocable letter of direction executed by JMB that directed all outstanding and future payments due under the Base Contract to be paid to the Surety.

19.     On or about November 3, 2020, the Surety, the Owner, and JMB entered into an agreement entitled Liquidated Damages Settlement Agreement and Dedication of Contract Balance (the "Settlement and Dedication of Contract Balance Agreement"). Attached hereto as

**Exhibit B** is a true and correct copy of the Settlement and Dedication of Contract Balance Agreement.

20.     Section II.9 of the Settlement and Dedication of Contract Balance Agreement provides that the Surety would advance funds to JMB, up to the penal sum of the Bond, to assist JMB in completing the Base Contract.  (Exhibit B, § II.9.)

21.     The Surety has fully satisfied its obligation to finance the Project, providing over $23 million in additional Project financing for JMB to complete the Base Contract for the Owner.

22.     As a result of the Surety's financing of the construction, the residential units at the Project have been available for the Owner to lease and units have been occupied by tenants since September 2020.

23.     The Settlement and Dedication of Contract Balance Agreement also called for the Surety to pay $6,000,000.00 to the Owner in settlement of its then pending claim for liquidated damages for Project delay ("the Liquidated Damages Settlement").

24.     The parties agreed in the Settlement and Dedication of Contract Balance Agreement that the Owner would receive the Liquidated Damages Settlement in two ways: (i) by the Owner retaining twenty-nine percent (29%) of each pending unpaid and future progress payment, with the balance to be paid to the Surety while the construction work was completed, for a total Owner withholding equal to $3,596,754.00; and (ii) the Surety would pay $2,403,246.00 to the Owner at the time of Final Completion of the Project, the Owner having by then paid the remaining Base Contract funds (any unpaid balance and retainage) to the Surety, or deposited the remaining Base Contract funds (any unpaid balance and retainage) to an agreed escrow account ("the Escrow Account") for distribution following Final Completion and resolution of any existing disputes. (Exhibit B, §§ II.6, II.7.)

25.     Specifically, in Section II.5 of the Settlement and Dedication of Contract Balance Agreement, the parties confirmed and stipulated that the remaining Base Contract funds, including retainage, totaled $14,999,042.00 ("the Unpaid Balance of Contract"). (Exhibit B, § II.5).

26.     The parties further confirmed and stipulated that the Unpaid Balance of Contract consisted of (i) future billings and amounts previously withheld by the Owner, totaling $12,595,796.00; and (ii) retainage amounting to $2,403,246.00 ("the Retainage").

27.     With respect to the $12,595,796.00 portion of the Unpaid Balance of Contract that was not Retainage, the Surety was to be paid those funds by the Owner through monthly progress payments from which the Owner was to withhold twenty-nine percent (29%) of each progress payment for a total of $3,596,754.00 as part of the Liquidated Damages Settlement, leaving a total of $8,999,042.00 to be paid to the Surety.

28.     In Section II.7 of the Settlement and Dedication of Contract Balance Agreement, the Owner confirmed that, at the time of Final Completion, it will have paid all of the Unpaid Balance of Contract (except the amount due to the Owner for the Liquidated Damages Settlement) either to the Surety or into the Escrow Account, such that it would no longer be holding any funds dedicated to the Surety. At the time of Final Completion, no funds dedicated to the Surety could be in the Owner's possession, but instead, the Owner was obligated to have released the funds, by either: (i) paying the money to the Surety; or (ii) depositing the funds in the established Escrow Account for future distribution upon resolution of disputed liquidated damages or disputed withholdings as set forth elsewhere in the Settlement and Dedication of Contract Balance Agreement.

29.     Section II.7 of the Settlement and Dedication of Contract Balance Agreement specifically provides, in part:

> When Final Completion is achieved, the Owner will either release the Retainage and any unpaid Contract Balance to the Surety, or a portion thereof that the Owner determines is due and owing, and deposit the remaining Retainage amount and unpaid Contract Balance, if any, into an escrow account maintained by a third party escrow agent selected by the parties ("Escrow Account"), **such that the full amount of Retainage and unpaid Contract Balance has either been paid to the Surety and/or into the Escrow Account**.

