IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FIDELITY AND DEPOSIT COMPANY : 
OF MARYLAND, :
                                : No.  21-CV-3576
        Plaintiff, :
                                :
                                :
        v. :
                                :
MAIN STREET PHASE II, L.P.  and :
MAIN STREET PHASE III, L.P., :
                                :
        Defendants, :


## ORDER

AND NOW, this        day of         , 2021, upon consideration of Defendants Main

Street Phase II, L.P.'s and Main Street Phase III, L.P.'s Motion to Dismiss , or in the Alternative

to Stay, it is hereby Ordered that:

(1) the Motion is GRANTED; and

(2) the above captioned action is DISMISSED;

(3) in the alternative, the above captioned action is STAYED pending final adjudication in

the Chester County, Pennsylvania action captioned: Main Street Phase II, L.P. v. Jeffrey M. Brown

Associates, Inc., Fidelity and Deposit Company of Maryland, United Window & Door

Manufacturing, Inc. and 84 Lumber Company, No. 2021-07066-CT .


By the Court:


_____
                                J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT COMPANY : 
OF MARYLAND, : 
 : No. 21-CV-3576
     Plaintiff, : 
 : 
 : 
     v. : 
 : 
MAIN STREET PHASE II, L.P.  and : 
MAIN STREET PHASE III, L.P., : 
 : 
     Defendants. : 

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## OR IN THE ALTERNATIVE, TO STAY ACTION

Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P., by and through undersigned counsel, hereby move to dismiss this action under Fed. R.C.P. 19 for failure to join an indispensable party and for lack of subject matter jurisdiction.   Further, this action involves a dispute over monetary damages, which cannot support a claim for injunctive relief.   In the alternative, this action should be stayed pending final adjudication of the pending Chester County Action in which all parties to the contracts at issue  are present and all claims are being adjudicated.

WHEREFORE, Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. respectfully request that their Motion to Dismiss Plaintiff's Complaint be granted and that this action be dismissed, or in the alternative that this action be stayed pending final adjudication of the Chester County Action.

KAPLIN STEWART

/s/  Sandhya M. Feltes
Marc B. Kaplin, Esquire
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
mkaplin@kaplaw.com
sfeltes@kaplaw.com


Steven M. Coren, Esquire
Attorney ID No. 32140
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA  19103
(215) 735-8700
(215) 735-5170 facsimile
scoren@kcr-law.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIDELITY AND DEPOSIT COMPANY | : | |
| OF MARYLAND, | : | |
| | : | No. 21-CV-3576 |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| MAIN STREET PHASE II, L.P.  and | : | |
| MAIN STREET PHASE III, L.P., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY ACTION**

Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. ("**Owner**"), by and through undersigned counsel, respectfully submit their Memorandum of Law in support of Motion to Dismiss Plaintiff's Complaint.  As detailed herein, this action should be dismissed or, in the alternative, stayed pending final adjudication of the pending Chester County, Pennsylvania action.

## I.      INTRODUCTION

This action should be dismissed for lack of subject matter jurisdiction. Jeffrey M. Brown Associates, LLC ("**JMB**"), the contractor for the Construction Project at issue here,  is an integral part of the dispute between Owner and Plaintiff.  Full and complete litigation on the merits cannot be had without JMB.  Because JMB's joinder would divest this Court of diversity subject matter jurisdiction, this action should be dismissed and the parties allowed to proceed in the pending Chester County, Pennsylvania action, where all interested and necessary parties can adjudicate all related claims in one forum.  In the alternative, this action should be stayed pending final

adjudication of the pending action in Chester County, Pennsylvania, in which the interests of all parties and all claims arising from the Project are being litigated.

## II.      STATEMENT OF FACTS

Main Street Phase II, LP ("**Owner**"), a Pennsylvania limited partnership whose partners are citizens of the Commonwealth of Pennsylvania is the owner of a mixed residential and commercial development located in Exton, Chester County, Pennsylvania.[1]   The residential portion, also known as Ashbridge, is a luxury residential community consisting of six three to four story apartment buildings with amenities such as a pool, fully equipped gym and dog park ("**Project**").

<u>**THE CONSTRUCTION CONTRACT**</u>

JMB is a Pennsylvania limited liability company with its principal place of business located at 2337 Philmont Avenue, Huntington Valley, PA 19006.[2]   Upon information and belief, JMB's members are citizens of the Commonwealth of Pennsylvania.

On September 17, 2018, Owner and JMB entered into a Base Work Contract for the construction of three luxury apartment buildings, Buildings A, B and C, and amenities at the Project (the Base Work Contract, Addenda, Project Plans, Specification and Contract Documents are hereinafter referred to as the "**Construction Contract**").[3]   The Construction Contract requires JMB to perform all Work as required by the Project Plans, Specifications and other Contract Documents for the Original Contract Sum of $31,860,715.00.

