**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** | |
| Plaintiff, | |
| v. | Case No: 2:21-cv-03576-WB |
| **MAIN STREET PHASE II, L.P.** | |
| and | |
| **MAIN STREET PHASE III, L.P.**, | |
| Defendants. | |

<u>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S**</u>
<u>**MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY ACTION**</u>

**ORAL ARGUMENT IS RESPECTFULLY REQUESTED**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     ARGUMENT ................................................................................................4

    A.    The Owner's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(7) Should Be
        Denied Because JMB Is Not Required as a Party to Litigate the Surety's Causes
        of Action....................................................................................................5

        1.   JMB Is Not a Required Party to the Surety's Lawsuit.........................................6

                a.   The Court Can Grant the Requested Declaratory and Injunctive Relief
                    Without JMB as Party Because JMB Has No Legal Interest in the Contract
                    Funds or the Eventual Distribution of Those Funds from the Escrow
                    Account......................................................................................7

                b.   JMB Does Not Have, Nor Has It Claimed, Any Interest in the Contract
                    Funds or the Eventual Distribution of Those Funds from the Escrow
                    Account....................................................................................11

        2.   JMB is not Indispensable Under Rule 19(b) ....................................................14

                a.   Contrary to the Owner's Assertion, Courts Have Not Created a Rule that
                    All Contracting Parties are Indispensable to a Lawsuit Involving Their
                    Contract ...................................................................................15

                  b.   The Remaining Rule 19(b) Factors Weigh Heavily in Favor of Finding that
                    JMB is Not Indispensable to this Action .................................17

    B.    The Owner's Motion to Dismiss the Surety's Cause of Action for Injunctive
        Relief is Specious and Should Be Denied.................................................20

    C.    This Action Should Not Be Indefinitely Stayed in Favor of the Second-Filed
        Chester County Where the Owner Ignores Its Obligation to Pay the Unpaid
        Contract Funds to the Surety or Deposit Disputed Funds into an Escrow
        Account ....................................................................................................23

III.    CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

<u>**Cases**</u>

Angst v. Royal Maccabees Life Ins. Co.,
    77 F.3d 701 (3d Cir. 1996)..................................................................................7

Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,
    844 F.2d 1050 (3d Cir. 1988)..............................................................................8

Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co. Ltd.,
    594 F. Supp. 2d 522 (D.N.J. 2009) ...................................................................16

Commonwealth v. Think Finance, Inc.,
    2016 WL 183289 ...................................................................................... 6, 13

Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.,
    54 F.3d 156 (3d Cir. 1995)..................................................................................19

eBay Inc. v. MercExchange, L.L.C.,
    547 U.S. 388, 391 (2006)....................................................................................20

F&M Distrib., Inc. v. Am. Hardware Supply Co.,
    129 F.R.D 494 (W.D. Pa. 1990) .................................................................. 6, 16

Gen. Refractories Co. v. First State Ins. Co.,
    500 F.3d 306 (3d Cir. 2007)........................................................................ 14, 17

Gregoria v. Total Asset Recovery, Inc.,
    2015 WL 115501 (E.D. Pa. 2015) .....................................................................16

HB Gen'l Corp. v. Mancheser Partners, L.P.,
    95 F.3d 1185 (3d Cir. 1996)...............................................................................18

Hope v. Warden York Cty. Prison,
    972 F.3d 310 (3d. Cir. 2020)..............................................................................23

Huber v. Taylor,
    532 F.3d 237 (3d Cir. 2008)...............................................................................12

In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.,
    15 F.3d 120 (3d Cir. 1994).................................................................................19

Incubadora Mexicana, SA de CV v. Zoetis, Inc.,
    310 F.R.D. 166 (E.D. Pa. 2015)..............................................................7, 11, 12

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,
    11 F.3d 399 (3d Cir. 1993)........................................................................6, 7, 15, 19

Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,
    456 F. Supp. 831 (D. Del. 1978)...............................................................16

John Hancock Prop. & Cas. Co. v. Hanover Ins. Co.,
    859 F. Supp. 165 (E.D. Pa. 1994). ...........................................................6

MEI, Inc. v. JCM Am. Corp.,
    2009 WL 3335866 (D. N.J. 2009) ............................................................24

Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council,
    964 F.3d 218 (3d Cir. 2020).......................................................................21

Nat'l Liability & Fire Ins. Co. v. Condran,
    2021 WL 3884259 (E.D. Pa 2021) ...........................................................8, 12

Owens-Illinois, Inc. v. LakeShore Land Co., Inc.,
    610 F.2d 1185 (3d Cir. 1979)....................................................................13

Provident Tradesmens Bank & Trust Co.,
    390 U.S 102 (1968)....................................................................................6, 15, 17

Rashid v. Kite,
    957 F. Supp. 70 (E.D. Pa. 1997) ..............................................................15, 16

Steel Valley Auth. v. Union Switch & Signal Div.,
    809 F.2d 1006 (3d Cir. 1987)....................................................................6

Tex. E. Corp. v. Fid. & Cas. Ins. Co.,
    513 U.S. 915 (1994)...................................................................................19

Travelers Indem. Co. v. Pauline,
    2007 WL 2318104 (M.D. Pa. 2007) .........................................................8

Tripodi v. Coastal Automation LLC,
    2007 WL 2844908 (E.D. Pa. 2007) ..........................................................21, 22

U.S. v. Rawlings,
    2010 WL 2292508 (D. Md. 2010) ............................................................12

Warren Hill, LLC v. Neptune Investors, LLC,
    2021 WL 2102559 (E.D. Pa. 2021) ..........................................................14

**<u>Statutes</u>**

28 U.S.C. § 1332 ................................................................................................. 16

28 U.S.C. § 1367 ................................................................................................. 19

Fed. R. Civ. 19 ............................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................ 4, 21, 22, 23

Fed. R. Civ. P. 12(b)(7) ................................................................................... 4

Plaintiff, Fidelity and Deposit Company of Maryland ("the Surety"), by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion to Dismiss or, in the Alternative, to Stay Action ("Motion") filed by Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. (collectively, "the Owner").

