**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**FIDELITY AND DEPOSIT COMPANY**
**OF MARYLAND,**

      Plaintiff,

      v.

**MAIN STREET PHASE II, L.P., et al.**

      Defendants.

Case No: 2:21-cv-03576-WB

**PLAINTIFF'S SUR-REPLY MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION TO STAY ACTION**

In accordance with the Court's Order dated November 8, 2021 (ECF No. 19), Plaintiff, Fidelity and Deposit Company of Maryland ("the Surety"), by and through its undersigned counsel, respectfully submits this Sur-Reply Memorandum in Opposition to the Reply Memorandum ("Reply") in Support of the Motion to Stay Action ("Motion to Stay") filed by Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. (collectively, "the Owner").

I.      **INTRODUCTION**

The Surety filed its Complaint in this action for a specific, narrow purpose: to obtain the Court's reading of the parties' Settlement and Dedication of Contract Balance Agreement to resolve an ongoing dispute between the Surety and Owner concerning the Owner's funding and escrow obligations in the agreement. Consistent with its interpretation of the Settlement and Dedication of Contract Balance Agreement, the Surety also requests the Court to compel the Owner to deposit the Contract Balance in the established Escrow Account by means of an injunction and/or order of specific performance. In this regard, Section III.7 of the Settlement and Dedication of Contract Balance Agreement recognizes "irreparable damage" occurs when "any of provision of this

Agreement [is] not performed in accordance with its terms." Section III.7 also expressly affords the Surety the right to specific performance of the agreement, along with any other legal or equitable remedy, in the event of the Owner does not meet its contractual obligations to the Surety, which necessarily include its funding obligations.   (Compl. Ex. B.)   The Court's legal determinations regarding the limited contract dispute framed in the Complaint will terminate this controversy and close this case.

In response to the Surety's Complaint, the Owner filed a motion styled as a "Motion to Stay."  In its Reply, however, the Owner reveals the true purpose of its filing.  Therein, the Owner asks the Court to cede its jurisdiction to the Court of Common Pleas of Chester County for the Surety's causes of action to be decided in the forum of the Owner's choosing.  (E.g., Reply 6 (the Surety "will not suffer harm or injury if the federal action is stayed.  F&D can seek a declaratory judgment, mandatory injunction or specific performance in the Chester County Action").)

The Owner's Motion to "Stay" should be rejected.  The Surety properly came to this Court for a speedy resolution of this contract interpretation dispute, as is its right to do under federal law and under the Federal Rules of Civil Procedure.  There is simply no authority, under any stay or abstention doctrine, for the Owner-Defendant to dictate the forum in which the Surety's ripe, properly asserted causes of action are heard.  Indeed, in its attempt to negate the Surety's proper selection of the federal forum and wrestle this case away from the Court, the Owner's Reply applies the wrong abstention standards and proposes to transform the Surety's discrete causes of action into a sprawling, protracted action to resolve each of the many underlying construction disputes.

The Owner's improper request that the Court abstain in favor of the Chester County Action primarily fails because this action and the Chester County Action are not "truly duplicative" and therefore, are not "parallel" proceedings that warrant consideration of abstention.  In this case, the

central issue underlying each of the Surety's causes of action is whether the Settlement and Dedication of Contract Balance Agreement requires the Owner to escrow disputed funds for distribution at the conclusion of the agreed-upon ADR process, or whether the Owner gets to act as the self-determined escrow agent and negate any meaning ascribable to the escrow provisions. The Owner's Complaint in the Chester County Action does not seek to resolve the parties' competing interpretations of the Owner's escrow obligation. The Owner's Complaint neglects the Owner's escrow obligation altogether. The Chester County Action presents completely different claims, disputes, relevant agreements, rights, obligations, causes of action, and litigants.

Unable to demonstrate that this case and the Chester County Action are parallel for purposes of weighing abstention, the Owner attempts to manufacture a relationship between the two cases premised upon the erroneous assumption that the Owner's payment and escrow obligations are only triggered when the Owner decides the construction work is finally complete. By alleging specious claims to deny the work is complete and ignoring its architect's conclusion that the work was 99.53% complete as April 30, 2021 (See Compl. ¶ 35), the Owner is denying any obligation to perform its funding/escrow obligations until a final adjudication on the merits of its construction defect claims, which are now asserted in the Chester County Action.[1] The Owner's distorted interpretation of the Settlement and Dedication of Contract Balance Agreement, by which it becomes the escrow agent during the ADR process, is based upon cherrypicked, carefully truncated phrases that are taken out of context from the entire agreement. Nonetheless, the interpretation of this Agreement is the precise issue before this Court *on the merits*. Each of the

---

[1] The Surety has responded to the Chester County Action by filing Preliminary Objections. The Surety seeks dismissal of the Owner's underlying construction claims against the Surety and JMB on two grounds. First, the Owner's withholdings are the proper subject of arbitration after the Owner has complied with its escrow obligations. Second, in the event the court in Chester County determines that the Owner's claims are not arbitrable, then the Chester County Action should still be dismissed because this Court has exclusive jurisdiction over the proper disposition of the Contract Balance.