(Exhibit B, § II.7 (emphasis added).)

30.     With respect to the Owner's obligation to pay the Unpaid Balance of Contract to the Surety, the Settlement and Dedication of Contract Balance Agreement states: "Owner dedicates the unpaid Contract Balance to the Surety, except as detailed in Section 7 above." (Exhibit B, § II.10.)

31.     Section II.8 of the Settlement and Dedication of Contract Balance Agreement provides for the establishment of the Escrow Account to secure any portions of the Unpaid Balance of Contract dedicated but not paid to the Surety until any disputes between the Surety and the Owner are resolved, stating as follows:

> The Parties have agreed that the firm of Land Services USA will serve as the escrow agent to retain escrowed funds, in an interest-bearing account, subject only to release by agreement of Owner and Surety or by court order enforcing an arbitration award as provided in Sections 14 and 15 below.

(Exhibit B, § II.8.)

32.     If, at Final Completion, all of the remaining Unpaid Balance of Contract due the Surety was not paid directly to the Surety as provided in Section II.7, then the funds – required to be in the Escrow Account – would be allocated according to the security and dispute provisions of Sections II.14 and II.15 of the Settlement and Dedication of Contract Balance Agreement. (Exhibit B, §§ II.14, II.15.)

33.     Section II.14 of the Settlement and Dedication of Contract Balance Agreement provides that there would be a meet and confer meeting within thirty (30) days of Final Completion,

7

after which undisputed funds in the Escrow Account, would be paid, in whole or in part, to the appropriate party or parties within thirty (30) days thereafter:

> Within thirty (30) days of Final Completion, the parties will meet and confer regarding the release of funds deposited into the Escrow Account. If there is no dispute or there is a dispute only as to a portion of the funds, then those funds which are not in dispute shall be disbursed to the appropriate party or parties within thirty (30) days per the Contract and this Agreement. If there is a dispute among the parties as to some or all of the funds deposited in the Escrow Account, the parties will follow the procedure contained in Section 15 below regarding the disputed funds.

(Exhibit B, § II.14.)

34.     Section II.15 of the Settlement and Dedication of Contract Balance Agreement, entitled Dispute Procedure, contains the parties' agreed upon procedure and forum for resolving disputes about the proper distribution of the funds that the Owner <u>has paid into the Escrow Account</u>. Of particular significance in this matter, the Dispute Procedure allows for challenging both Owner liquidated damages assessments and the basis for withholding other funds that are paid into the Escrow Account. The Dispute Procedure states in full:

> If any dispute arises among the Owner, the Surety, and/or JMB with regard to liquidated damages that are assessed and paid into the Escrow Account under this Agreement and/or the basis for withholding funds that are paid into the Escrow Account under this Agreement, then the following dispute resolution procedures will apply:
>
>> (a) if the amount in controversy is under $500,000.00, the dispute will be submitted to binding arbitration before a single arbitrator selected by mutual agreement of the Parties and conducted in accordance with the Construction Industry Rules of the American Arbitration Association ("AAA");
>
>> (b) if the amount in controversy is over $500,000.00, the dispute will be submitted to binding arbitration before a panel of three arbitrators selected by agreement of the Parties and conducted in accordance with the Construction Industry Rules of the American Arbitration Association ("AAA");
>
>> (c) venue shall be in Philadelphia, Pennsylvania or such other location as mutually agreed to by the parties;

(d) all AAA costs and fees for arbitration shall be split 50-50 between the parties. Each party shall bear its own legal fees;

(e) The award rendered by a proper awarding authority pursuant to this Section 15 shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

(Exhibit B, § II.15.)