---

[1] Main Street Phase III, LP merged into Main Street Phase II, LP on or about December 20, 2019.
[2] JMB's Certificate of Incorporation is attached hereto, incorporated herein and marked as **<u>Exhibit A.</u>**
[3] A true and correct copy of the Construction Contract (without exhibits, Plans, Specifications and other Contract Documents) is attached hereto, incorporated herein and marked as **<u>Exhibit B.</u>**

On or about April 30, 2019, Owner and JMB agreed to add the construction of three additional luxury apartment buildings, Buildings D, E and F, to the scope of JMB's work under the Construction Contract for the additional sum of $13,245,246.00.[4]

The Construction Contract  and Change Order No. 002 contain deadlines for JMB's completion of various Critical Path Items, including dates for the completion of each Building ("**Critical Path Deadlines**").  JMB agreed that Buildings A, B, C, D, E and F would be one-hundred percent complete, with completed punch lists and certificates of occupancy, by the following dates:  Building A- March 16, 2020; Building B – March 16, 2020;  Building C – April 1, 2020;  Building D – March 25, 2020; Building E – April 20, 2020; and Building F – May 18, 2020.

Owner and JMB agreed that time was of the essence.  Construction Contract § 3.1.  Owner and JMB also agreed that it would be difficult to ascertain and impractical to fix the actual damages suffered by Owner as a result of JMB's failure to timely complete the Work.  *Id*.  As a result, Owner and JMB agreed that liquidated damages would be fair and reasonable compensation to Owner for JMB's default of the Critical Path deadlines.  *Id*.

The Construction Contract authorizes Owner to withhold Contract funds to protect itself from loss due to, *inter alia*: (a)  defective/non-conforming Work not remedied; (b)  damage to the Owner or another contractor;  (c) reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; (d) failure to carry out the Work in accordance with the Contract Documents; and (e) any claims which Owner may have against JMB under or in connection with

---

4 A true and correct copy of Change Order No. 002 (without exhibits) is attached hereto, incorporated herein and marked as **Exhibit C**.

the Construction Contract, including for professional services, design services, costs, damages and losses. Construction Contract, Construction Contract, §9.5.1 – §9.5.8.

## F&D'S PERFORMANCE AND PAYMENT BONDS

On October 1, 2018, Plaintiff F&D, as Surety, and JMB, as principal, provided Owner, as Obligee, with Performance Bond No. 9281093 in the original penal sum of $31,860,715.00 ("**Performance Bond**")[5].  The penal sum of the Performance Bond subsequently increased as a result of approved additive Change Orders which increased the Contract Sum.

The Performance Bond states that: "[t]he Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the Performance of the Construction Contract, which is incorporated herein by reference". Performance Bond, §1.  The Performance Bond also obligates F&D to correct JMB's defective/non-conforming work, complete the Construction Contract, pay Owner its liquidated damages,  and pay Owner all legal, professional services, design services and other costs caused by JMB's delayed performance.  Performance Bond, §7.

On October 1, 2018, F&D also issued Payment Bond No. 9281093 in the original amount of $31,860,715.00.[6]  The Payment Bond states that F&D  and JMB will be jointly and severally liable to Owner for labor, materials and equipment furnished in connection with JMB's performance of the Construction Contract.  Payment Bond, §1.

## JMB'S INITIAL DEFAULT OF THE CONSTRUCTION CONTRACT

Between September 2018 and early 2020 Owner paid JMB approximately $30 million for JMB's Work on the Project.  However, in 2020, it became clear that JMB was in default of many provisions of the Construction Contract.  JMB had not completed any of the six residential

---

[5] A true and correct copy of the Performance Bond is attached hereto, incorporated herein and marked as **Exhibit D**.
[6] A true and correct copy of the Payment Bond is attached hereto, incorporated herein and marked as **Exhibit E**.

buildings by the Critical Path Deadlines, significant portions of JMB's Work was defective/non-conforming and JMB was not paying some of its subcontractors and suppliers. JMB did not correct its defective/non-conforming Work or complete its Work despite a number written notices from Owner.