## I.   <u>**INTRODUCTION**</u>

The Surety commenced this litigation for a singular, limited purpose: to obtain an order from the Court enforcing the parties' funding agreement and requiring the Owner to immediately deposit over seven million dollars of contract funds into an escrow account managed by an agreed upon third party while the Surety and the Owner resolve their substantive disputes concerning those funds through the parties' selected means of alternative dispute resolution. As averred in the Complaint, the parties' Settlement and Dedication of Contract Balance Agreement provides for the Owner's payment of contract funds (the "Unpaid Contract Funds") to the Surety as work progressed, or to place any disputed Unpaid Contract Funds in escrow so that either the parties themselves or arbitrators can resolve how to distribute the contested funds between the Surety and Owner. The Owner is presently ignoring its escrow obligation under the belief that it may indefinitely hold the Unpaid Contract Funds until all disputed construction work items are resolved to its satisfaction, which rather obviously, is a fallacy of circular logic. Nonetheless, the Owner disingenuously invites the Court to consider the merit of the construction disputes while it ignores its agreement regarding the funding of the project and how the parties' disputes would be resolved.

The Surety is confident that it will ultimately prevail in arbitration because the Owner has alleged specious defect claims to improperly retain contract funds that the Surety justly earned as it completed the Owner's project. In this regard, the Owner's third-party architect of record for the Project confirmed that, as of the last unpaid payment application dated April 30, 2021, the

construction work was 99.53% complete.  (Compl. ¶ 35.)  Due, in part, to the Owner's refusal to release funds that the Owner dedicated to the Surety, the Surety has been required to finance more than $23 million for the completion of construction.  Resolving the Surety's rights to the Unpaid Contract Funds and the Owner's defective work allegations, however, are not at issue for the Court to decide, either according to the Surety's allegations in the Complaint, or as a matter of its jurisdiction given the parties' agreement to negotiate and then arbitrate the ultimate disposition of the escrowed funds.

Setting aside the Owner's misplaced gambit to review claims to be resolved by arbitration, the Surety and the Owner are the only parties required to resolve the limited dispute involving the Owner's agreement to dedicate the unpaid Contract Balance in support of the Surety's project completion effort.  The Owner's Motion contends, however, that the contractor hired to build the Owner's project, Jeffrey M. Brown Associates, LLC ("JMB"), is a necessary and indispensable party that cannot be joined as a party without destroying diversity jurisdiction.  The fundamental premise of the Owner's Motion is demonstrably incorrect.  The reason why JMB is neither necessary nor indispensable to this case is straightforward and undisputed: JMB has no right to, or interest in, the Unpaid Contract Funds that should be in escrow, and is not claiming any such right exists.  Averments in the Complaint, taken as true for purposes of the Owner's Motion, make clear that the Owner is fully aware that JMB previously directed all payments to the Surety.  (Compl. ¶ 18.)  In fact, the Settlement and Dedication of Contract Balance Agreement, upon which this lawsuit is based, was executed to secure the Owner's commitment to pay the remaining Unpaid Contract Funds to the Surety, stating that the "Owner dedicates the unpaid Contract Balance to the Surety."  (Id. at ¶ 29 (emphasis added).)  To avoid any confusion on this fundamental provision of the Settlement and Dedication of Contract Balance Agreement, the agreement further provides that,

at final completion, the entire Contract Balance must have "either been paid <u>to the Surety and/or into the Escrow Account</u>." (<u>Id.</u> at ¶¶ 29, 30.) Even further demonstrating the Surety's ultimate entitlement to any contract funds payable from the Owner or from the escrow account, the only parties other than a court who have the right to order the escrow agent to release the escrowed funds are <u>the Owner and Surety</u>. (<u>Id.</u> at ¶ 31.) For these reasons alone, the Owner's nonjoinder challenge to the Complaint must be denied.

The Owner's theory for dismissal of the Surety's cause of action for an injunction is similarly misleading. In the Motion, the Owner contends that the Surety is not entitled to an injunction because "the harm which F&D claims it will incur is solely *monetary* and the relief which F&D would get if successful is solely monetary." (Mot. 18 – 19.) That is carefully drafted sleight of hand. The Surety's Complaint does <u>not</u> seek "monetary" relief because it does not request a judgment that awards damages. The Surety seeks (i) a declaration that the Owner is presently required to preserve the Unpaid Contract Funds by funding the escrow account, and (ii) an order requiring the Owner to fund the escrow account. The Owner agreed in the Settlement and Dedication of Contract Balance Agreement to fund the escrow account while disputes are pending, and it agreed that "irreparable damage would occur in the event <u>any</u> provision of this Agreement was not performed" (emphasis added). The Owner's claim that it is not presently causing irreparable harm by failing to preserve the Unpaid Contract Funds in escrow is, consequently, completely contradicted and undermined by its own agreement.

Finally, the Owner is not entitled to an open-ended stay of this action. The Owner's request to stay this case is clearly motivated by a desire to indefinitely hold millions of dollars of Unpaid Contract Funds – funds the Owner dedicated to the Surety – while it maintains its disputed work claims. The Surety is thereby deprived of its bargained-for preservation of the funds during the

pendency of a dispute over the construction work.  Seeking to avoid the Court's inquiry into its obligation to fund the escrow account, the Owner filed a separate lawsuit in the Court of Common Pleas of Chester County against the Surety and JMB, among others (the "Chester County action"), and attaches that complaint to its Motion to argue that the state court is a better forum for this case. What the Owner conveniently fails to mention is that it filed its Chester County action on September 3, 2021 – <u>two weeks after the Owner was served with the Complaint in this action</u>.  The second-filed Chester County action also was not a genuine effort to resolve the dispute that the Surety brought before this Court in its first-filed suit.  The word "escrow" does not appear anywhere in the Owner's complaint in the Chester County action.  The Owner's commitment to dedicate the contract balance to the Surety is similarly ignored.  The second-filed Chester County action is yet another piece of the puzzle that, when all fit together, reveals the Owner just wants to skip over its escrow obligation and jump right into litigating its separate issues on its own terms. This procedural tactic is both legally improper and completely unnecessary because this first-filed case filed by the Surety is properly before this Court.

For these reasons set forth more fully below, the Court should deny the Owner's Motion to Dismiss in its entirety.

## II.   **ARGUMENT**

The Owner's (A) Motion to Dismiss under Fed. R. Civ. P. 12(b)(7); (B) Motion to Dismiss Count Two under Fed. R. Civ. P. 12(b)(6); and (C) its request for an indefinite stay of this case, all should be denied for the reasons set forth below.