Owner's arguments for ceding jurisdiction are based upon the Owner's assumption that it has properly interpreted its escrow obligations, and thus, beg the question. The Court should simply decide which of the parties' competing interpretations is correct in a final adjudication of this case and not send the merits decision to another court based on the Owner's errant assumptions.

As the Chester County Action is not parallel to this action, the abstention inquiry ends, and the Owner's motion for a "stay" should be denied on that basis alone. Nonetheless, there are additional reasons why the Owner's requested abstention is improper. All of the factors that courts consider in an abstention inquiry weigh in favor of the Court exercising jurisdiction, not abstaining from it. Moreover, the Owner presents no basis for the Court to stay this case by exercising its inherent power to control its docket. In fact, the indefinite stay that the Owner requests violates established precedent in this Circuit.

For these reasons that are further addressed below, the Surety respectfully requests that the Court deny the Owner's Motion to "Stay" so that this matter can be expeditiously resolved.

## II.   THE OWNER'S JURISDICTIONAL GAMBIT OMITTED MATERIAL DISTINCTIONS BETWEEN THE SURETY'S FEDERAL ACTION AND ITS CHESTER COUNTY ACTION

To set the stage for its misapplication of the stay doctrines addressed in its Reply, the Owner first mischaracterizes and ignores several relevant distinctions between the Surety's Federal Action and its Chester County Action.

First, the Owner fails to mention in its Reply that the Surety's action in this Court was filed three weeks earlier than Owner filed its Chester County Action. The Surety served the Owner eight days after filing. Thus, both the filing and service of this case predate the Owner's filing of the Chester County Action.

Second, in the later-filed Chester County Action, the Owner only seeks to adjudicate its

alleged construction defect and delay claims.  It does not seek to adjudicate the parties' existing dispute concerning their respective rights and obligations under the Settlement and Dedication of Contract Balance Agreement that have been raised by the Surety in this action.  In particular, the Owner's Chester County Action does not mention, much less try to resolve, whether it presently must fulfill its contractual obligations concerning project funding and depositing disputed funds to the Escrow Account.  In fact, in full view of the Surety's federal action, the Owner's Complaint decidedly avoids *any* reference to the Owner's obligations under Section II.7 to deposit disputed Contract Balance funds into the Escrow Account.  The word "escrow" appears nowhere in the Owner's Complaint.

Third, the parties' agreement to an ADR process for their disputes concerning the Contract Balance, which includes arbitration, is similarly ignored, both in the Owner's Complaint in the Chester County Action, as well as in the Owner's Motion to Stay and Reply.

Fourth, on a related point, the Owner's Reply neglects the fact that its claims against the Surety in the Chester County Action potentially may be summarily dismissed when the state court rules on the Surety's Preliminary Objections.  The Owner's Reply does not mention the Surety's Preliminary Objections.  Instead, it buries the existence of the Surety's filing in the docket report of the case that is attached as an exhibit.  The Surety's Preliminary Objections request that the court in the Chester County Action dismiss the Owner's claims against the Surety and JMB based upon the parties' ADR agreement.  The Surety's Preliminary Objections alternatively assert that the Court in this first-filed action obtained exclusive jurisdiction over the parties' dispute, and therefore, the court in Chester County must yield to the jurisdiction of this Court to decide all matters in dispute that are not arbitrable among the Surety, the Owner, and JMB.  The Owner has opposed the Surety's Preliminary Objections, which remain pending resolution by the court.

The differences between the actions before this Court and the court in Chester County can be summarized as follows:

| | **This Action** | **The Chester County Action** |
|---|---|---|
| **Filing Date** | August 11, 2021 | September 3, 2021 |
| **Parties** | The Surety and the Owner | The Owner, the Surety, JMB, 84 Lumber Co., United Window & Door Mfg., Inc. |
| **Matters in Dispute** | Interpretation of Owner's obligation to fund escrow account at the inception of the ADR process | Alleged construction defects Alleged delay claims Alleged breach of warranties |
| **Escrow Account Dispute Raised?** | Yes | No |
| **Requested Relief** | Declaratory relief, injunction, specific performance (by Surety) | Monetary damages (by Owner) |

## III.  ARGUMENT

The Owner's Motion to Stay should be denied for several independent reasons.

The Motion to Stay does not actually seek a stay, but instead, the Court's abstention from ruling on the Surety's causes of action and referral of this dispute to the Chester County Court. Incorrectly casting this case by ignoring the Surety's independent causes of action for injunctive relief (Count II) and specific performance (Count III), the Owner wrongly applies the Wilton/Brillhart abstention doctrine.  Given the Surety's assertion of several causes of action over which the Court maintains independent subject matter jurisdiction, the Court should instead consider the Owner's request for abstention under the Colorado River abstention doctrine.  Rightly considered under the correct doctrine, there is no basis to justify abstention because this case is not parallel (i.e., it is not duplicative in parties and relief sought) to the state court proceeding, and no extraordinary circumstances exist to warrant this Court ceding its jurisdiction to a state court.

Ensuring an outcome in favor of this Court retaining its proper jurisdiction, even if the

Court considers the Owner's abstention claim under <u>Brillhart</u> and the Court's inherent powers, there is still no justification for the Court to cede jurisdiction over this case.