### D. The Owner Has Disputed Its Obligation to Fund the Escrow Account Pending Resolution of Disputes

35.     As stated above, the Surety has provided over $23 million in financing to complete the Owner's Project. Indicative of the Project's completion, the last payment application reviewed and approved by the Project's architect of record **but not paid**, dated April 30, 2021, confirmed that the work was 99.53% complete.

36.     As of the date of this filing, the Project has achieved Final Completion but for disputed items, as well as limited corrective work identified late in the punch list process and requiring coordination with the Owner that JMB has committed to perform.

37.     After the Settlement and Dedication of Contract Balance Agreement was signed in November 2020, the Owner paid previously held amounts and only one current payment application for work performed in November 2020. Since December 2020, the Surety was made to singularly finance the work as the Owner has not paid any payment applications for monthly progress payments submitted between December 2020 and the present date of this filing in August 2021 – a period of over seven months.

38.     Specifically, since December 2020, JMB has submitted applications for payment in the total amount of $7,167,708.63, all of which the Owner has not paid. Accounting for the Owner's twenty-nine percent (29%) withholdings for the Liquidated Damages Settlement, a

remaining balance (including Retainage) of $7,126,760.00 is owed to the Surety ("the Balance Due the Surety").

39.     Instead, the Owner has assessed liquidated damages based on an erroneous and self-serving Substantial Completion standard and has manufactured disputed deficiencies to which it has attached grossly inflated claims in an attempt to justify withholding all payment since December 2020.

40.     The Surety disputes the Owner's assessment of liquidated damages and maintains that JMB achieved Substantial Completion in accordance with the milestones established in the Liquidated Damages Settlement and Dedication of Contract Balance Agreement. The Surety also maintains that JMB is entitled to time extensions based on delays resulting from the COVID-19 pandemic and concurrent delays for which the Owner is responsible due to change order work directed by the Owner.

41.     The Surety also disputes the Owner's ill-conceived and inflated withholdings for alleged defects.

42.     The Owner must now deposit amounts subject to dispute into the Escrow Account, as the Owner agreed to do in the Settlement and Dedication of Contract Balance Agreement.

43.     As disputes exist regarding the Balance Due the Surety, the Owner has been obligated under Section II.7 to pay the Balance Due the Surety (if not to the Surety) into the Escrow Account pending resolution of those disputes in accordance with the dispute provisions of Sections II.14 and II.15 of the Settlement and Dedication of Contract Balance Agreement.

44.     Despite the clear and explicit provisions of the Settlement and Dedication of Contract Balance Agreement requiring the Owner to either pay all of the Balance Due the Surety to the Surety or the Escrow Account, the Owner has not fulfilled either obligation.

10

45.     The Owner has not paid the Balance Due the Surety of at least $7,126,760.00 to the Surety.

46.     The Owner has not deposited the Balance Due the Surety of at least $7,126,760.00 into the Escrow Account.

47.     The Owner maintains full possession and control of the Balance Due the Surety.

48.     Rather than satisfy its obligations under Section II.7 of the Settlement and Dedication of Contract Balance Agreement, the Owner has manufactured an interpretation of the agreement that allows it to **control the disposition of the Balance Due the Surety** while disputes exist regarding the status of Final Completion or the proper distribution of those funds.

49.     The Owner is relying on its contrived interpretation of the Settlement and Dedication of Contract Balance Agreement to assert control over the Project funding until it unilaterally deems the work Finally Complete regardless of good faith disputes. This is contrary to the disputes process, which provides for the resolution of disputes "with regard to liquidated damages that are assessed and paid into the Escrow Account under this Agreement and/or the basis for withholding funds that are paid into the Escrow Account under this Agreement." (Exhibit B, § II.15)

50.     The Owner's interpretation of the Settlement and Dedication of Contract Balance Agreement is as also in conflict with Section II.7, Section II.8 and the Dispute Procedures of Sections II.14 and II.15, which all require the Owner to have deposited disputed portions of the Unpaid Balance of Contract in the Escrow Account prior to engaging in arbitration – the agreed upon resolution mechanism for challenging "the basis for withholding funds that are paid into escrow" and the forum for determining the proper distribution of those funds.