On June 25, 2020, Owner issued a Notice of Default to JMB.[7]   On the same date, Owner provided Notice of Contractor Default to F&D and Owner demanded that F&D correct and complete JMB's Work on the Project as required by the Performance Bond.[8]

### THE LIQUIDATED DAMAGES SETTLEMENT AGREEMENT

Between July, 2020 and November, 2020, Owner, JMB and Plaintiff, through counsel, engaged in lengthy negotiations regarding the completion of JMB's Work on the Project, Owner's liquidated damages, and  F&D's obligations under the Performance Bond and Payment Bond.   On November 2, 2020, Owner, JMB and F&D entered into a Liquidated Damages Settlement Agreement and Dedication of Contract Balance ("**Agreement**").[9]  The primary purposes of the Agreement were to ensure that: (1) JMB would complete the Project and perform all of its obligations under the Construction Contract in accordance with the Contract Documents (Agr. p.1); (2) F&D would  advance funds to JMB to assist JMB in fulfilling its obligations under the Contract (Agr., §II.8); (3) Owner would receive $6 million in liquidated damages accrued through the date of the Agreement (Agr., §II.6); (4) the Substantial Completion deadlines would be extended to dates agreed upon by Owner, F&D and JMB; and (5) Owner would be compensated

---

7  A true and correct copy of the Notice of Default is attached hereto, incorporated herein and marked as **Exhibit F**.
8  A true and correct copy of the Notice of Contractor Default and Request for Conference is attached hereto, incorporated herein and marked as **Exhibit G.**
9 The Liquidated Damages Settlement Agreement and Dedication of Contract Balance is attached hereto, incorporated herein and marked as **Exhibit H**.

Case 2:21-cv-03576-WB   Document 2   Filed 09/08/21   Page 9 of 25

with additional liquidated damages should JMB fail to achieve the new Substantial Completion deadlines.

Under the Agreement, JMB and F&D agreed to achieve Substantial Completion[10] of Buildings A, B and C by January 10, 2021 and Substantial Completion of Buildings D, E and F and the entire Project by April 10, 2021.  Agr., §II.11, §II.12. [11]   JMB, Owner and F&D agreed that time was of the essence and that Owner would be entitled to liquidated damages if these Substantial Completion deadlines were not achieved by JMB.   Agr., §II.11, §II.12.

In order for JMB's Work to be deemed Substantially Complete,  the Construction Contract requires that JMB's Work must*, inter alia*, (a) be completed in accordance with the Contract Documents, including Project plans and specifications;  (b) be in such a condition that the Project (or relevant phase) is capable of being occupied for its intended purposes without any further work necessary for completion of the same other than normal 'punch list' items which do not unreasonably interfere with use or occupancy; (c) meet all contract requirements for Substantial Completion; and (d) the Work remaining to be performed is **minor in nature**. Construction Contract, §9.8.1, §9.8.1.1 and §9.8.2.

Particularly important, the Agreement did not supplant the Construction Contract or Construction Documents.   Rather, F&D, JMB and Owner agreed that the Construction Contract remained in full force and effect:

> 18.  **Agreements Remain in Effect**:  Other than as modified herein, the Contract, Performance Bond, and Payment Bond remain in full force and effect.  The Indemnity Agreement among Surety, JMB and its individual indemnitors remains in full force and effect.

---

[10] Substantial Completion is a defined term under the Construction Contract.  The Agreement did not alter or amend the definition of Substantial Completion or the requirements to reach Substantial Completion as contained in the Construction Contract..

[11] Time is of the essence with regard to all dates set forth in the Agreement.  Agr. §III.6.

Agr., §§II.18 (emphasis in original).  Further, Owner  reserved all of its rights under the Contract:

> **WHEREAS**, in a good faith attempt to complete the Project and JMB's obligations under the Contract, the Parties agree to the following terms, and other than as addressed herein, the Parties reserve and do not waive any rights, remedies or defenses under the Contract, Performance Bond, Payment Bond or at law or equity.

Agr., §I.

## JMB'S DEFECTIVE/NON-CONFORMING WORK AND JMB'S FAILURE TO SUBSTANTIALLY COMPLETE THE PROJECT

Beginning in July, 2020, F&D elected under the Performance Bond to provide financial and project management assistance to JMB.  JMB remained the Contractor on the Project and remains the entity primarily responsible for completing all Work under the Construction Contract and correcting all defective and non-conforming Work.  Plaintiff F&D is the guarantor of JMB's Work through Plaintiff's Performance Bond.  However, as of January, 2021, JMB's defective, non-conforming, incomplete and untimely Work had not been resolved or alleviated by F&D's involvement.

As of February, 2021, JMB's defective/non-conforming Work in Buildings A, B and C included, but was not limited to: non-conforming gas manifold piping, windows with air infiltration, windows with failed thermal glass and silicone coated glazing, elevator damage and defects, non-conforming duplex receptacles, non-conforming balcony fire sprinklers, defective/non-conforming lint traps and many water leaks in multiple locations.