A.   **The Owner's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(7) Should Be Denied Because JMB Is Not Required as a Party to Litigate the Surety's Causes of Action**

Resolution of the Owner's present obligation to preserve the Unpaid Contract Funds in escrow is a matter of critical importance that is tailor made for declaratory and injunctive relief. In the Settlement and Dedication of Contract Balance Agreement, the Surety bargained for the dedication of more than seven million dollars of contract funds to support project completion.  The Surety and the Owner also agreed that, should disputes arise between them regarding the contract funds, the Owner would deposit the funds in an escrow account to ensure that substantial collectible monies are readily available to partially offset the Surety's more than $23 million loss. If one thing is clear from the Owner's Motion, it is that the Owner has no desire to fulfill its contractual obligation to escrow the millions of dollars it is holding in contract funds pending resolution of its disputed work items.

Seeking to avoid any question whether it is improperly holding the Unpaid Contract Funds, the Owner filed a Motion that engages in procedural gamesmanship.  The Owner contends that the Surety's Complaint should be dismissed because JMB is a necessary and indispensable party under Fed. R. Civ. 19 ("Rule 19") that has not joined with the Surety as a plaintiff to enforce the Settlement and Dedication of Contract Balance Agreement.  The Owner's nonjoinder claim is both legally and factually meritless.

JMB is not a required or indispensable party to the narrow escrow account dispute the Surety raised in its Complaint because JMB directed the remaining Unpaid Contract Funds to the Surety, and therefore, JMB has no interest in litigating whether the Owner must preserve the contract balance in the escrow account.  Indeed, the Owner's Motion fails to address how JMB possibly could be required to determine the Owner's obligations with respect to those specific

obligations in the Settlement and Dedication of Contract Balance Agreement that flow only to the Surety.  As evidenced by its complete disregard for the escrow provisions in its Motion, it is obvious that the Owner only deems JMB necessary to resolve its own disputed work claims and not to resolve the actual dispute raised in the Complaint.

The law firmly supports the conclusion that JMB is neither a necessary nor indispensable party to this lawsuit.  Under the requisite case-by-case Rule 19 analysis, Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 117 n. 12 & 18 (1968), which relies upon the allegations of the Complaint being taken as true, see Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1011 (3d Cir. 1987) (applying Rule 12(b)(7)), JMB is not a required[1] or indispensable party to the narrow escrow account dispute the Surety raised in its Complaint.  The Owner, therefore, cannot demonstrate "that that the absent party [JMB] is needed for a just adjudication." F&M Distrib., Inc. v. Am. Hardware Supply Co., 129 F.R.D 494, 496 (W.D. Pa. 1990); John Hancock Prop. & Cas. Co. v. Hanover Ins. Co., 859 F. Supp. 165, 168 (E.D. Pa. 1994).

Accordingly, the Owner's Motion for nonjoinder should be denied.

### 1.  JMB Is Not a Required Party to the Surety's Lawsuit

Rule 19(a) defines the parties who are "required" in the sense that their joinder is compulsory "if feasible."  Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993).  To determine whether a person is "required" for the lawsuit, Rule 19(a)(1) provides that a person must be joined if "(A) in that person's absence, the court cannot accord complete relief among existing parties; (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter

---

[1] As observed by the court in Commonwealth v. Think Finance, Inc., 2016 WL 183289 at *3, n. 3 (E.D. Pa. 2016) "'necessary is the old term, no longer in the Rule but still widely used.  'Required' is the current term.  Both terms can be misleading; a party might be found 'required' or 'necessary' but not 'indispensable,' and so the suit may proceed without them."

impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).  Since the Owner cannot satisfy either condition with respect to JMB in the proper context of the Surety's declaratory judgment and injunction actions in this case, the Rule 19(a) analysis immediately ends, and the Owner's Motion must be denied.  Janney Montgomery Scott, Inc., 11 F.3d at 404.

<blockquote>
a.    <u>The Court Can Grant the Requested Declaratory and Injunctive Relief Without JMB as a Party Because JMB Has No Legal Interest in the Contract Funds or the Eventual Distribution of Those Funds from the Escrow Account</u>
</blockquote>

The Owner's essential misdirection in its Motion is that it improperly considers whether JMB is required to resolve any and all claims and disputes between the Owner, the Surety, and JMB that have any relationship to the underlying construction project, and not whether JMB is required to resolve the narrow escrow account dispute that the Surety pled in its Complaint.  (Mot. 12 ("JMB is a necessary and indispensable party for the full and final adjudication of any claim arising out of agreements to which JMB is a party, including the Construction Contract, the Agreement and the Performance Bond").))  The proper context for determining whether an absent party is "required" under Rule 19(a)(1) does not include every matter which may potentially be a dispute relating to the subject matter and the parties' agreements.  Rather, the Rule 19(a)(1) inquiry is "limited to whether the district court can grant complete relief to the persons <u>already parties to the action</u>." Janney Montgomery Scott, Inc., 11 F.3d at 405 (emphasis added) (the effect a decision may have on an absent party is not material"); Incubadora Mexicana, SA de CV v. Zoetis, Inc., 310 F.R.D. 166, 171 (E.D. Pa. 2015) (citing Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 705 (3d Cir. 1996) ("a party is necessary only when nonjoinder precludes the court from effecting relief not in some overall sense, but between the current parties only")).  In addition, the project

generally, and "any claim arising out of agreements to which JMB is a party" (Mot. 12), is not the proper lens under Rule 19(a), as the Owner claims.  Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1054 n. 5 (3d Cir. 1988) ("[T]he question of 'complete relief' may not denote final adjudications of all claims between the parties, so long as the relief actually afforded to the parties in the action is meaningful").   In particular, the Owner's alleged counterclaims against JMB under the construction contract or otherwise (see Mot. 13) are irrelevant to the Rule 19(a) analysis and have no bearing on the purportedly required joinder of JMB in this case.  See Nat'l Liability & Fire Ins. Co. v. Condran, 2021 WL 3884259, at *1, n. 1 (E.D. Pa 2021) (citing Travelers Indem. Co. v. Pauline, 2007 WL 2318104, at *2 (M.D. Pa. 2007) ("a party's potential claims against a third party does not thereby make the third party a necessary party")).