    **A.**    **<u>The Court Should Not Abstain from Exercising its Jurisdiction Over this Case</u>**

As noted above in the Introduction, the Owner's Reply purports to request a stay pending a final adjudication of the Chester County Action.  (Reply 1.)  Yet, later in its brief, the Owner reveals that its request is functionally a perpetual stay, i.e. abstention, where this Court never rules on the merits of the Surety's causes of action at all.  (Reply 7 ("The Court should abstain from adjudicating F&D's claim under the Declaratory Judgment Act").)  Indeed, an order to escrow funds as security would be meaningless after final resolution of the parties' construction disputes.

The Owner recognizes this inescapable conclusion by arguing the Surety can avert this problem by having this dispute resolved by the state court in Chester County.  Specifically, if the Owner were to have its way, the Surety would "seek a declaratory judgment, mandatory injunction or specific performance in the Chester County Action."  (Reply 6.)  If the Surety were to bring its causes of action in the Chester County Action, the prevailing party, at the conclusion of the Chester County Action, could return to this Court and move to lift the "stay" and enter judgment based on the Chester County court's decision being *res judicata*.  <u>See</u> <u>Trent v. Dial Med. of Fla., Inc.</u>, 33 F.3d 217 at 220-222 (3d Cir. 1994) <u>superseded by statute on other grounds as recognized in</u> <u>Nat'l Cty. Mortg. Co. v. Stephen</u>, 647 F.3d 77, 83 (3d Cir. 2011) (<u>citing</u> <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.</u>, 460 U.S. 1 (1983) and holding that a stay order is immediately appealable if "the object of the stay is to require all or an essential part of the federal suit to be litigated in a state form" where the state decision will constitute *res judicata*).  Revealed for what it truly is, the "stay" framed by the Owner, is thus, a dismissal of the case that deprives the Surety of the federal forum.

When presenting its veiled request that this Court abstain from exercising jurisdiction, the

Owner also errantly suggests that the Court should apply the factors guiding the Court's discretion to decline jurisdiction over *declaratory judgment actions*, as set forth in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942) and reaffirmed in Wilton v. Seven Falls Co., 515 U.S. 277 (1995). (Reply 7 – 9.)  The discretion afforded to courts to decline jurisdiction over *declaratory judgment actions* under Brillhart, however, is not available when the plaintiff's complaint also seeks legal (i.e., coercive) relief in addition to a declaratory judgment.  Rarick v. Fed. Serv. Ins. Co., 852 F.3d 223, 227 (3d Cir. 2017).  Brillhart discretion stems from the permissive language of the Declaratory Judgment Act and the nature of the remedy being prospective guidance for future conduct.  Id. at 227 (citing 28 U.S.C. § 2201(a)).  When an action seeks legal relief, however, the same discretion to decline jurisdiction does not exist for claims not governed by the Declaratory Judgment Act.

In ordinary legal cases, federal courts have a "virtually unflagging obligation to exercise jurisdiction.  There are but a few extraordinary and narrow exceptions to this rule."  Rarick, 852 F.3d at 227 (internal citations and quotations omitted) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 817 (1976) ("Colorado River").  With the degree of discretion available to district courts in cases with legal and declaratory claims previously unclear, the Third Circuit held in Rarick that the "independent claim test" must be applied to determine whether a district court has discretion to decline jurisdiction over the case.  If the legal claims are independent of the declaratory claims, then the court must exercise jurisdiction to hear those claims, "subject of course to *Colorado River*'s exceptional circumstances."  Rarick, 852 F.3d at 229.  Conversely, when the legal claims are dependent upon the declaratory claims, a district court has discretion under Brillhart to abstain from the entire action.  Id. at 228.  As stated in Rarick, "[n]on-declaratory claims are considered to be 'independent' of a declaratory claim when [the legal claims] are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the

requested declaratory relief."  Id.

In a footnote (see Reply 7, n. 7), the Owner tried to summarily dispense with the Surety's causes of action for injunction and specific performance to justify its attempt to employ "the more permissive *Brillhart* analysis," to its Motion to Stay.  See Wilton, 515 U.S. at 285.  In the footnote, the Owner offers, in conclusory fashion, that the Surety's "legal claims are dependent on the declaratory judgment claims."  (Reply 7, n. 7.)  The Owner, however, provides no analysis of the Surety's Complaint under the "independent claim test" to explain its self-advancing conclusion.

Nor could it do so, because the Surety's legal claims are undoubtedly "independent" of the Surety's count for declaratory judgment.  In Count II of its Complaint, the Surety sets forth the facts and the legal basis for an injunction that "requires the Owner to deposit the Contract Balance Due the Surety into the Escrow Account to remedy the irreparable harm that the Surety is currently experiencing…" (Compl. ¶¶ 65 – 76.)   In Count III, the Surety asserts a right to specific performance of the escrow funding provisions of the Settlement and Dedication of Contract Balance Agreement.  (Id. at ¶¶ 77 – 82.)  Count III relies upon Section III.7 of the Settlement and Dedication of Contract Balance Agreement, which expressly acknowledges that the Surety is entitled to specific performance under Pennsylvania law for this precise circumstance.  (Id. at ¶ 81.)  The Court maintains separate subject matter jurisdiction over Counts II and III under the federal diversity statute, 28 U.S.C. § 1332.  In addition, both of these legal claims can be adjudicated by the Court even if the Surety had not requested declaratory relief in Count I.  Wilson v. Hartford Cas. Co., 492 F. Supp. 3d 417, 425 (E.D. Pa. 2020) ("The legal claims found in the Plaintiffs' initial Complaint appear to be both jurisdictionally and substantively independent … of the requested declaratory relief since they satisfy the requirements for diversity jurisdiction under

28 U.S.C. § 1332").[2]  Accordingly, Counts II and III are independent from the Surety's cause of action for declaratory judgment in Count I under the Rarick test, thus making Brillhart inapplicable to this case.  Nothing in the Owner's briefing reflects otherwise.