51.     By its improper interpretation of the Settlement and Dedication of Contract Balance Agreement, the Owner is preventing an eventual arbitrator or panel of arbitrators from affording the relief that Sections II.8, II.14 and II.15 of the Settlement and Dedication of Contract Balance Agreement envision – namely, the proper distribution of amounts held in escrow.

52.     The obligation to transfer disputed portions of the Unpaid Balance of Contract to the Escrow Account is a material term of the Settlement and Dedication of Contract Balance Agreement because it secured the Unpaid Balance of Contract with a third party during any dispute among the parties, thus ensuring that substantial funds dedicated to the Surety would be available to pay the Surety should it prevail in any dispute and thereby offset the improper additional financing burden thrust on the Surety.

53.     By its improper interpretation of the Settlement and Dedication of Contract Balance Agreement, the Owner also is irreparably harming the Surety by not depositing the Balance Due the Surety in the Escrow Account as the Owner is, upon information and belief, a special purpose entity existing solely for the development of the Project and it maintains no other liquid assets to pay the Surety the Balance Due the Surety – funds which it expressly dedicated to the Surety – in the event that the dispute resolution process determines that the Surety is entitled to the Balance Due the Surety, in whole, or in part.

54.     If the Owner does not pay the Balance Due the Surety into the Escrow Account during the pendency of the parties' dispute regarding the Project, the Surety will remain at substantial risk that the Owner will not have any liquid assets by which to compensate the Surety for its performance of the Settlement and Dedication of Contract Balance Agreement and the Bond, a circumstance which is exactly what the Escrow Account was established to avoid.

55.     The Surety has satisfied all conditions precedent necessary to filing each of the causes of action raised in this Complaint.

## COUNT ONE
## DECLARATORY JUDGMENT

56.     The Surety incorporates by reference Paragraphs 1 through 55 as though set forth herein in full.

57.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the Surety and the Owner.

58.     The Surety contends that, under the Settlement and Dedication of Contract Balance Agreement, the Owner is contractually obligated to release the Balance Due the Surety from its possession and/or control in one or both of only two ways: (i) pay the entirety of the Balance Due the Surety to the Surety; or (ii) if the Owner contends that the entirety of the Balance Due the Surety is not due and owing under the construction contract, then it must pay any undisputed portion of the Balance Due the Surety to the Surety and deposit the remainder into the established Escrow Account.

59.     Once the disputed portion of the Balance Due the Surety is in the Escrow Account, the parties are to perform their meet and confer obligations under Section II.14, and if a dispute remains concerning the funds in the Escrow Account, then the parties are to arbitrate that dispute in accordance with Section II.15 of the Settlement and Dedication of Contract Balance Agreement

60.     Despite the clear language of the Settlement and Dedication of Contract Balance Agreement stated above, the Owner contends that it is permitted to indefinitely control the Balance Due the Surety rather than placing the Balance Due the Surety in the Escrow Account subject to the disputes procedures of the Settlement and Dedication of Contract Balance Agreement.

61.     While the Surety denies the existence of any appropriately assessed liquidated damages or amount properly withheld for alleged construction defects or alleged losses to the Owner arising from any construction defects, the sole controversy in this action is between the Owner and the Surety regarding the appropriate handling of disputed monies and not the ultimate determination of whether the Owner's assessment of liquidated damages or claims of construction defects are valid or invalid.

62.     The controversy is limited to the issue of contractual interpretation and whether the Owner has a contractual obligation under the Settlement and Dedication of Contract Balance Agreement and the Bond to place the Balance Due the Surety into the Escrow Account while the parties arbitrate the merit (or lack thereof) of the Owner's claims.