On March 2, 2021, Owner provided JMB and F&D with an Open Items List which identified thirty-one significant items of JMB's defective Work, a number of which had been unresolved for many months and required immediate attention.

By June, 2021, Owner provide JMB and F&D with an Open Items List which identified over seventy major items of defective/non-conforming Work which had been unresolved for many

months, required immediate attention and have yet to be resolved.  These include, but are not limited to:

- Air infiltration in every window in every residential unit due to the installation of windows that do not comply with Contract specifications;
- Building A gas meter feeds are not hard-piped;
- Floor drains in first floor mechanical closets were not installed in the proper locations in approximately 41 units in Buildings A, B, C, D, E and F;
- JMB did not install dryer lint traps per plans and specifications;
- Leaks due to faulty plumbing connections and other defective plumbing work located throughout the Project impacting tenants.

On June 16, 2021, Marlin E, Buckley, a construction expert with over forty-five years in the construction industry, issued a  Vinyl Windows Deficiencies Expert Report after conducting a survey of every window at the Project ("**Windows Report**").[12]   As detailed in the Windows Report, the windows installed by JMB were defective, resulting in significant air infiltration into the residential units.

At the same time, an updated Remedial Construction Cost Estimate was provided to JMB and F&D, which, in addition to the window defects,  detailed additional defective/non-conforming Work performed by JMB including, but not limited to, damaged elevator components,  and balcony fire sprinkler heads and dryer lint traps which did not comply with Project plans and specifications.[13]   The cost to repair JMB's defective/non-conforming Work was estimated to be over **$3.5 million**.

By June, 2021, JMB still had not corrected much of the defective/non-conforming Work previously identified by Owner and the Architect in the Open Items List, Windows Report, Remedial Construction Cost Estimate and in other communications from Owner, Owner's

---

[12] A true and correct copy of the Vinyl Windows Deficiencies Expert Report (without exhibits) is attached hereto, incorporated herein and marked as **Exhibit I**.
[13] A true and correct copy of the Remedial Construction Cost Estimate is attached hereto, incorporated herein and marked as **Exhibit J**.

Representative and the Architect.   As a result, on June 21, 2021, Owner issued a Notice to Cure to JMB pursuant to §2.4, §12.2 and §12.2.4 of the Construction Contract.[14]   Defective and non-conforming Work remains throughout the Project, as detailed in the Open Items List, the Windows Report, the Remedial Construction Cost and otherwise, which has not been corrected by JMB or F&D.

The Agreement at §11 and §12  require JMB and F&D to Substantially Complete Buildings A, B and C by January 10, 2021 and Buildings D, E and F, and the entire Project, by April 10, 2021. JMB and F&D have not Substantially Completed Buildings A, B, C, D, E and F or the entire Project in accordance with the Contract Documents.

### OWNER WITHHOLDS CONTRACT FUNDS DUE TO JMB'S DEFECTIVE/NON-CONFORMING WORK AND <u>FAILURE TO ACHIEVE SUBSTANTIAL COMPLETION</u>

In the Agreement F&D and JMB expressly represented that JMB was going to complete the Project.  In reliance thereon, Owner paid millions of dollars of Contract funds to JMB and F&D.   On November 20, 2020, Owner approved JMB's Payment Applications 27, 28, 29 and 30 and paid Contract funds in the amount of $2,861,369.00 to JMB and F&D.   On December 16, 2020, Owner approved JMB's Payment Application No. 31 and paid Contract funds in the amount of $923,575.00 to JMB and F&D.   On January 7, 2021, Owner approved JMB's Payment Application No. 32 and paid Contract funds in the amount of $490,584.00 to JMB and F&D.

After Owner released the Contract funds to F&D and JMB for Payment Application No. 32, it became clear, as detailed above, that a substantial amount of JMB's Work on the Project was defective/non-conforming, that JMB was not correcting the defective and non-conforming Work despite repeated notices from Owner and Architect, and that JMB would not Substantially

---

[14] A true and correct copy of the Notice to Cure is attached hereto, incorporated herein and marked as **<u>Exhibit K.</u>**

Complete the Buildings or the Project by the required Substantial Completion deadlines.  Pursuant to the Construction Contract, including but not limited to §9.5 and §9.6.1, Owner withheld Contract funds to cover the cost to repair JMB's defective/non-conforming Work and for the liquidated damages due and owing to Owner.   The cost to correct and complete JMB's defective/non-conforming Work and the liquidated damages due and owing to Owner exceeds the amount of Contract funds.