Therefore, whether "complete relief" is available to the parties in the lawsuit must be determined by referring to the allegations found in the Complaint and the scope of the causes of action asserted.  Here, the Complaint is clear regarding the nature of the dispute and the relief that is being requested by the Surety.  The Complaint does not seek "the full and final adjudication of any claim arising out agreements to which JMB is a party." (Mot. 12.)  Concerning the declaratory judgment action in Count I of the Complaint, Paragraphs 62 through 64 frame the dispute as solely concerning the funding of the escrow account with the Unpaid Contract Funds so that the parties can move forward with the "full and final adjudication" of claims relating to the project in accordance with their arbitration agreement:

> 62.  This controversy is limited to the issue of contractual interpretation and whether the Owner has a contractual obligation under the Settlement and Dedication of Contract Balance Agreement and the Bond to place the Balance Due the Surety into the Escrow Account while the parties arbitrate the merit (or lack thereof) of the Owner's claims.

63.  An actual controversy therefore has arisen and now exists between the Surety and the Owner regarding the interpretation and performance of the Settlement and Dedication of Contract Balance Agreement and the Bond.

64.  The Court's resolution of this controversy between the Owner and the Surety will guide their future conduct by: (i) determining whether and when the Owner must deposit the Balance Due the Surety into the Escrow Account under the Settlement and Dedication of Contract Balance Agreement; (ii) allowing arbitration between the Surety and the Owner under Section II.15 of the Settlement and Dedication of Contract Balance Agreement to proceed; and (iii) permitting the arbitrator(s) to award the relief (distribution of the Escrow Account) that Section II.15 requires of the arbitration process.

(Compl. ¶¶ 62 – 64.)

Count II, which seeks an injunction, presents the same discrete issue of the Owner's obligation to fund the escrow account, and the Owner's failure to fulfill that obligation:

69.  By using disputes that it has created as the basis for refusing to contribute the Balance Due the Surety, the Owner is nullifying the necessary protection expressly bargained for by the Surety in the Settlement and Dedication of Contract Balance Agreement, thereby changing the status quo for its own betterment and shifting to the Surety the significant risk of Owner insolvency during the pendency of the dispute.

70.  Unless injunctive relief is granted and the Owner is ordered to deposit the Balance Due the Surety into the Escrow Account, the Surety will suffer irreparable harm in that it will be deprived of the specific security protections it bargained for in the Settlement and Dedication of Contract Balance Agreement against the risk of non-payment, which cannot be remedied by any post hoc judgment.

75.  There is no possibility of harm to any third parties because, as Section II.8 of the Settlement and Dedication of Contract Balance Agreement provides, the Owner and/or Surety are only entitled to distribution of the funds in the Escrow Account at the conclusion of the agreed-upon arbitration process.

(Compl. ¶¶ 69, 70, 75 (emphasis added).)

The above references to the Surety's pleadings demonstrate that the declaratory and injunctive relief requested by the Surety is sought only from the Owner.  The simple reason why the Owner, and not JMB, is the only necessary party to the Surety's causes of action is that the Owner is the one and only party in possession of the Unpaid Contract Funds that presently belong

in the escrow account.  As set forth elsewhere in the Complaint, the Surety's performance bond provides that, as a condition for the Surety to perform, the <u>Owner</u> (as the bond Obligee) must "pay the Balance of the Contract Price in accordance with the terms of the Construction Contract <u>to the Surety</u> or to a contractor selected to perform the Construction Contract.  (Compl. ¶ 11 (emphasis added).)  Regarding the Settlement and Dedication of Contract Balance Agreement executed after the Owner terminated JMB's contract for default, the <u>Owner</u> agreed in Section II.10 that it "dedicates the unpaid Contract Balance <u>to the Surety</u>."  (Compl. ¶ 30.)  The Owner agreed that it would pay the Unpaid Balance of Contract to the Surety as the completion work progressed (<u>Id.</u> at 27.)  Accordingly, by Final Completion, the Owner will have paid the Surety the unpaid Contract Balance, or it will have placed the unpaid funds in escrow (except for the amount the parties had allocated to the settlement reached concerning liquidated already accrued and are not at issue).  Now that the Project is at the stage of Final Completion,[2] the <u>Owner</u> (not JMB or anyone else) is contractually obligated under Section II.7 of the Settlement and Dedication of Contract Balance Agreement to (i) pay the undisputed portion of the Unpaid Balance of Contract <u>to the Surety</u>; and (ii) deposit any disputed portion of the Unpaid Balance of Contract <u>to an escrow account</u>:

> When Final Completion is achieved, the Owner will either release the Retainage and any unpaid Contract Balance <u>to the Surety</u>, or a portion thereof that the Owner determines is due and owing, and deposit the remaining Retainage amount and unpaid Contract Balance if any, <u>into an escrow account</u> maintained by a third party escrow agent selected by the parties ("Escrow Account"), <u>such that the full amount of Retainage and unpaid Contract Balance has either been paid to the Surety and/or into the Escrow Account</u>.

---

[2] The Surety's Complaint alleges that, "[a]s of the date of this filing, the Project has achieved Final Completion but for disputed items, as well as limited corrective work identified late in the punch list process and requiring coordination with the Owner than JMB has committed to perform.  (Compl. ¶ 36.)  While the Owner obviously disputes that Final Completion has been achieved, the Surety's averment in Paragraph 36 must be considered true for purposes of resolving the Owner's Motion.  <u>Steel Valley Auth.</u>, 809 F.2d at 1011.

(Compl. ¶ 29 <u>citing</u> § II.7 of the Settlement and Dedication of Contract Balance Agreement (emphasis added).)