Because the Surety's Complaint presents independent causes of action separate from its declaratory judgment action, the Court "has a virtually unflagging obligation" to decide the Surety's case, despite pending state court proceedings, unless Colorado River abstention were to somehow apply.  Ryan v. Johnson, 115 F.3d 193, 195-96 (3d Cir. 1997) (citing Colorado River); see also Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009) (The Colorado River doctrine is to be narrowly applied in light of the general principle that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress").  Colorado River abstention is appropriate only when (1) the pending state proceeding is "parallel," and (2) "exceptional circumstances" exist under a multi-factor inquiry that demonstrates "only the clearest of justifications" for a federal court to surrender jurisdiction.  Id.  Given that the Owner does not seek abstention under Colorado River, the Court should deny the Owner's Motion to Stay on that basis alone.

Should the Court nonetheless decide to consider the application of this standard, the Surety demonstrates below that this case and the Chester County Action are not "parallel," and regardless, that "exceptional circumstances" are not present here to justify abstention.

    1.    <u>The Chester County Action is Not a Parallel Action and Therefore, the Abstention Inquiry Ends, and this Court Should Hear the Surety's Case</u>

A "threshold issue that must be decided in any Colorado River abstention case is whether the two actions are parallel." Ryan, 115 F.3d at 196 (internal quotations omitted).  The meaning

---

[2] In accordance with the Court's direction in the Preliminary Pretrial Conference on November 8, 2021, the Surety is not addressing any matters besides the Owner's Motion Stay in this briefing, and therefore, the Surety assumes for purposes of this briefing that subject matter jurisdiction exists notwithstanding the Owner's pending Motion to Dismiss.

of "parallel" litigation for purposes of <u>Colorado River</u> abstention is well-settled in a long line of Third Circuit cases.   A state proceeding would be parallel to the federal action when the two cases are "truly duplicative." <u>Trent</u>, 33 F.3d at 223 (citing <u>Univ. of Md. at Balt. V. Peat Marwick Main & Co.</u>, 923 F.2d 265, 276 (3d Cir. 1994).  For cases to be "truly duplicative," they must involve the same parties, will achieve the same results, and contain "substantially identical claims and nearly identical allegations and issues." <u>Nationwide</u>, 571 F.3d 299 (3d Cir. 2009) (quoting <u>Yang v. Tsui</u>, 416 F.3d 199, 204 n. 5 (3d Cir. 2005); <u>Ryan</u>, 115 F.3d 193 ("Generally, cases are parallel when they involve the same parties and claims"); <u>Trent</u>, 33 F.3d at 224 ("when a federal court case involves claims that are distinct from those at issue in a state court case, the cases are not parallel and do not justify *Colorado River* abstention"); <u>Univ. of Md. at Balt.</u>, 923 F.2d at 276 ("the lack of identity of all issues necessarily precludes *Colorado River* abstention").

In its Reply, the Owner contends that this case and the Chester County Action are parallel under the theory that "resolution of the issues in the Chester County Action will necessarily resolve the issues presented here."  (Reply 8.)[3]  This is yet another instance where the Owner's Reply reaches an errant conclusion by *ispe dixit*.  An actual comparison of the Surety's Complaint here and the Owner's Complaint Chester County Action (Exhibit L to the Owner's Mot. to Dismiss) conclusively demonstrates that the actions are not truly duplicative, and therefore, not "parallel."

Without belaboring this point, the Surety's action is narrowly tailored to resolve a dispute between the Surety and the Owner specifically concerning the Owner's obligation under the Settlement and Dedication of Contract Balance Agreement to deposit the unpaid Contract Balance

---

[3] The Owner primarily relies upon <u>Kelly v. Maxum Specialty Ins. Grp.</u>, 868 F.3d 274, 285 (3d Cir. 2017) for its definition of "parallel."  (Reply 8.)  <u>Kelly</u>, however, defined "parallel" in the context of a discussion of <u>Brillhart</u> discretion, and therefore, is not directly on point.  Nonetheless, the court in <u>Kelly</u> did note the substantial similarities between the two definitions and engaged in a lengthy discussion of <u>Colorado River</u> abstention before holding that the state case and the federal case were not parallel, and abstention was inappropriate.  <u>Kelly</u>, 868 F.3d at 283 – 289.

into the agreed-upon Escrow Account in advance of an ADR process for the parties' substantive disputes.  The Owner's Chester County Action does not seek to resolve this dispute. Indeed, the Owner's Chester County Action completely ignores the Owner's escrow account obligation.  In violation of the parties' arbitration agreement, the Owner's Chester County Action also raises every existing substantive dispute related in any way to the Project as a basis for withholding the Contract Balance that the Owner pledged to the Surety for project completion.  In so doing, it brings claims for monetary damages against different parties than the parties in this case and under different agreements, specifically including breach of contract and breach of warranty claims against JMB and its window manufacturer and supplier, United Windows and 84 Lumber, respectively.  The Court need not rely upon the Surety's characterization of the Chester County Action; the Owner's Motion to Dismiss describes the breadth of its allegations in the Chester County Action for the Court on Page 10 of its moving brief.  (Mem. in Supp. of Mot. to Dismiss 10.)