63.     An actual controversy therefore has arisen and now exists between the Surety and the Owner regarding the interpretation and performance of the Settlement and Dedication of Contract Balance Agreement and the Bond.

64.     The Court's resolution of this controversy between the Owner and the Surety will guide their future conduct by: (i) determining whether and when the Owner must deposit the Balance Due the Surety into the Escrow Account under the Settlement and Dedication of Contract Balance Agreement; (ii) allowing the arbitration between the Surety and the Owner under Section II.15 of the Settlement and Dedication of Contract Balance Agreement to proceed; and (iii) permitting the arbitrator(s) to award the relief (distribution of the Escrow Account) that Section II.15 requires of the arbitration process.

**WHEREFORE**, Plaintiff Fidelity and Deposit Company of Maryland respectfully requests that this Honorable Court enter judgment declaring that, under the terms of the Settlement

and Dedication of Contract Balance Agreement, Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P.:

(1) are contractually prohibited from controlling and/or holding the Balance Due the Surety;

(2) must deposit the entirety of the Balance Due the Surety into the Escrow Account pending the dispute resolution required by Sections II.14 and II.15 of the Settlement and Dedication of Contract Balance Agreement; and

(3) award such other and further relief as the Court deems just and proper.

## COUNT TWO
## INJUNCTION

65.     The Surety incorporates by reference Paragraphs 1 through 64 as though set forth herein in full.

66.     The Surety seeks injunctive relief that requires the Owner to deposit the Balance Due the Surety into the Escrow Account to remedy the irreparable harm that the Surety is currently experiencing every day in which the Balance Due the Surety remains in the possession of the Owner and not in the Escrow Account as the Settlement and Dedication of Contract Balance Agreement requires.

67.     By the express provisions of the Settlement and Dedication of Contract Balance Agreement, the Owner has been obligated to deposit the Balance Due the Surety into the Escrow Account subject to the dispute resolution provisions of Sections II.14 and II.15.

68.     The entire purpose of the Settlement and Dedication of Contract Balance Agreement was to ensure that the Unpaid Balance of Contract was available to assist in financing the remaining work and make certain that any disputed funds were preserved through an escrow account. The Escrow Account removed the risk of an insolvent Owner and ensured that liquid funds would be held by a neutral third party during the pendency of any dispute regarding the

15

distribution of the Unpaid Balance of Contract so that, once that dispute is resolved, funds exist and are available to be paid to the Surety if the Surety prevails.

69.     By using disputes that it has created as the basis for refusing to contribute the Balance Due the Surety, the Owner is nullifying the necessary protection expressly bargained for by the Surety in the Settlement and Dedication of Contract Balance Agreement, thereby changing the status quo for its own betterment and shifting to the Surety the significant risk of Owner insolvency during the pendency of the dispute.

70.     Unless injunctive relief is granted and the Owner is ordered to deposit the Balance Due the Surety into the Escrow Account, the Surety will suffer irreparable harm in that it will be deprived of the specific security protections it bargained for in the Settlement and Dedication of Contract Balance Agreement against the risk of non-payment, which cannot be remedied by any post hoc judgment.

71.     Unless injunctive relief is granted and the Owner is ordered to deposit the Balance Due the Surety into the Escrow Account, the Surety also will suffer irreparable harm in that the binding arbitration process in Section II.15 will not conclude with the relief that Section II.15 requires.

72.     The Owner contractually acknowledged in the Settlement and Dedication of Contract Balance Agreement that any failure on its part to fund the Escrow Account would result in irreparable harm to the Surety, agreeing in Section III.7 that "[t]he parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof…" (emphasis added). (Exhibit B, § III.7.)

16

73.     No remedy at law exists for the Owner failing to deposit the disputed Balance Due the Surety into the Escrow Account during the pendency of the dispute regarding the distribution of the Balance Due the Surety.