## THE CHESTER COUNTY ACTION

Given JMB's defective and non-conforming Work, including JMB's installation of approximately 2400 defective/non-conforming windows, and JMB/F&D's refusal to correct that Work, Owner filed suit against JMB, F&D, United Window & Door Manufacturing, Inc. ("**United**") and 84 Lumber Company ("**84 Lumber**") in the Court of Common Pleas of Chester County, Pennsylvania, at docket no. 2021-07066-CT ("**Chester County Action**").[15]    Owner asserts claims against JMB and F&D for their breach of the Construction Contract, the Performance Bond and the Agreement.   Owner also asserts breach of warranty claims against JMB, United and 84 Lumber Company arising from 2400 defective/non-conforming windows manufactured by United, sold by 84 Lumber and installed by JMB on the Project.  Owner seeks to recover all of the substantial  losses, damages, costs and expenses it has incurred, and continues to incur, as a result of JMB's breach of the Construction Contract and the Agreement, F&D's breach of the Performance Bond and Agreement, and breaches of express and implied window warranties. *Id.*  Owner anticipates that all claims and defenses related to the Project, the Construction Contract, the Agreement and F&D's Performance Bond will be litigated in the Chester County Action.

---

[15] A true and correct copy of Owner's Complaint (without exhibits) filed in the Chester County Action is attached hereto, incorporated herein and marked as **Exhibit L**.

## III.   ARGUMENT

The Court does not have diversity subject matter jurisdiction and, therefore, this action must be dismissed. Full and final adjudication of F&D's claims and Owner's defenses thereto cannot be had without the joinder of JMB, a necessary and indispensable party to the dispute. JMB, however, is a non-diverse party and as such, joinder is not feasible, requiring dismissal.

F&D's mandatory injunction claim must also be dismissed. The claim, and the relief sought, are solely monetary in nature and cannot support injunctive relief.

Alternatively, this action should be stayed pending final adjudication of the Chester County Action, where all claims arising from the Project, Construction Contract, Agreement and Performance Bond can be fully and finally adjudicated in one forum.

### A.   MOTION TO DISMISS STANDARD

Fed.R.C.P. 12(b)(1) requires dismissal of an action if there is no subject matter jurisdiction. Fed.R.C.P. 12(b)(7) requires dismissal for failure to join an indispensable party under Rule 19.

A motion to dismiss under Federal Rule 12(b)(6) admits the well pleaded allegations in the Complaint, but denies their legal sufficiency. Fed.R.C.P. 12(b)(6); *Pagnotti Enterprises, Inc. v. Beltrami, et al*, 787 F.Supp. 440, 443 (E.D.Pa.1992).   However, the Court need not assume that the plaintiff can prove facts that were not alleged in the complaint.  *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 (3d Cir.1998).   The Court also should not give credit for a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997).  In order to avoid dismissal, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).   Under this standard, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the

11

complaint are true (even if doubtful in fact)." *Babalola v. Donegal Group, Inc.*, 2008 U.S. Dist. LEXIS 65207, No. 1:08-CV-621, *4 (M.D. Pa. Aug. 26, 2008)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

F&D's claims cannot withstand scrutiny under Fed.R.C.P. 12(b)(1), 12(b)(6) or 12(b)(7). Plaintiff's Complaint must be dismissed in its entirety for lack of subject matter jurisdiction, for failure to join an indispensable party and inasmuch as Plaintiff's claims are neither legally nor factually sustainable.

### B.   THE ACTION SHOULD BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

JMB is a necessary and indispensable party for the full and final adjudication of any claim arising out of agreements to which JMB is a party, including the Construction Contract, the Agreement and the Performance Bond.   Further, F&D's claims, and Owner's defenses and counterclaims thereto, are inextricably intertwined with JMB's ongoing breach of the Construction Contract and the Agreement.   Inasmuch as joinder of JMB, a non-diverse party, will destroy diversity subject matter jurisdiction, this action must be dismissed.

Determining whether a party should be joined under Rule 19 is a three-step process.  *Gen. Refractories Co. v. First State Ins. Co*., 500 F.3d 306, 312 (3d Cir. 2007).  First, the Court must consider whether the absent party is a necessary party under 19(a).  *Id*.  Second, if the absent party is a necessary party, the Court must determine if it is feasible to join that party – *i.e.* whether joinder would deprive the Court of the ability to hear the case.  *Id*.  Third, if the absent party cannot be joined, the Court must analyze the Rule 19(b) factors to determine whether the Court should continue without the absent party or dismiss the case because the absent party is indispensable.  *Id*. (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993)).

12

A person whose joinder would not deprive the court of subject matter jurisdiction must be joined as a party under Rule 19(a)(1) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.C.P. 19(a)(1).  An absent party that meets the criteria of either Rule 19(a)(1)(A) or Rule 19(a)(1)(B) is deemed to be a necessary party and must be joined if feasible. *Gen. Refractories Co.*, 500 F.3d at 312.