Given that the dispute concerning the Unpaid Contract Funds, and the present necessity of ordering the Owner to fund the escrow account, exists solely between the Surety and Owner, complete relief can be accorded in this action without JMB.  As framed by the Complaint, JMB has no role in the Court's adjudication of this narrow dispute, or in crafting the judgment that the Surety requests from the Court.  Accordingly, the Owner's Motion must be denied.

     b. <u>JMB Does Not Have, Nor Has It Claimed, Any Interest in the Contract Funds or the Eventual Distribution of Those Funds from the Escrow Account</u>

Turning to the inquiry under Rule 19(a)(1)(B), the Owner's Motion does not make any serious attempt at arguing that JMB "claims an interest relating to the subject of the action" and that JMB's interest would be impaired or leave the Owner subject to substantial risk of inconsistent or multiple obligations."  Fed. R. Civ. P. 19(a)(1)(B).  Only superficially addressing this factor in one sentence of its Motion, the Owner asserts in conclusory fashion that "JMB has a substantial interest in the subject matter, which will be impeded if the litigation proceeds without JMB."  (Mot. 16.)  This single statement in the Owner's Motion does not, however, meet the requirements of Rule 19(a)(1)(B) because the Owner does not, and cannot, identify when and where JMB itself has <u>claimed</u> an interest in the matters asserted by the Surety in this case.  <u>See</u> <u>Incubadora Mexicana, SA de CV</u>, 310 F.R.D. at 171 (finding defendants failed to establish that absent parties were necessary under Rule 19(a)(1)(B)(i) by arguing that the absent parties *may* claim an interest in the subject matter of the litigation).  In this regard, the Owner provides no evidence or affidavits from JMB that shed light on the Owner's assertion that JMB would have an interest in the outcome of the escrow account dispute in this action <u>and</u> that it has claimed such an interest exists that it must

litigate.  See U.S. v. Rawlings, 2010 WL 2292508, at *3 (D. Md. 2010) (Rule 12(b)(7) movant should present affidavits as well as other relevant extra-pleading evidence of persons having interest in the action); 7 Fed. Prac. & Proc. Civ. § 1609 (3d ed.).

Nor could the Owner possibly demonstrate that JMB is claiming an interest in this case because JMB has expressly acknowledged that it has no interest in enforcing the escrow account provisions of the Settlement and Dedication of Contract Balance Agreement, and that it has no interest in the disputed Unpaid Contract Funds required to be deposited therein.  See Nat'l Liability & Fire Ins. Co., 2021 WL 3884259 at *1 (absent party is not a required party because he "does not have a legally cognizable interest in this litigation, as he is not a beneficiary of the insurance policy and is not seeking benefits from the policy").  By its Letter of Direction transmitted to the Owner on August 18, 2020, JMB "directed all outstanding and future payments due under the Base Contract to be paid to the Surety."  (Compl. ¶ 18 (emphasis added).)  In addition, by signing the Settlement and Dedication of Contract Balance Agreement, JMB has agreed that, as between it and the Surety, the Surety has the only legal right to the Unpaid Contract Funds.  (Id. at ¶ 27 – 31.) Laid bare, the Owner's contention that JMB has claimed an interest in the outcome of the Surety's suit is completely baseless.  A hypothetical claim of interest, which the Owner presents in its Motion, is not a reason for compelling JMB's joinder in this case.  See Incubadora Mexicana, SA de CV, 310 F.R.D. at 172 ("unsubstantiated or speculative risk will not satisfy Rule 19(a)(1)(B) criteria, and the possibility that an absent party's rights will be harmed under subsection (a)(1)(B)(i) must be real" (citing Huber v. Taylor, 532 F.3d 237, 250-51 (3d Cir. 2008)).

The Owner also cannot present any scenario whereby it will be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if JMB is not joined in the lawsuit before the Court.  Fed. R. Civ. P. 19(a)(1)(B)(ii).  As set forth above, all parties to the

Settlement and Dedication of Contract Balance Agreement – the Owner, the Surety, <u>and</u> JMB – have agreed that, as between the Surety and JMB, only the Surety has as an interest in the Owner satisfying its obligation to deposit the disputed Unpaid Contract Funds in the escrow account. Moreover, all parties have agreed that the Unpaid Contract Funds have been dedicated to the Surety (Compl. ¶ 30), thereby removing any possibility of JMB asserting a competing interest.

As the Surety's requested relief, if granted, would merely preserve the escrow/dispute process agreed upon by the Owner under Section 8 of the Settlement and Dedication of Contract Balance Agreement, there is yet another reason why no risk exists of "double, multiple, or otherwise inconsistent obligations" relating to the funding of the escrow account. If anything, JMB would share the Surety's interests in enforcing the Owner's obligation to fund the escrow account rather than be at cross purposes with the Surety's position in this case. Having the Unpaid Contract Funds in escrow provides all the same benefits to JMB as it would to the Surety – protecting against the significant risk of the Owner's insolvency pending the resolution of the parties' underlying construction disputes. Since the Surety's and JMB's interests in preserving disputed Unpaid Contract Funds in the escrow account are aligned (<u>see also</u> Mot. 16 ("JMB's and F&D's interests are aligned")), the Surety can represent both its interests and JMB's interests without any need to join JMB as a party. <u>Think Finance, Inc.</u>, 2016 WL 183289 at *6 (<u>citing Owens-Illinois, Inc. v. LakeShore Land Co., Inc.</u>, 610 F.2d 1185, 1191 (3d Cir. 1979) ("The fact that the absent person may be affected by the judgment does not of itself require his joinder if his interests are fully represented by parties present")).

Accordingly, there is no risk at all of the Owner incurring "double, multiple, or otherwise inconsistent obligations" that could arise from the Court entering an order defining the Owner's obligations with respect to the Unpaid Contract Funds, or alternatively, commanding that the funds

be deposited into the escrow account.  As such, the Owner cannot prevail on the second factor

under Rule 19 as well.

### 2.      JMB is not Indispensable Under Rule 19(b)

Because JMB is not a necessary party to this action, it cannot be found indispensable.  See

Warren Hill, LLC v. Neptune Investors, LLC, 2021 WL 2102559, at *6 (E.D. Pa. 2021) (citing

Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 319 (3d Cir. 2007) ("A finding that an

absent party is necessary under Rule 19(a) is a necessary predicate to a district court's discretionary

determination under Rule 19(b)…")).  Accordingly, the Owner's Motion also necessarily fails for

the separate reason that the Owner cannot meet its burden of proving that JMB is indispensable

under Rule 19(b).