To summarize, this case is distinct from the Chester County Action in all of the following ways: (1) the number of parties and the identity of the parties; (2) the claims alleged; (3) the agreements implicated by the claims; (4) the central issues in dispute; (5) the nature of the relief requested; and (6) whether the claims asserted implicate the parties' arbitration agreement (here – no, state court – yes).  A "lack of identity" existing between this case and the Chester County Action is an understatement.  They are truly independent, with this action properly understood as the predicate to any other legal proceeding to address the parties' underlying construction disputes.

2.    No Extraordinary Circumstances Exist to Abstain from Exercising Jurisdiction

Because this case and the Chester County Action are not "parallel," the Colorado River abstention inquiry ends, and the Court should adjudicate the Surety's case.  To the extent the Court nevertheless continues the Colorado River two-step inquiry, the Court should find that

12

"extraordinary circumstances" do not exist to abstain from exercising its jurisdiction.

To determine whether "extraordinary circumstances" are present to invoke *Colorado River* abstention, courts weigh six factors:

(i) in an *in rem* case, which court first assumed jurisdiction over the property;

(ii) the inconvenience of the federal forum;

(iii) the desirability of avoiding piecemeal litigation;

(iv) the order in which jurisdiction was obtained;

(v) whether federal or state law controls; and

(vi) whether the state court will adequately protect the interests of the parties.

Nationwide, 571 F.3d at 308.

When analyzing these factors, no one factor is determinative; the inquiry involves "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combining of factors counseling against that exercise." Id. Though, the balancing of these factors is "heavily weighted in favor of the exercise of jurisdiction." Id. (citing Moses H. Cone Mem. Hosp., 460 U.S. at 16). Here, each factor, individually and in combination, strongly tips the scale in favor of the Court exercising jurisdiction over this case.

### i.      *This Court First Obtained Jurisdiction Over the Contract Balance*

This Court was first ahead of the Chester County Action in obtaining jurisdiction over the disposition of the Contract Balance. Pennsylvania state law would deem the Contract Balance to be the "res" for purposes of determining whether a federal or state court obtained exclusive jurisdiction over the matter. In re Estate of Craig, 379 Pa. 157, 195 (1954) ("The line of distinction between proceedings *in personam* and those in rem to determine whether or not the jurisdiction acquired by the court in which they are first instituted is exclusive is not to be drawn with academic

nicety.  The question is rather one of practical regard for the orderly and efficient administration

of justice").  When a first-filed federal action involves the disposition or marshalling of assets, the

federal action obtains the exclusive jurisdiction over the subject matter.  Thompson v. Fitzgerald,

329 Pa. 497, 504 – 6 (1938).  The federal court's jurisdiction "thereby withdraws [the subject matter]

from the jurisdiction of every other court so far as is necessary to accomplish the purpose of the

suit, and the court is entitled to retain such control as is requisite to effectuate its final judgment or

decree free from the interference of every other tribunal."  Id.   Accordingly, the first of the

Colorado River factors militates strongly in favor of this Court exercising jurisdiction.

> ii.      As the Federal and State Courts are Equally Convenient, the Second
>          Factor Sides with the Surety's Case Being Adjudicated Here

In arguing the Brillhart factors in its Reply, the Owner contends that there would be a

"greater inconvenience" to the parties if the parties must litigate purportedly parallel cases in state

and federal court.  (Reply 10.)  This assertion noticeably does not address which *forum* the Owner

believes is convenient, and conversely, which is inconvenient.  Given that the existence of pending

cases in two forums is the result of the Owner filing its case in a separate forum from this Court,

the inconvenience that is so troubling to the Owner could have been avoided had the Owner not

filed its Chester County Action after being served with this case.

As to any alleged inconvenience of *this forum*, the Owner makes no argument that this

Court is an inconvenient forum for itself, its counsel, or any potential witnesses or evidence.  Nor

could the Owner legitimately argue inconvenience, as this Court sits approximately 35 miles from

the Chester County courthouse and this district covers Chester County.  Flint v. A.P. Desanno &

Sons, 234 F. Supp. 2d 506, 513 (E.D. Pa. 2002) (any inconvenience from approximately 35 miles

of travel from the property in question and witnesses residing in Chester County to the Eastern

District of Pennsylvania "is not substantial enough to favor abstention).  Thus, the second factor

favors the Court's exercise of jurisdiction as well.

   iii.  *The Only Federal Policy Relevant to this Case Supports Piecemeal Resolution of the Parties' Disputes, Not Undermine It*

  The third factor, the desirability of avoiding piecemeal litigation, was "by far the most important factor in the *Colorado River* decision itself." Nationwide, 571 F.3d at 308. This factor, however, does not require abstention just because of pending state and federal cases. "Indeed, if the mere possibility of concurrent state-federal litigation satisfies *Colorado River's* 'piecemeal adjudication' test, the test becomes so broad that it swallows up" the fundamental premise of Colorado River, which was the duty to exercise jurisdiction absent extraordinary circumstances. Ryan, 115 F.3d at 198. The test for this factor is, thus, significantly stricter. This factor is met only when there is a "strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." Id.; see also Nationwide, 571 F.3d at 308-09.