74.     The Owner will not be harmed or prejudiced by the injunctive relief sought in this action because the Balance Due the Surety will simply be preserved by a third party and not in the possession of the Surety or any other interested party; to the contrary, Section II.8 only allows the release of funds from the Escrow Account "by agreement of Owner and Surety or by court order enforcing an arbitration award as provided in Sections 14 and 15 below." (Exhibit B, § II.8.)

75.     There is no possibility of harm to any third parties because, as Section II.8 of the Settlement and Dedication of Contract Balance Agreement provides, the Owner and/or Surety are only entitled to distribution of the funds in the Escrow Account at the conclusion of the agreed-upon arbitration process.

76.     The public interest is advanced by the injunctive relief requested because the public always has an interest in the judicial enforcement of contracts freely executed by sophisticated persons and entities.

**WHEREFORE**, Plaintiff Fidelity and Deposit Company of Maryland respectfully requests that this Honorable Court enter judgment granting the following permanent injunctive relief against the Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P:

(1) Requiring Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. to immediately deposit the Balance Due the Surety into the Escrow Account established by Section II.8 of the Settlement and Dedication of Contract Balance Agreement, if the Balance Due the Surety is not paid in its entirety to the Surety directly; and

(2) such other and further relief as the Court deems just and proper.

17

## COUNT THREE
## SPECIFIC PERFORMANCE

77.     The Surety incorporates by reference Paragraphs 1 through 76 as though set forth herein in full.

78.     As alleged in the preceding paragraphs of this Complaint, the Owner has failed to comply with its obligations under the Settlement and Dedication of Contract Balance Agreement by refusing to pay the Balance Due the Surety into the Escrow Account during the pendency of ongoing disputes regarding the distribution of those contract funds.

79.     As a result of the Owner's refusal to pay the Balance Due the Surety to the Surety or into the Escrow Account, the Surety cannot obtain the complete relief envisioned by the dispute resolution procedure in the Settlement and Dedication of Contract Balance Agreement because there are no funds in the Escrow Account to be awarded by an arbitration panel.

80.     As alleged in the preceding paragraphs of this Complaint, the Surety is suffering irreparable harm for which there is no adequate remedy at law as a result of the Owner's failure to pay the Balance Due the Surety to the Surety or into the Escrow Account.

81.     With respect to the obligation to pay the Balance Due the Surety to the Surety or into the Escrow Account, the Owner expressly acknowledged and agreed that irreparable damage would occur in the event that it did not perform its obligations in accordance with the terms of the Settlement and Dedication of Contract Balance Agreement and that the Surety would be entitled to specific performance of said terms. (Exhibit B, § III.7.)

82.     The Surety is entitled to judgment compelling the Owner to specifically perform according to the terms of the Settlement and Dedication of Contract Balance Agreement by paying the Balance Due the Surety into the Escrow Account if it is not paid in its entirety to the Surety.

**WHEREFORE**, Plaintiff Fidelity and Deposit Company of Maryland respectfully requests that this Honorable Court enter judgment:

(1) compelling the Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. immediately deposit the Balance Due the Surety into the Escrow Account established by Section II.8 of the Settlement and Dedication of Contract Balance Agreement, if the Balance Due the Surety is not paid in its entirety to the Surety directly; and

(2) such other and further relief as the Court deems just and proper.

Dated: August 11, 2021

Respectfully Submitted,

*/s Noah H. Charlson*

**BY:** _____

  Noah H. Charlson, Esq. (PA ID No. 89210)
  Charlson Braber McCabe & Denmark, P.C.
  1628 JFK Blvd., Suite 1803
  Philadelphia, PA 19103
  Tel: 215-447-7401
  noah@charlsonlaw.com

  *Attorneys for Plaintiff,*
  *Fidelity and Deposit Company of Maryland*

Of Counsel:

Christopher Brasco, Esq.
Noah R. Meissner, Esq.
WATT, TIEDER, HOFFAR & FITZGERALD, LLP
1765 Greensboro Station Pl., Suite 1000
Mclean, VA 22102