If the court determines that the party is necessary under Rule 19(a) and joinder is not feasible, the court must next decide whether that party is indispensable under Rule 19(b). *Id.* at 312.  The factors for the court to consider under Rule 19(b) are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

JMB is a necessary party under Rule 19(a) and an indispensable party under Rule 19(b). Litigation of F&D's claims and Owner's defenses and counterclaims thereto cannot proceed without JMB, the entity whose performance – or lack thereof of the Construction Contract and

Agreement dictates the ultimate outcome of any litigation arising from the Agreement or the Construction Contract.

Further, JMB is a party to both the Construction Contract and the Agreement and, therefore, is an indispensable party to any lawsuit arising out of the Construction Contract or Agreement. *See Rashid v. Kite*, 957 F.Supp. 70, 74 (E.D. Pa. 2016) (finding that a party, who executed the contract sued on and allegedly breached the contract, an indispensable party without whose joinder the lawsuit could not continue); *Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.*, 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (quotation marks omitted) ("It is well established that a contracting party is the paradigm of an indispensable party for contract claims"); *Gregoria v. Total Asset Recovery, Inc.*, 2015 WL 115501, at *6 (E.D.Pa. Jan. 8, 2015) (quoting *Caribbean Telecommunications Ltd. v. Guyana Tel. & Tel. Co*., *supra*) ("[W]here rights sued upon arise from a contract all parties to it must be joined"); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil Inc.*, 456 F.Supp. 831, 836 n. 7 (D.Del.1978) (if "the rights sued upon arise from a contract, all parties to the contract must be joined").

JMB's failure to properly perform its Work under the Construction Contract and Agreement and JMB's failure to achieve both Substantial Completion or Final Completion by the agreed upon deadlines give rise to Owner's right to withhold the Contract funds for defective Work, non-conforming Work and liquidated damages.  JMB is integral to the underlying dispute because it is a party to the agreements sued upon and because JMB's non-performance of those agreements is a critical component in the adjudication of entitlement to the Contract funds.  *See F & M Distributors v. American Hardware Supply*, 129 F.R.D. 494 (W.D.Pa.1990) (finding a third party indispensable because  it was  "a crucial link in the chain that forms the factual and legal basis for [the plaintiff's] cause of action." ).

F&D's claim for the Contract funds is wholly derivative of JMB's claims, or lack thereof. F&D is not entitled to Contract funds or to the placement of those funds in escrow unless JMB has a right to the Contract funds. If JMB's claim to the Contract funds fails, so do the claims of F&D.

In *Rashid v. Kite*, *supra*, the Court found a non-party to be indispensable where that party's actions were integrally interwoven in the dispute:

> A third consideration is that of judicial efficiency and economy. The Supreme Court has noted in this context that the courts and the public have an interest in the "complete, consistent and efficient settlement of controversies." <u>Provident Tradesmens Bank</u>, 390 U.S. at 111, 88 S.Ct. at 739. Plainly, the most efficient resolution of this contractual dispute would be a single action in which Plaintiff, Kurtz and Kite all are parties. Moreover, nearly all of Plaintiff's allegations of wrongdoing concerning the Agreement implicate Kurtz and Kite jointly. In fact, whether the contract was actually breached may depend on the sum total of their actions rather than on any one act in particular. Where the conduct of two defendants is so significantly intertwined, resolving the dispute as to both in a single action is clearly preferable.

957 F.Supp. 70, 73.

Although JMB is an indispensable party to the dispute between F&D and Owner, joinder of JMB to this lawsuit is not feasible. JMB is a Pennsylvania limited liability company whose members are Citizens of the Commonwealth of Pennsylvania. See Exh. A. Joinder of JMB would divest the Court of subject matter diversity jurisdiction.

The United States Supreme Court has held that "diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). It is therefore the "duty" of federal courts "to look beyond the pleadings and arrange the parties according to their sides in the dispute." *Id*. (internal citation omitted).

The Third Circuit has further explained that "[w]here party designations have jurisdictional consequences," a court must "align the parties before determining jurisdiction*." Dev. Fin. Corp.*

15

*v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995) (internal citation omitted). In deciding whether parties must be realigned, the Third Circuit requires a district court to "first identify the primary issue in controversy and then determine whether there is a real dispute by opposing parties over that issue." *Employers Ins. Of Wausau v. Crown Cork & Seal Co., Inc.*, 942 F.2d 862, 864 (3d Cir. 1991).