To determine whether an absent party is indispensable, courts consider four factors:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

As demonstrated below, JMB is not an indispensable party under the Rule 19(b) test.

a.    <u>Contrary to the Owner's Assertion, Courts Have Not Created a Rule that All Contracting Parties are Indispensable to a Lawsuit Involving Their Contract</u>

Without meaningfully engaging in any discussion of the four Rule 19(b) factors, the Owner superficially posits that JMB is indispensable simply because it signed the Settlement and Dedication of Contract Balance Agreement.  (Mot. 13 – 14.)  The Owner relies upon several cases for its contention that all contracting parties are indispensable to a lawsuit rooted in the contract they executed.  The Owner's cases, however, undermine the supposed bright-line rule that the Owner presents to the Court.  As a practical matter, if courts had created such a rule for contract cases, no reason would exist for evaluating any of the Rule 19(a)(1) factors since the contract itself would resolve both the "required" and "indispensable" analysis.  <u>Cf.</u> <u>Provident Tradesmens Bank & Trust Co.</u>, 390 U.S. at 742 ("Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation.");  <u>see also</u> <u>Janney Montgomery</u>, 11 F.3d at 406 (holding that, if a contract imposed joint and several liability on its co-obligors, "complete relief may be granted in a suit against only one of them").  Indeed, the Owner has misstated the rationale presented in every single one of its cases.  Far from a rule that all the parties to a contract must be joined regardless of their connection to the allegations in the operative pleading, the Owner's cited authorities stand for varied propositions, none of which require a finding that JMB is a required or indispensable party to the Surety's action.

The primary case that the Owner relies upon is <u>Rashid v. Kite</u>, 957 F. Supp. 70, 74 (E.D. Pa. 1997).  In that case, the court dismissed the case because the plaintiff alleged state law claims in federal court against a non-diverse defendant who the plaintiff alleged, on the face of his complaint, was the actual contracting party who committed the claimed fraud.  <u>Rashid</u>, 957 F.

Supp. at 74 ("according to Plaintiff's Complaint, Kurtz [the non-diverse party] executed the Agreement on behalf of a corporation that does not exist and is therefore himself a party to the Agreement").  Thus, <u>Rashid</u> does nothing more than further the fundamental tenet of diversity jurisdiction under 28 U.S.C. § 1332 – claims rooted in state law cannot be brought in federal court against a citizen of the same state as the plaintiff.

Similarly unremarkable, the Owner's other cases enforced the rudimentary principle that, when a plaintiff alleges claims for breach of contract or claims arising under a contract, the plaintiff must name as a defendant the party who owed the contractual duties that the plaintiff claims were breached.  In other words, a plaintiff generally cannot seek damages from one party for another party's alleged breach.  <u>See</u> <u>Gregoria v. Total Asset Recovery, Inc.</u>, 2015 WL 115501 (E.D. Pa. 2015) (requiring plaintiff to join lender in a suit arising from their loan agreement when the plaintiff brought statutory claims against other parties who were not signatories to the loan agreement with the plaintiff and the absent lender); <u>Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co. Ltd.</u>, 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (dismissing plaintiff's claims for breach of contract and tortious interference against a defendant who did not sign the contract, stating "[t]he court does not see how Plaintiff can maintain its contract-based claims against a corporation that was not a party to the contract"); <u>F&M Distrib., Inc.</u>, 129 F.R.D. at 498 (dismissing action by plaintiff where defendant on breach of contract claim had not contracted with plaintiff, stating "F&M did not enter into any contract with American.  Rather it signed a contract with CMI and now seeks damages from American for CMI's alleged breach of that agreement"); <u>and</u> <u>Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.</u>, 456 F. Supp. 831 (D. Del. 1978) (plaintiff sued the wrong entity, Ashland Oil, Inc., which was not a party to the subject contract).

While these cases remind plaintiffs the valuable lesson that they should name the alleged breaching party as a defendant, nothing in these decisions support the Owner's claim that the Surety should have joined JMB – a party who has disclaimed any interest in the Unpaid Contract Funds and whether disputed funds are escrowed– in a lawsuit focused on resolving an existing dispute about the Owner's duty to fund an escrow account in favor of the Surety.

> b.   The Remaining Rule 19(b) Factors Weigh Heavily in Favor of Finding that JMB is Not Indispensable to this Action

Should the Court nevertheless deem it warranted to analyze the Rule 19(b) factors despite the Owner's failure to demonstrate that JMB is required to resolve the Surety's actions, the Court should conclude that all the factors weigh heavily in favor of not finding JMB to be indispensable to this action.  As addressed at length above in the Surety's application of the Rule 19(a) factors, JMB's absence from the Surety's declaratory judgment and injunction actions will not result in any prejudice to the existing parties, or to JMB.  See Gen. Refractories, 500 F.3d at 320 (The first factor "overlaps considerably with the Rule 19(a) analysis").  Once again, no prejudice would result if JMB is not joined because the Owner's performance of its obligation to fund the escrow account flows only to the Surety, not to JMB.  Moreover, if the Court declares that the Owner is presently obligated to fulfill its escrow account obligation as the Surety requests, then the Owner will not have any threat of inconsistent obligations concerning the funds in question.  Since no prejudice would result if JMB is not joined in this case, the second 19(b) factor, which evaluates whether a court could shape the relief awarded to minimize prejudice, also would place this factor squarely on the surety's side of the ledger.

The third factor, which evaluates whether a judgment rendered in this case without JMB "would be adequate," also strongly supports leaving JMB on the sidelines here.  Relying upon Provident Tradesmens Bank & Trust Co., the U.S. Court of Appeals for the Third Circuit ("Third

Circuit") has stated that this factor "considers the extent to which exclusion of an interested person would leave significant matters unadjudicated." <u>HB Gen'l Corp. v. Manchester Partners, L.P.</u>, 95 F.3d 1185, 1197 (3d Cir. 1996).  This action is a necessary precursor to the parties' agreed-upon means of dispute resolution so that an arbitration, if necessary, can distribute disputed Unpaid Contract Funds placed in escrow as the Settlement and Dedication of Contract Balance Agreement envisions.  The fact that the parties agreed to arbitrate the underlying disputes governing the disposition of the escrowed funds necessarily ensures that all matters presently ripe for adjudication at this juncture will be adjudicated in this lawsuit before the Court.

Finally, even if the Owner's underlying construction claims against the Surety and/or JMB are not arbitrable, dismissal for nonjoinder is unwarranted because the Owner could plead its claims against JMB by third-party practice in this lawsuit.  Doing so will not destroy diversity, so there is simply no need for the Owner's procedural and jurisdictional jockeying.  The Owner plainly recognized this conundrum, which is why it wants to "align" JMB as a plaintiff along with the Surety to claim that JMB's alignment on the same side of the case as the Surety destroys diversity with the Owner.  While no basis exists to join JMB as a required and indispensable party to the Surety's causes of action, even if JMB were joined in this suit and even if JMB were aligned as a putative "plaintiff" as the Owner claims, the Owner's procedural conclusion that its desired alignment would undo the Court's subject matter jurisdiction is an incorrect statement of controlling precedent in the Third Circuit.  (<u>See</u> Mot. 16 ("if JMB's Work is defective … as Owner contends, then neither JMB nor F&D are entitled to the remaining Contract funds.  The necessary realignment of F&D and JMB destroys the Court's subject matter jurisdiction").)