  The Owner does not, and otherwise cannot, identify any federal policy enacted into law that would constrain this Court from deciding the contractual dispute at the heart of the Surety's Complaint. To the contrary, there is a strong federal policy *favoring* piecemeal litigation between the parties here because this case fundamentally concerns the operation of an ADR process that includes arbitration. There is a strong federal policy in favor of arbitration that is embodied in the Federal Arbitration Act that requires enforcement of arbitration agreements even if the byproduct of such enforcement is piecemeal litigation. See Moses H. Cone, 460 U.S. at 20-21. In this case, the Surety seeks to enforce an ADR agreement in Sections II.14 and II.15 of the Settlement and Dedication of Contract Balance Agreement that is predicated upon the Owner placing disputed Contract Balance funds into the established Escrow Account. As these arbitration provisions operate to resolve disputes regarding the escrowed funds, the Surety was required to avail itself of the specific performance provision in Section III.7 of the Settlement and Dedication of Contract

Balance Agreement.  As a strong federal policy supports the Surety's efforts to litigate this case as a means of enforcing an ADR agreement in piecemeal prior to implementing the ADR process, this is yet another factor, and the most important one, that weighs heavily against abstention.

*iv.*        *This Court Obtained Jurisdiction Before Chester County*

This factor does not require much explanation.  The Surety filed this case on August 11, 2021 and served the Owner on August 19, 2021.  The Owner filed the Chester County Action on September 3, 2021.  This Court obtained jurisdiction before the Court in Chester County.

*v.*        *Although State Law Governs this Action, this Factor Nevertheless Weighs Against Abstention Because this Case Presents Simple Contract Law Issues and Not Any Novel or Unsettled Areas of Law*

Although Pennsylvania state law will guide the Court's resolution of the Surety's case, the import of this factor is substantially limited.  As explained in U.S. Claims, Inc. v. Smolar, 574 F. Supp. 2d 487, 490 (E.D. Pa. 2008), "abstention cannot be justified merely because a case arises entirely under state law."  While the analysis recognizes the appropriateness of courts interpreting state law when sitting in diversity, it is possible that a "case could involve a skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate."  Ryan, 115 F.3d at 200.  This "run-of-the-mill" contract interpretation dispute is not one of those rare circumstances that would justify surrendering jurisdiction to the state court.  Id. at 199-200; U.S. Claims, Inc., 574 F. Supp. 2d. at 490.

*vi.*        *The Chester County Court's Ability to Protect the Parties' Interests Holds "Little Weight"*

According to the Third Circuit in Ryan, "the mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court enunciated in favor of exercising federal jurisdiction.  115 F.3d at 200.  For this reason, this factor is "normally relevant only when the state forum is *in*adequate" and therefore, a finding in the affirmative serves

as a basis for the case remaining in federal court.  Id. (italics in original).

The Surety certainly does not have any quarrel with the Chester County court's ability to adjudicate this case.  Nonetheless, adjudication of this matter in the state court would constrain the Surety's ability to obtain the same procedural rights to a prompt hearing that are available in this Court.  More specifically, under the Federal Rules of Civil Procedure ("Federal Rules"), Rule 57 provides that the "court may order a speedy hearing of a declaratory judgment action."  That procedural right is not similarly present in the Pennsylvania Rules of Civil Procedure ("Pennsylvania Rules").  The Surety brought this action to the federal forum, in part, because of the rights available under the Federal Rules, particularly including the "speedy hearing" under Rule 57, so that the irreparable damage it faces from the Owner's violation of its escrow obligation can be promptly remedied. Prompt relief is particularly important here where, under the Surety's reading, the Owner's duty to place disputed funds in escrow is the precursor to the agreed upon ADR process.  That the Pennsylvania Rules do not offer the same procedural rights, the state forum should be deemed inadequate for purposes of protecting the Surety's rights under the escrow provisions of the Settlement and Dedication of Contract Balance Agreement.

vii.	*Summary of the Extraordinary Circumstances Inquiry*

As set forth in the above analysis, each of the six factors weigh in favor of the Court rejecting the Owner's requested abstention.  It is not even a close call, as no grounds exist, under any factor, to decline jurisdiction over the Surety's action.  Consequently, in addition to this case not being parallel with the Chester County Action, there is equally no extraordinary circumstance to overcome the duty to exercise jurisdiction over the Surety's action.