JMB's and F&D's interests are aligned.  Whether JMB timely and in accordance with the Contract Documents performed its Work under the Construction Contract is the primary issue in controversy.  If JMB's Work is defective, non-conforming and untimely, as Owner contends, then neither JMB nor F&D are entitled to the remaining Contract funds. The necessary realignment of F&D and JMB destroys the Court's subject matter jurisdiction because JMB and Owner are citizens of the Commonwealth of Pennsylvania.  Other courts in this district facing similar factual situations have found realignment proper. See, *e.g., Ramara, Inc. v. Westfield Ins. Co.*, No. 13-7086, 2014 WL 12607757 (E.D. Pa. Jan. 2, 2014) (Dalzell, J.) (denying motion to remand by realigning the underlying plaintiff with the insured who filed the declaratory judgment action); *Chancellor Props., Inc. v. Houston Cas. Co.*, No. 9-4514, 2009 WL 3790309 (E.D. Pa. Nov. 12, 2009) (Bartle, J.) (denying motion to remand because realignment of the parties was proper and plaintiff in the underlying suit was "truly a plaintiff" in the insurance-coverage-related declaratory judgment action).

Further, the Rule 19(b) factors weigh heavily towards dismissal under these circumstances. The Court cannot grant meaningful relief without the joinder of JMB as a party to this action.  JMB has a substantial interest in the subject matter, which will be impeded if the litigation proceeds without JMB.  As detailed above, JMB's breach of the Construction Contract and Agreement is integrally intertwined in the dispute in this action and, therefore, judgment cannot be rendered in

JMB's absence and/or would be inadequate.  Further, F&D has an adequate remedy if this action were dismissed for nonjoinder.  The Chester County Action provides a single forum and single lawsuit for F&D, Owner and JMB to prosecute and defend against all claims arising from the Project, the Construction Contract and the Agreement in one forum and in one action.  The Project is located in Chester County, Pennsylvania, and the Court of Common Pleas of Chester County has both personal jurisdiction over JMB, Owner and F&D and subject matter jurisdiction over disputes among F&D and JMB.   Litigating all claims in one forum would avoid both inconsistent rulings and duplicative litigation.  Further, there is no applicable contractual or statutory limitations period which would prevent F&D from asserting its claims in the Chester County Action.

F&D's attempt to manufacture diversity subject matter jurisdiction by failing to join JMB should not be countenanced. Pursuant to Fed.R.C.P. 19, this action should be dismissed.

### C.     A MANDATORY INJUNCTION IS NOT WARRANTED

At its essence, F&D seeks to compel Owner to pay contract funds withheld due to JMB's defective, non-conforming and delayed Work and the liquidated damages into an escrow account. A mandatory injunction is not cognizable where monetary damages are sought and the Plaintiff's right to relief is not indisputably clear.

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. __, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Thus, a preliminary injunction should only be awarded in the "limited circumstances" where "the movant, by a clear showing, carries the burden of persuasion." *Holland*, 895 F.3d at 285.

17

Where the requested preliminary injunction "is directed not merely at preserving the status quo but ... at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).

> An injunction that commands the performance of an affirmative act, a 'mandatory injunction,' is the rarest form of injunctive relief and is often described as an extreme remedy. The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. An applicant seeking mandatory injunctive relief must establish the following elements: (1) irreparable harm will occur that is not compensable by money damages; (2) greater injury will result from the denial of the injunction than by granting the injunction; (3) the injunction will restore the status quo between the parties; and (4) the party seeking relief has a clear right to relief in an actionable claim.

*Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 582 (Pa. Cmwlth. 2012) (citations omitted).

Notably, mandatory injunctions should be issued only sparingly. *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982). To obtain a mandatory injunction, the party seeking a mandatory injunction must show that its right to relief is "indisputably clear." *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Trinity Indus., Inc. v. Chicago Bd. & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)).

In Count II of the Complaint, F&D seeks injunctive relief that does not seek to maintain the status quo. Rather, F&D demands injunctive relief "that requires the Owner to deposit the Balance Due the Surety into the Escrow Account". Compl. ¶66. F&D does not satisfy the heavy burden for the mandatory injunction which it seeks against Owner.

F&D cannot establish that it will incur irreparable harm that is not compensable by monetary damages if the mandatory injunction is not granted. In fact, the relief sought by F&D is entirely monetary in nature. F&D claims an entitlement to Contract funds and seeks to compel Owner to transfer those Contract funds from Owner's accounts into an escrow account. The harm which F&D claims it will incur is solely monetary and the relief which F&D would get if

successful is solely monetary. *See ECRI v. McGraw-Hill, Inc.*, 809 F2d 223, 226 (3d Cir. 1989) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977) ("The 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it'"); *Penneco Pipeline Corporation v. K. Petroleum, Inc.*, 2019 WL 7629254, *10 (W.D.Pa. 2019) (denying claim for a mandatory injunction because Plaintiff has not satisfied its burden of demonstrating that it could not be fully compensated by monetary damages).