Contrary to the Owner's assertion, the Third Circuit has repeatedly reaffirmed that, "in a diversity action, the district court may exercise supplemental jurisdiction over a *defendant's*

counterclaim against non-diverse parties joined as third-party defendants to the counterclaims."
HB Gen'l Corp., 95 F.3d at 1197-98 (italics in original) (citing In re Tex. E. Transmission Corp.
PCB Contamination Ins. Coverage Litig., 15 F.3d 120, 1236-38 (3d Cir. 1994) cert denied sub
nom. Tex. E. Corp. v. Fid. & Cas. Ins. Co., 513 U.S. 915 (1994)); Janney Montgomery Scott, Inc.,
11 F.3d at 412, n. 15 (district court would have supplemental jurisdiction if the defendant
impleaded another party on its claim for contribution, even though the defendant/third-party
plaintiff and the potential third-party defendant were citizens of the same state); see also Dev. Fin.
Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 160 (3d Cir. 1995) (under 28 U.S.C. §
1367(b), district courts maintain supplemental jurisdiction over a counterclaim or cross-claim
raised by an intervening defendant, even where the intervenor shares citizenship with an original
party).  According to this controlling precedent, should the Owner seek to join JMB, and even if
JMB were aligned as a plaintiff with the Surety vis-à-vis the Owner's counterclaims, the Owner's
counterclaims against JMB would fall within the Court's supplemental jurisdiction under 28 U.S.C.
§ 1367 and not require complete diversity with respect to those counterclaims.  As such, even if
the Court accepted the Owner's invitation to litigate the underlying construction disputes (which
the Court should rightly refuse given the parties' arbitration agreement), the Court will still have
subject matter jurisdiction over the Surety's action against the Owner, and the Owner would be
unable to disturb that finding by joining JMB as a party to this lawsuit.

Finally, the fourth factor – whether the plaintiff would have an adequate remedy if the
action were dismissed for nonjoinder – bears little weight here because "the availability of an
alternative forum cannot be the sole basis for dismissing a suit commenced in the federal courts."
Bank of America, 844 F.2d at 1055 (citation and internal quotation omitted).  While the Owner
contends that its Chester County action is a better forum for "all claims arising from the Project"

(Mot. 17), this assertion conveniently fails to address why its state court case seeking to litigate the underlying construction claims should supplant the Court's jurisdiction to resolve the discrete legal issues presented in the Surety's Complaint.   The Owner also purposefully avoids the arbitration agreement in Sections 14 and 15 of the Settlement and Dedication of Contract Balance Agreement that should prevent the Chester County action from proceeding altogether.   As further subterfuge, the Owner also fails to inform the Court in its Motion that it filed the Chester County action *two weeks after* being served with a summons and the Complaint in this case.   Quite clearly, the Owner's Motion to dismiss really has nothing to do with a supposed nonjoinder of an essential plaintiff to the Surety's Complaint.   To the contrary, the Motion has everything to do the Owner's desire to wrest control of this action from the Court and to become a plaintiff in its own suit in which it avoids its obligation to escrow disputed Unpaid Contract Funds before addressing the merit of its claims.   Fortunately, the Owner's procedural jockeying is wholly unsupported by any Rule 19 joinder analysis.

In sum, the Owner has not shown that JMB is a necessary, much less an indispensable party to this action.   Accordingly, the Owner's Motion under Rule 12(b)(7) should be rejected.

### B.   The Owner's Motion to Dismiss the Surety's Cause of Action for Injunctive Relief is Specious and Should Be Denied

Count Two of the Surety's Complaint seeks an injunction whereby the Court orders the Owner to fulfill its contractual obligation to deposit disputed Unpaid Contract Funds in the escrow account as agreed upon in the Settlement and Dedication of Contract Balance Agreement.   In the Complaint, the Surety pled sufficient facts establishing its right to such an injunction.   See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).   As set forth in the Complaint, the Owner agreed to place disputed Unpaid Contract Funds in escrow (Compl. ¶¶ 28 – 32), the Owner has failed to perform this obligation (Id. at ¶ 46), and the Owner's failure "is nullifying the necessary

protection expressly bargained for by the Surety in the Settlement and Dedication of Contract Balance Agreement, thereby changing the status quo for its own betterment and shifting to the Surety the significant risk of Owner insolvency during the pendency of the dispute" (Compl. 69). In addition, the Complaint explains that, if the injunction is granted, then neither the Owner nor third parties will be harmed for two reasons.  First, the disputed Unpaid Contract Funds are simply preserved by a third party and not in the possession of the Surety.  (Id. at ¶ 74.)  Second, only the Owner and/or the Surety are entitled to a distribution of the funds as part of an award in arbitration. (Id. at ¶ 75.)

In its Motion, the Owner does not contend that the Surety fails to plead facts satisfying the requisite elements of an injunction.  Failing to do so, the Owner's Motion presents no basis for dismissal of Count Two at the pleadings stage.  At this stage of the case, "[t]he court's determination "is not whether the non-moving party will ultimately prevail but whether that party is entitled to offer evidence to support the claims." Tripodi v. Coastal Automation LLC, 2007 WL 2844908 (E.D. Pa. 2007); see also Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council, 964 F.3d 218, 226 (3d Cir. 2020) (A Rule 12(b)(6) motion tests the sufficiency of the complaint to determine whether, accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom there is no reasonable reading upon which the plaintiff may be entitled to relief"). As the Surety has pled a proper basis for injunctive relief (which the Owner concedes), the Motion should be denied so that the Surety receives its rightful opportunity to adjudicate its causes of action.

While accepting the sufficiency of the Surety's pleadings, the Owner's Motion seeks dismissal of Count Two based upon challenges to the substantive merits of the Surety's case that are inappropriate in a Rule 12(b)(6) motion.  The Owner first argues that the Surety "cannot

establish that it will incur irreparable harm that is not compensable by monetary damages" and the "relief sought by F&D is entirely monetary in nature." (Mot. 18.)   These assertions are the proverbial "putting the cart before the horse," as they focus on the merit of the Surety's causes of action after the pleadings are joined, and not whether the Surety has properly pled its entitlement to relief.   See Tripodi v. Coastal Automation LLC, 2007 WL 2844908 at *2.