3.	<u>The Owner's Request for Abstention Should Be Denied Even if the Court Applies Brillhart and Wilton</u>

The discussion above demonstrating that this case and the Chester County Action are not

parallel for purposes of <u>Colorado River</u> abstention also largely disposes of the Owner's request that the Court decline jurisdiction under the inapplicable <u>Brillhart</u> standard. <u>Kelly</u>, 868 F.3d at 284-85 (describing the definition of parallelism under <u>Brillhart</u> and <u>Wilton</u> as "substantially consistent" with parallelism under <u>Colorado River</u> abstention); <u>see also</u> <u>Reifer v. Westport Ins. Corp.</u>, 751 F.3d 129, 145 (3d Cir. 2014) ("the absence of a pending parallel state proceedings militates significantly in favor of exercising jurisdiction…"). Consideration of the remaining factors as required under <u>Reifer</u> confirms that the Court should exercise jurisdiction over this case even if it applies <u>Brillhart</u> and <u>Wilton</u>. <u>See</u> <u>Kelly</u>, 868 F.3d at 282 ("if a state parallel proceeding does not exist, then as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors").

First, a declaratory judgment by the District Court will resolve the uncertainty surrounding the Owner's present obligation to pay the Surety or fund the Escrow Account, which is the issue that prompted the Surety to file this action. <u>Kelly</u>, 868 F.3d at 288. A declaration from the Court defining the Owner's funding obligations under the Settlement and Dedication of Contract Balance Agreement "would unquestionably clarify and settle the dispute" between the Surety and Owner under that agreement. <u>Id.</u>

Second, as addressed above, "none of the parties will be inconvenienced by having this matter adjudicated in the federal forum." <u>Id.</u>

Third, the Owner's argument that "the public interest is better served if the state court interprets contracts entered into in the Commonwealth of Pennsylvania" has been expressly rejected many times by the Third Circuit, in the context of both <u>Brillhart</u> and <u>Colorado River</u> abstention. <u>See</u> <u>Kelly</u>, 868 F.3d at 288 n. 13 (citing <u>Reifer</u>, 751 F.3d at 147, 149); <u>Ryan</u>. 115 F.3d

18

at 200.  Pennsylvania federal courts sitting in diversity routinely apply Pennsylvania contract law. The only public interest at stake here is the "usual interest in the fair adjudication of legal disputes, an interest which the District Court is well-equipped to address."  Kelly, 868 F.3d at 288.

Fourth, while the next factor considers the "availability and relative convenience of other *remedies*," see Reifer, 751 F.3d at 140, the Owner's Reply does not argue the availability of other remedies, only the availability and relative convenience of another *forum*.  (Reply 11.)   As addressed above, this factor favors exercising jurisdiction because the right to a "speedy hearing" of the declaratory judgment action is available in this Court and not in a Pennsylvania state forum.

Fifth, this memorandum addresses at length the fact that the issue of the Owner's escrow account funding obligation is not pending in the Chester County Action.  "As a result, the general policy of restraint does not apply in the present case."  Kelly, 868 F.3d at 289.

Sixth, "there is no reason at this juncture to be concerned about duplicative litigation as the issues in the two proceedings are distinct."  Id.  Section II and the discussion about the non-parallel nature of this case the Chester County Case make this point clear.

Seventh, the Owner claims that the Surety is somehow engaging in procedural fencing by declaring "its intent to file a motion for a speedy hearing" and to "resolve this legal issue on an expedited basis." (Reply 7.)  As an initial matter, the Surety has not moved the Court for a "speedy hearing" under Fed. R. Civ. P. 57, as the Surety awaits the Court's resolution of the Owner's pending Motion to Dismiss and this Motion to Stay. Nonetheless, should this case proceed, the Surety's request for a speedy hearing is consistent with enforcing the parties' agreement that the Escrow Account should be funded prior to commencing the ADR process to resolve the parties' construction disputes.  A protracted delay to the parties receiving the Court's guidance regarding this dispute will unnecessarily delay the ADR process, which was designed to be a prompt means

of dispute resolution.  An "improper motive" cannot be ascribed to a litigant availing itself of rights found in the Federal Rules for the purpose of promptly enforcing the terms of a contract.

Given the foregoing, the factors enunciated in Reifer cannot overcome the lack of a parallel state proceeding.  As such, no grounds exist to abstain from exercising jurisdiction under Brillhart.

**B.    The Owner Does Not Present Any Clear Case of Hardship or Inequity to Warrant an Indefinite Stay of this Action Under the Court's Inherent Powers**

Finally, the Owner requests that this Court invoke its inherent power to stay this action as a measure to control its docket.  (Reply 3 – 7.)  The Owner's Reply fails to mention that a stay of a civil proceeding is an extraordinary remedy, and that, to obtain a stay pending the outcome of another suit or proceeding, the Third Circuit requires that the proponent of the stay "must state a clear countervailing interest to abridge a party's right to litigate."  CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 139-40 (3d Cir. 2003) (citing Landis v. N. Am. Co., 299 U.S. 248, 255 (1936) ("the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward); United States v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994).  The Owner's Motion and Reply fail to demonstrate any legitimate basis to obtain the extraordinary remedy of a stay that will abridge the Surety's right to promptly litigate its action in this Court.