F&D's mandatory injunction claim also must be dismissed because its right to relief is not indisputably clear.  F&D is not entitled to relief because JMB is not entitled to Contract funds from the Owner.  As evidenced by the Remedial Construction Cost Estimates, the Windows Report, the Open Items List and many other Project records which are not a part of this record, JMB's Work is defective and non-conforming and it is estimated that it will cost Owner more than three million dollars to repair JMB's defective and non-conforming Work.

Additionally, JMB did not Substantially Complete Buildings A, B and C by the January 10, 2021 deadline or Buildings D, E and F by the April 10, 2021 deadline.   As detailed in the Agreement, Owner is entitled to liquidated damages of $5,000 for each day after January 10, 2021 that the Buildings A, B and C are not Substantially Complete.  Owner is entitled to liquidated damages of $25,000 for each day after April 10, 2021 that Buildings D, E and F are not Substantially Complete per the Contract Documents.

As of the date of the filing of this Motion, the cost to correct JMB's defective Work and the liquidated damages owed to Owner exceed the remaining Contract funds.  Accordingly, Owner has a clear right under the terms of the Construction Contract to retain the remaining Contract

funds to offset the cost of corrective work and the liquidated damages.  F&D, on the other hand, has no right, let alone an indisputably clear right, to those Contract funds.

F&D's demand for injunctive relief should therefore be dismissed.

### D.   ALTERNATIVELY, THIS ACTION SHOULD BE STAYED

If the Court does not dismiss this action, then it should be stayed pending final adjudication of the Chester County Action.

District courts have "broad discretion to stay proceedings as an incident to [the] power to control [their] own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); see also *MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) ("Federal courts have inherent power to control their dockets by staying proceedings."). Further, a stay of proceedings "is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court." *MEI, Inc.*, 2009 WL 3335866 at *4. Factors justifying a stay in such circumstances include "the interests of justice and judicial economy," which in turn include "avoiding inconsistent results, the duplication of efforts, and the waste of judicial resources." *Id*. at *5 (internal quotation marks omitted) (quoting *Miccosukee Tribe of Indians v. South Florida Water Mgmt. Dist.*, Civ. No. 98–06056, slip op. at 6 (S.D.Fl. Mar. 28, 2007), appeal denied, 559 F.3d 1191 (11th Cir.2009)).

Justice and judicial economy are furthered by staying this action while the Chester County Action is fully and finally adjudicated.  Without a stay, the same issues, involving, *inter alia*, JMB's breach of the Construction Contract and Agreement, F&D's breach of the Performance Bond, and Owner's entitlement to the Contract funds, will be simultaneously litigated in both federal court and in Chester County. In addition, inconsistent rulings, duplication of efforts and a waste of judicial resources will result, if the federal Court and state Court are both asked to

adjudicate Owner's, JMB's and F&D's rights, obligations and performance under the same agreements.

      For these reasons, a stay of this action pending final adjudication of the Chester County Action is warranted and should be entered.

## IV.    CONCLUSION

      This action should be dismissed for failure to join an indispensable party whose joinder will divest this Court of diversity subject matter jurisdiction.  In the alternative, this action should be stayed pending final adjudication of the Chester County Action.

KAPLIN STEWART

/s/  Sandhya M. Feltes
Marc B. Kaplin, Esquire
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
mkaplin@kaplaw.com
sfeltes@kaplaw.com

Steven M. Coren, Esquire
Attorney ID No. 32140
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA  19103
(215) 735-8700
(215) 735-5170 facsimile
scoren@kcr-law.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| FIDELITY AND DEPOSIT COMPANY | : | |
| OF MARYLAND, | : | |
| | : | No.  21-CV-3576 |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| MAIN STREET PHASE II, L.P.  and | : | |
| MAIN STREET PHASE III, L.P., | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Sandhya M. Feltes, Esquire, do hereby certify that on September 8, 2021, a true and correct copy of Defendants' Motion to Dismiss or in the Alternative to Stay Action, and accompanying Memorandum of Law, were served on the following via ECF Electronic Notification:


Noah H. Charlson, Esq.
Charlson Braber McCabe & Denmark, P.C.
1628 JFK Blvd., suite 1803
Philadelphia, PA 19103


KAPLIN STEWART

/s/  Sandhya M. Feltes
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
sfeltes@kaplaw.com
Attorneys for Defendants