Nevertheless, since the Owner raises these matters, it is worth noting that the Owner's assertions are wrong.  The Surety is not seeking monetary relief in this case because it is not asking for a money judgment.  As the Complaint emphasizes, Count Two seeks the enforcement of the escrow account provisions, which are security protections guarding against the risk of Owner insolvency that are critical to the Surety to partially offset its expenditure of $23 million to complete the Owner's project.  (Compl. ¶¶ 21, 69 – 70.)  Memorializing the centrality of the Owner's security promise, the Settlement and Dedication of Contract Balance already establishes that the Surety's loss of this bargained-for protection causes irreparable harm to the Surety: "[t]he parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof…"  (Compl. ¶ 72.)  It is, therefore, disingenuous for the Owner to suggest that the Surety cannot prove irreparable harm given that the Owner already agreed irreparable harm results from the exact circumstance that the Surety now faces.

Second, the Owner contends that Count Two should be dismissed because the Surety does not have an "indisputably clear" right to an injunction.  This argument is based on nothing more than self-serving, uncorroborated, and factually wrong claims about the status of the construction work.  All of the Owner's self-serving claims are factual disputes that are universes away from the factual averments in the Complaint and, therefore, beyond the proper scope of a Rule 12(b)(6)

motion.   That notwithstanding, the Owner's "indisputably clear" standard is based upon inapplicable law governing a court's review of a <u>motion for preliminary injunction</u>. (Mot. 18 <u>citing Hope v. Warden York Cty. Prison</u>, 972 F.3d 310, 320 (3d. Cir. 2020) (reviewing District Court's order granting preliminary injunction).)   In fact, the Owner's Motion refers in multiple instances to purported standards for evaluating a motion for preliminary injunction.  (Mot. 17 – 18.)  The Owner's attempt to frame the Surety's Complaint as a request for a preliminary injunction is nonsensical, and of course, premature, as the Surety has not yet moved for a preliminary injunction.

In sum, the Surety has indisputably pled a proper cause of action for injunctive relief and is entitled to an opportunity to prove it.   The Owner's motion to dismiss Count Two of the Complaint under Rule 12(b)(6), therefore, should be denied.

>    **C.    This Action Should Not Be Indefinitely Stayed in Favor of the Second-Filed Chester County Where the Owner Ignores Its Obligation to Pay the Unpaid Contract Funds to the Surety or Deposit Disputed Funds into an Escrow Account**

Finally, the Court should not indefinitely stay this action as the Owner requests.

The Owner appeals to the Court's discretion to suspend this case while the Chester County action proceeds, yet the case it cites for the standards guiding the Court's discretion explains why such a stay is completely unwarranted.   According to <u>MEI, Inc. v. JCM Am. Corp.</u>, 2009 WL 3335866 at *4 (D. N.J. 2009), a stay should not be considered unless the outcome of another case "may substantially affect or be dispositive of the issues <u>in a case pending before a district court</u>" (internal quotations omitted and emphasis added).  The court in <u>MEI, Inc.</u> further recognized that, "[g]enerally as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  <u>MEI, Inc.</u>, 2009 WL 3335866 at *4 (internal citations omitted).

In arguing that the second-filed Chester County action should proceed while the Surety's first-filed action with jurisdiction in this Court should not, the Owner completely disregards the guidelines set by its own authority. The Owner instead argues for the Chester County action to take precedence over this first-filed action under the theory that "the same issues, involving, *inter alia*, … the Owner's entitlement to the Contract funds, will be simultaneously litigated in both federal court and in Chester County." (Mot. 20.) That statement not only fails to properly defer to the federal court with jurisdiction rather the second-filed state court action, as <u>MEI, Inc.</u> affirms, but it is also entirely false. As demonstrated elsewhere in this Opposition, the Chester County action decidedly avoids the Owner's obligation to pay Unpaid Contract Funds to the Surety, or the escrow account, <u>before</u> arbitration of those substantive construction disputes. Given that the Owner fails to address its obligation to pay funds to the Surety or to the escrow account before arbitrating, as it agreed to do in the Settlement and Dedication of Contract Balance Agreement, there is nothing in the pleadings that the Owner filed in the Chester County action that would "substantially affect" or "be dispositive of" the declaratory and injunctive relief requested by the Surety in this Court. In reality, the Owner posits a request for a stay that has the contractual disputes resolution process completely backwards. According to Sections 14 and 15 of the Settlement and Dedication of Contract Balance Agreement, resolution of the Surety's causes of action here, which will ensure that the Owner fulfills its obligation to pay the Surety or fund the escrow account, is a necessary predicate to litigate the parties' ultimate entitlement to the Unpaid Contract Funds in the arbitration forum, not the other way around.

No legal basis or facts justify a stay of this action while the Chester County action proceeds, and therefore, the Owner's motion for a stay should be denied.

## III.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Owner's Motion to Dismiss the Complaint, or in the

alternative, to stay this action, should be denied in its entirety.

**ORAL ARGUMENT IS RESPECTFULLY REQUESTED**

Dated: September 29, 2021                     Respectfully Submitted,

/s/

Noah H. Charlson
Charlson Braber McCabe & Denmark, P.C.
1628 JFK Blvd., Suite 1803
Philadelphia, PA 19103
Tel: 215-447-7401
noah@charlsonlaw.com


Christopher J. Brasco (pro hac motion to be filed)
Adam M. Tuckman (pro hac motion to be filed)
Noah C. Meissner (pro hac motion to be filed)
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, VA 22102
Tel: 703-749-1000
cbrasco@watttieder.com
atuckman@watttieder.com
nmeissner@watttieder.com

*Attorneys for Plaintiff,*
*Fidelity and Deposit Company of Maryland*

## <u>CERTIFICATE OF SERVICE</u>

I certify, that on the 29th day of September, 2021, the foregoing Opposition to Motion to Dismiss, or in the Alternative, Stay Action, was served upon the following by the Court's ECF system:

Sandhya M. Feltes
Kaplin Stewart
910 Harvest Drive
Blue Bell, PA 19422

Steven M. Coren
Kaufman, Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103

*Attorneys for Defendants*

/s/
Noah H. Charlson