First, the Owner claims to be seeking only a "limited stay of this action," but as the Surety sets forth above, the Owner's request to stay is rightly considered an invitation to cede jurisdiction.  Moreover, even if this were not the case, the Owner does not, and otherwise cannot, put any *known* time limits on the actual length of the stay that it is seeking.  (Reply 5.)  While the Owner tries to bound the length of stay by the time it takes to finally adjudicate the Chester County Action, in the same brief the Owner explains that it expects its case will involve "substantial written discovery, the exchange of thousands of project documents, dozens of depositions of party and non-party witnesses, expert testimony, dispositive motions and, ultimately, jury trials."  (Reply 12.)  The

protracted litigation that the Owner envisions, of course, also assumes that the court will find the Owner's claims to be not arbitrable, which the Surety vigorously maintains is contrary to Sections II.14 and II.15 of the Settlement and Dedication of Contract Balance.  Nonetheless, no one can predict how long the Chester County case will take to litigate.  Under these circumstances, the indefinite stay that the Owner seeks violates the Third Circuit's pronouncement in Cheyney that "*Landis* approved stays of moderate length, and not those of indefinite duration which require a party to take affirmative steps for dissolution."  703 F.2d at 738.

Second, the purported "undue hardship" that the Owner claims it will face absent a stay is merely the fact that it will have to spend resources litigating the enforcement of its escrow funding obligation in this Court while it seeks to litigate its separate construction claims.  (Reply 5.) As pointed out previously, any perceived duplication is a matter of the Owner's own choosing by virtue of its later state court filing in violation of the parties' ADR agreement.  Furthermore, the Surety already has dispelled the myth that the Chester County Action will have a "jury trial of the same factual and legal issues" as in this Court.  Lastly, the Third Circuit in CTF Hotel Holdings, Inc. rejected as a basis for a stay the notion that a litigant may have to "defend itself twice" if two separate suits are not litigated sequentially as the movant desires.  381 F.3d at 139-40.  Similarly, here, the Owner's perceived "convenience" cannot defeat the Surety's right a federal forum.  Id.

Third, an indefinite stay of this action will cause extreme prejudice and hardship on the Surety.  An indefinite stay of this action would negate the Surety's bargained-for certainty that the millions of dollars the Owner dedicated to the Surety would be available and readily collectible should the Surety eventually prevail on the merits of the underlying disputes.  Each day that passes without the escrow account being funded is another day in which the Owner has permanently deprived the Surety of bargained-for security protections, and in which the Surety faces increasing

risks that the Contract Balance will be non-collectible. An indefinite delay of the Surety's action to enforce the Owner's escrow agreement will further exacerbate the Surety's forced assumption of risks that the escrow provisions were designed to eliminate, all while the Owner benefits from maintaining the Contract Balance in its possession with no accountability. The Surety properly came to this Court for prompt relief from this untenable circumstance and should receive a prompt resolution of its case in accordance with Fed. R. Civ. P. 1.

Fourth, the Owner claims that a stay of this case would simplify the issues in dispute because it "would allow the state court to decide whether JMB completed its work in a timely and defect-free manner and whether there are any contract balances due and owing to JMB." (Reply 6.) The Owner's "simplification" of this case is really an attempt to avoid accountability in any court for its obligations under the escrow funding provisions of the Settlement and Dedication of Contract Balance Agreement because those provisions are effectively meaningless after a final adjudication of the construction disputes. As the defendant in this action, the Owner does not have the right, through the guise of a "stay," to avoid review and enforcement of its contractual obligations and thereby dictate when the Surety is able to seek and obtain judicial relief from the Owner's violations of those obligations.

Based on the foregoing, the Owner does not, and cannot, present any "clear countervailing interest" to abridge or prevent the Surety's right to this federal forum. Therefore, the Court should deny the Owner's request that the Court impose an indefinite stay of this action under its inherent powers.

## IV.    CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Surety's Opposition, the Owner's Motion to Stay this Action should be denied in its entirety.

Dated: November 22, 2021                    Respectfully Submitted,

                                            /s/ *Noah H. Charlson*
                                            Noah H. Charlson
                                            Charlson Braber McCabe & Denmark, P.C.
                                            1628 JFK Blvd., Suite 1803
                                            Philadelphia, PA 19103
                                            Tel: 215-447-7401
                                            noah@charlsonlaw.com

                                            Christopher J. Brasco (admitted pro hac vice)
                                            Adam M. Tuckman (admitted pro hac vice)
                                            Noah C. Meissner (admitted pro hac vice)
                                            Watt, Tieder, Hoffar & Fitzgerald, LLP
                                            1765 Greensboro Station Place, Suite 1000
                                            McLean, VA 22102
                                            Tel: 703-749-1000
                                            cbrasco@watttieder.com
                                            atuckman@watttieder.com
                                            nmeissner@watttieder.com

                                            *Attorneys for Plaintiff,*
                                            *Fidelity and Deposit Company of Maryland*

## CERTIFICATE OF SERVICE

I certify, that on the 22nd day of November, 2021, the foregoing Sur-Reply in Opposition

to Motion to Dismiss to Stay Action, was served upon the following by the Court's ECF system:

Sandhya M. Feltes
Kaplin Stewart
910 Harvest Drive
Blue Bell, PA 19422

Steven M. Coren
Kaufman, Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103

*Attorneys for Defendants*

/s/ *Noah H. Charlson*
Noah H. Charlson