## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,**

      Plaintiff,

      v.

**MAIN STREET PHASE II, L.P.**

and

**MAIN STREET PHASE III, L.P.**,

      Defendants.

Case No: 2:21-cv-03576-WB

## <u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY ACTION</u>

## ORAL ARGUMENT IS RESPECTFULLY REQUESTED

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ................................................................ 2

    A.    Summary of the Relevant Provisions of the Parties' Liquidated Damages
        Settlement Agreement and Dedication of Contract Balance ................................. 3

    B.    The Owner Has Failed to Pay the Surety and Deposit Disputed Contract
        Funds Into Escrow, Leading to the Filing of this Action ...................................... 6

    C.    The Chester County Court Dismissed the Owner's State Court Claims
        Against the Surety and JMB Because the Owner's Claims Are Arbitrable .......... 7

III.  ARGUMENT ....................................................................................................... 10

    A.    The Owner's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(7) Should Be
        Denied Because JMB Is Not a Required or Indispensable Party to Litigate
        the Surety's Causes of Action ............................................................................ 10

        1.    JMB Is Not a Required Party to the Surety's Lawsuit ............................ 11

                a.    The Court Can Grant the Surety Relief Without JMB as a
                        Party Because JMB Has No Legal Interest in Contract
                        Funds Paid to the Surety or the Distribution of Those Funds
                        from the Escrow Account ........................................................... 12

                b.    JMB Does Not Have, Nor Has It Claimed, A Competing
                        Interest in the Contract Funds or the Eventual Distribution
                        of Those Funds from the Escrow Account ................................. 15

        2.    JMB is Not Indispensable Under Rule 19(b) .......................................... 17

                a.    Courts Have Not Created a Rule that All Contracting
                        Parties are Indispensable to a Lawsuit Involving Their
                        Contract ...................................................................................... 18

                b.    The Remaining Rule 19(b) Factors Weigh Heavily in Favor
                        of Finding that JMB is Not Indispensable to this Action ............ 20

    B.    The Owner's Claim that the Chester County Action Resolved the
        Arbitrability of the Surety's Action is Baseless and Should Be Rejected ........... 22

         1.    The Surety Never Conceded that Its Causes of Action Are
                Arbitrable .............................................................................................. 22

         2.    The Chester County Court Did Not Decide that the Surety's Causes
                of Action Are Arbitrable ........................................................................ 25

         3.    The Owner's Commitment to Deposit Disputed Unpaid Contract
                Funds into the Escrow Account is Not a Mere Precondition to
                Arbitration of the Owner's Construction Claims, But Instead, is a
                Material Obligation of the Owner Under the Agreement ........................ 26

**TABLE OF CONTENTS**
(continued)

C.   The Court Should Not Indefinitely Stay This Action in Favor of the
Owner's Arbitration.............................................................................. 28

IV.   CONCLUSION........................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

Angst v. Royal Maccabees Life Ins. Co.,
   77 F.3d 701, 705 (3d Cir. 1996) ................................................................. 12

Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,
   844 F.2d 1050 (3d Cir. 1988) ........................................................... 13, 21

BG Group, PLC v. Rep. of Arg.,
   572 U.S. 25, 35-36 (2014) ....................................................................... 26

Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co. Ltd.,
   594 F. Supp. 2d 522, 532 (D. N.J. 2009) ............................................... 19

Commonwealth v. Think Finance, Inc.,
   2016 WL 183289 (E.D. Pa. 2016) ...................................................... 11, 17

CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.,
   381 F.3d 131 (3d Cir. 2004)..................................................................... 28

F&M Distrib., Inc. v. Am. Hardware Supply Co.,
   129 F.R.D 494 (W.D. Pa. 1990) ............................................................. 11

Gen. Refractories Co. v. First State Ins. Co.,
   500 F.3d 306 (3d Cir. 2007)............................................................... 17, 20

Gregoria v. Total Asset Recovery, Inc.,
   2015 WL 115501 (E.D. Pa. 2015) ........................................................... 19

HB Gen'l Corp. v. Manchester Partners, L.P.,
   95 F.3d 1185 (3d Cir. 1996)..................................................................... 21

Howsam v. Dean Witter Reynolds, Inc.,
   537 U.S. 79 (2002).................................................................................... 26

Huber v. Taylor,
   532 F.3d 237 (3d Cir. 2008)) .................................................................. 16

Incubadora Mexicana, SA de CV v. Zoetis, Inc.,
   310 F.R.D. 166 (E.D. Pa. 2015)................................................... 12, 15, 16

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,
   11 F.3d 399 (3d Cir. 1993)........................................................... 11, 12, 19

Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,
   456 F. Supp. 831 (D. Del. 1978).............................................................. 20

## TABLE OF AUTHORITIES

John Hancock Prop. & Cas. Co. v. Hanover Ins. Co.,
859 F. Supp. 165 (E.D. Pa. 1994). .................................................. 11

John Wiley & Sons, Inc. v. Livingston,
376 U.S. 543 (1964)....................................................................... 26

MEI, Inc. v. JCM Am. Corp.,
2009 WL 3335866 (D. N.J. 2009) .................................................. 29

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,
460 U.S. 1 (1983).......................................................................... 21

Nat'l Liability & Fire Ins. Co. v. Condran,
2021 WL 3884259 (E.D. Pa 2021) ........................................... 13, 16

Owens-Illinois, Inc. v. LakeShore Land Co., Inc.,
610 F.2d 1185 (3d Cir. 1979)......................................................... 17

Provident Tradesmens Bank & Trust Co. v. Patterson,
390 U.S. 102 (1968).................................................................. 18, 21

Rashid v. Kite, 957 F. Supp. 70, 74 (E.D. Pa. 1997) ...................... 19

Steel Valley Auth. v. Union Switch & Signal Div.,
809 F.2d 1006 (3d Cir. 1987)......................................................... 11

Travelers Indem. Co. v. Pauline,
2007 WL 2318104 (M.D. Pa. 2007) ............................................... 13

U.S. v. Rawlings,
2010 WL 2292508 (D. Md., June 3, 2010)...................................... 15

Warren Hill, LLC v. Neptune Investors, LLC,
2021 WL 2102559 (E.D. Pa. 2021) ................................................ 17

**Statutes**

42 Pa. C.S. § 7304........................................................................... 28

9 U.S.C. § 3.................................................................................... 28

Fed. R. Civ. P. 19................................................................... *passim*

Fed. R. Civ. P. 12.......................................................................... 10

Plaintiff, Fidelity and Deposit Company of Maryland ("the Surety"), by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion to Dismiss or, in the Alternative, to Stay Action ("Motion to Dismiss") filed by Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. (collectively, "the Owner") on January 7, 2022.

## I.    **<u>INTRODUCTION</u>**

The Surety commenced this litigation for a narrow, limited purpose: to enforce the parties' funding agreement that requires the Owner to immediately deposit over seven million dollars of unpaid contract funds, which were dedicated to the Surety for project completion, into an escrow account managed by a third-party agent so that the Surety and the Owner can resolve their disputes concerning the disposition of those funds through the parties' selected means of alternative dispute resolution.  The Owner has moved to dismiss this action for lack of subject matter jurisdiction based on the claim that the general contractor for the underlying construction project – Jeffrey M. Brown and Associates, LLC ("JMB") – is a required and indispensable party to determine whether the Owner is presently obligated to fund the escrow account with the contract funds that the Owner contractually dedicated to the Surety ("Unpaid Contract Funds").  The Owner also moves to dismiss this case on the grounds that the Surety supposedly admitted, and the Honorable Judge Jeffrey R. Sommer of the Chester County Court of Common Pleas ("Chester County Court") decided in an Order issued on November 24, 2021 in a related case filed by the Owner, that the Owner's duty to fund the escrow account before this Court is covered by an arbitration agreement. The Owner's theories for dismissal are baseless and should be rejected for the following reasons.

The Owner's Motion to Dismiss under Rule 12(b)(7) fails primarily because the Owner contractually committed the contract funds to the Surety, and as such, JMB does not maintain a divergent interest from the Surety's pursuit of enforcing the Owner's escrow obligation in this case.

This undisputed fact is dispositive of the Owner's claim that JMB is a required and indispensable party under governing law. Consequently, the Owner's motion under Rule 12(b)(7) must be denied.

The Owner's theory that the Surety has "admitted," and the Chester County Court already ruled, that the Surety's case here is subject to arbitration, is equally specious. Resolving the Surety's Preliminary Objections to the Owner's claims in that state court case, the Chester County Court only ruled on the arbitrability of the Owner's specific claims that it brought against the Surety and JMB, which did not address whether the Owner is obligated to fund the escrow account. Accordingly, nowhere in the Chester County Court's Order, either explicitly, or implicitly, did the court decide that the Surety's causes of action here are arbitrable. Moreover, as only the arbitrability of the Owner's state court case was before the Chester County Court, the Surety's Preliminary Objections cannot be construed to argue, let alone concede, that arbitration is the appropriate forum to resolve the issues raised by the Surety *in this action*. The Owner's Motion to Dismiss based on the Chester County proceeding is, therefore, baseless.

## II.   **STATEMENT OF RELEVANT FACTS**

The Owner begins its Motion to Dismiss with an eleven-page "Statement of Facts" section that is comprised entirely of unsubstantiated allegations regarding the parties' construction-related disputes. The Surety is confident that it will ultimately prevail in defeating those claims. In this regard, the Owner's allegations conveniently ignore that its own third-party architect of record for the Project confirmed that, as of the last unpaid payment application dated April 30, 2021, the construction work was 99.53% complete. (Compl. ¶ 35.) Throughout this entire time that the Owner has not been paying the Surety, the Owner also has been leasing its apartments and thereby generating rental income. In fact, publicly available information on the internet shows that the

Owner is marketing its apartments as "[t]he home of your dreams."[1]  The construction project completed with more than $23 million of the Surety's financing has been successful.  The buildings are almost fully occupied, as presently, only 12 out of 412 total units remain available for lease.[2]

Nonetheless, the Owner's recitation of its unfounded claims is completely irrelevant to resolving the Motion to Dismiss.  The reason is that the Surety's ultimate right to receive the Unpaid Contract Funds, and the Owner's defective work allegations, are not at issue in this case. The Owner's "facts," thus, disingenuously invite the Court to plumb the merits of the construction disputes to be negotiated and arbitrated (if necessary), while the Owner ignores the actual dispute before the Court – the Owner's duty to deposit disputed funds in escrow.  Indeed, an interpretation of the parties' agreed-upon payment terms, including the Owner's agreement to deposit disputed contract funds into an escrow account, is the only issue here for the Court to decide.

A.    **Summary of the Relevant Provisions of the Parties' Liquidated Damages Settlement Agreement and Dedication of Contract Balance**

As set forth in the Complaint, the heart of the dispute before the Court is the proper interpretation and enforcement of an agreement entitled, "Liquidated Damages Settlement Agreement and Dedication of Contract Balance" (hereinafter abbreviated as the "Settlement and Dedication of Contract Balance Agreement" or "Agreement").  For context, the Agreement was executed in relation to a construction project undertaken by the Owner to build a multifamily residential and commercial property at the Main Street at Exton shopping center in Exton, Pennsylvania (the "Project").  (Compl. ¶ 8).  The Surety issued a performance bond for the general contractor, JMB, in connection with the Project.  (Id. at ¶ 10).  After the Owner declared JMB in default of its construction contract, the Surety began funding JMB's performance in July 2020

---

[1] https://www.ashbridgeexton.com/
[2] https://www.ashbridgeexton.com/floor-plans/apartments?bedroom=&min_price=&max_price=&availability=yes

subject to a full reservation of rights. (Id. at ¶¶15, 17). In August 2020, the Surety sent the Owner an irrevocable letter of direction executed by JMB that directed all payments due under the construction contract to be paid to the Surety. (Id. at ¶ 18.) Thereafter, the Surety, the Owner, and JMB, executed the Settlement and Dedication of Contract Balance Agreement, in part, to address how completion of the Project would be financed, necessarily including the Owner's existing obligation as obligee under the Performance Bond to "commit[] the Balance of the Contract Price to the Surety" in support of the Surety's completion efforts. (Id. at ¶¶ 19, 20).

Satisfying and reaffirming the Owner's commitment of the contract funds to the Surety, the Agreement states that the Owner "dedicates the unpaid Contract Balance to the Surety, except as detailed in Section 7 above." (Compl., Ex. B at § II.10; Dkt. 1-2). Providing a limited carve-out of the Owner's obligation to pay the entire Unpaid Contract Funds to the Surety, Section II.7 of the Agreement states that the Owner will release Unpaid Contract Funds to the Surety in progress payments, paid monthly, except that the Owner may retain 29% of each pay application to partially compensate the Owner for previously accrued liquidated damages settled under Section II.6 of the agreement. In addition, Section II.7 of the Agreement addresses how the parties would resolve any Owner claims that Unpaid Contract Funds dedicated to the Surety were nevertheless not due and owing to the Surety. In that provision, the Owner agreed, by the time of Final Completion, it will have paid all Unpaid Contract Funds either (i) to the Surety per the progress payment process explained above, or as retainage, or (ii) into an escrow account managed by an independent third party, pending an amicable resolution of the Owner's decision not to pay funds, or through arbitration of any remaining dispute. (Id. at § II.7.) Section II.7 of the Agreement specifically provides, in relevant part, the following:

> When Final Completion is achieved, the Owner will either release the Retainage
> and any unpaid Contract Balance to the Surety, or a portion thereof that the Owner

determines is due and owing, and deposit the remaining Retainage amount and unpaid Contract Balance, if any, into an escrow account maintained by a third party escrow agent selected by the parties ("Escrow Account"), **such that the full amount of Retainage and unpaid Contract Balance has either been paid to the Surety and/or into the Escrow Account**.

(Id.)

By the Settlement and Dedication of Contract Balance Agreement, the parties, thus, negotiated an agreement that prohibited the Owner from maintaining possession of the Unpaid Contract Funds as the Surety financed the construction work.  It obligates the Owner either to pay the Surety, or deposit with the third-party escrow agent any portion of the Unpaid Contract Funds the Owner disputes are owed to the Surety.

Section II.8 provides the framework for establishing the escrow account.  Section II.8 also recognizes that Unpaid Contract Funds deposited by the Owner in the escrow account can be released only by agreement of the Owner and Surety or by a confirmed arbitration award:

> The Parties have agreed that the firm of Land Services USA will serve as the escrow agent to retain escrowed funds, in an interest-bearing account, subject only to release by agreement of Owner and Surety or by court order enforcing an arbitration award as provided in Sections 14 and 15 below.

(Compl., Ex. B, § II.8.)

As referenced in Section II.8, the agreed-upon ADR procedures for distribution of the escrowed funds are found in Sections II.14 and II.15.  Section II.14 requires the parties to engage in "meet and confer" negotiations to determine whether the parties can resolve any "dispute" concerning all or a portion of the funds.  If any ongoing "dispute" remains unresolved after these negotiations, then the parties agreed to arbitrate that dispute under the procedures in Section II.15. (Compl., Ex. B, § II.14.)  Section II.15 of the Agreement is entitled "Dispute Procedure."  Of particular significance to the Owner's Motion to Dismiss, the Dispute Procedure <u>does not</u> contain a provision typically found in standard form construction contracts in which the parties agree to

arbitrate any dispute arising from, or relating to, the contract or the project. Far from such a broad arbitration clause, Section II.15 of the Agreement limits the scope of any arbitration to a specific type of dispute. Distinct from the Owner's duty to deposit funds in escrow in the first instance, the parties agreed to arbitrate only the disputes undergirding the Owner's decision to pay the Unpaid Contract Funds (or any portion thereof) into the escrow account rather than to the Surety. This substantive inquiry would specifically include disputes regarding any assessment of liquidated damages by the Owner for alleged delay, or any other basis for the Owner's decision to withhold Unpaid Contract Funds from the Surety and to pay those sums into the escrow account:

> If any dispute arises among the Owner, the Surety, and/or JMB with regard to liquidated damages that are assessed and paid into the Escrow Account under this Agreement and/or the basis for withholding funds **that are paid into the Escrow Account** under this Agreement, then the following dispute resolution procedures will apply…

(Compl., Ex. B, § II.15) (emphasis added).)

### B. The Owner Has Failed to Pay the Surety and Deposit Disputed Contract Funds Into Escrow, Leading to the Filing of this Action

After the Settlement and Dedication of Contract Balance Agreement was signed in November 2020, the Surety continued to finance construction, and ultimately injected well over $23 million of its own funds into the Owner's construction Project. (Compl. ¶ 35.) As a result, Final Completion was achieved in accordance with the construction plans, specifications, and industry standards, leaving only disputed issues remaining. (Id. at ¶ 36.) Failing to uphold its end of the bargain, the Owner refused to release $7,167,708.63 in Unpaid Contract Funds to the Surety. This balance is comprised of funds requested in monthly payment applications after December 2020, as well as retainage due to the Surety at the end of the Project. (Id. at ¶ 38.) Compounding its breach by failing to make progress payments to the Surety, the Owner also has not fulfilled its commitment to deposit any of the Unpaid Contract Funds into the escrow account. (Id. at ¶ 44.)

Effectively appointing itself the escrow agent for the last thirteen (13) months, the Owner is still in full possession of the Unpaid Contract Funds.  The Owner, however, is not content with merely holding the disputed Unpaid Contract Funds in derogation of its contractual obligations. In the Motion to Dismiss, the Owner has revealed for the first time it has *spent* an unspecified sum of the Unpaid Contract Funds addressing its disputed defect claims before resolution of those claims could occur through the parties' dispute procedure.  (Mot. to Dismiss 21 ("any other unpaid contract balances have been used and/or allocated to repair/replace JMB's defective and non-conforming work").)  The protections afforded to the Surety under the escrow account provisions are, thus, being gutted daily as the Owner depletes the Unpaid Contract Funds.

On August 11, 2021, the Surety filed this action seeking the following relief: (1) a declaration that the Owner is obligated to pay any disputed portion of the Unpaid Contract Funds into the escrow account (Count One); (2) injunctive relief that requires the Owner to deposit the disputed portion of the Unpaid Contract Funds into the escrow account (Count Two); and (3) a cause of action for specific performance, in accordance with Section III.7 of the Agreement (Count Three).  It bears emphasis that the Surety does not request that this Court resolve who is entitled to the disputed Unpaid Contract Funds that presently should be in the escrow account; the Surety simply seeks an order that the Owner must immediately fund the escrow account to prevent any further draining of the Unpaid Contract Funds dedicated to the Surety.

### C.    The Chester County Court Dismissed the Owner's State Court Claims Against the Surety and JMB Because the Owner's Claims Are Arbitrable

In response to the Surety's Complaint, the Owner did not file counterclaims in this action, seek to implead any third parties, or seek to compel/demand arbitration of any dispute, including the Surety's causes of action raised in the Complaint.  Instead, the Owner filed an action in the Court of Common Pleas of Chester County against the Surety and JMB, among others (the

"Chester County Action") where it sought to litigate its construction defect and delay claims rather than arbitrate those claims.  Also telling, the Owner's state court case did not seek an interpretation of its escrow obligations in the Settlement and Dedication of Contract Balance Agreement.

In view of this first-filed action concerning the Owner's escrow obligation, as well as the parties' agreement to arbitrate the disposition of those escrowed funds, the Surety filed Preliminary Objections to the Complaint in the Chester County Action.  (Mot., Ex. M; Dkt. 28-14).  In its Motion to Dismiss filed on January 7, 2022 in this case, the Owner misrepresents the Surety's Preliminary Objections to contain admissions from the Surety that any and all disputes relating to the Settlement and Dedication of Contract Balance Agreement are arbitrable, including the causes of action asserted in the Surety's Complaint in this action regarding the Owner's obligation to fund the escrow account.  Nothing could be further from the truth.  The Surety's Preliminary Objections only argued to the Chester County Court that the Owner's claims *in that lawsuit were arbitrable*, nothing more, nothing less.  (See ECF No. 28-14, Mot. to Dismiss Ex. M at p. 22 of 36 ("Of particular significance to the allegations in the Complaint, the Dispute Procedure expressly requires Main Street to arbitrate all disputes regarding liquidated damages and any other basis for Main Street to withhold Contract Balance funds that are required to be in the escrow.").)  The Surety did not contend that the parties' arbitration agreement covered its causes of action in this case, which seek to interpret and enforce the Owner's obligation to deposit disputed Unpaid Contract Funds in the escrow account (which the Owner omitted from the Chester County Action).

In opposition to the Surety's Preliminary Objections, the Owner did not contest the existence of an arbitration agreement.  The Owner only argued that its claims fell outside of that agreement.  In its Opposition to the Preliminary Objections, the Owner described Section II.15 as a "narrowly tailored arbitration provision…" and one that "clearly and unequivocally requires

arbitration only to resolve disputes over funds deposited into the Escrow Account." (Ex. A at 11 (emphasis added).) While the Chester County Court ultimately disagreed with the Owner's view that the arbitration agreement did not cover its claims that sought to determine the ultimate disposition of disputed funds, the Owner's interpretation of Section II.15 as limited and "only to resolve disputes over funds deposited into the Escrow Account" cannot be avoided.

On November 24, 2021, the Chester County Court sustained the Surety's Preliminary Objection, finding that the Owner's claims against the Surety and JMB were arbitrable under Section II.15 of the Agreement. (Mot., Ex. A; Dkt. 28-2). The Owner's Motion to Dismiss asserts that, when sustaining the Surety's Preliminary Objection, the Chester County Court held that the parties' arbitration agreement is "broad and that all disputes arising from the Liquidated Damages Agreement must be submitted to arbitration." (Mot. to Dismiss 13 (emphasis added).) Again, nothing could be further from the truth. The only arbitrability dispute that the Chester County Court resolved was that "the claims asserted against F&D and JMB in this action are subject to alternative dispute resolution, including binding arbitration…" (Mot. to Dismiss, Ex. A at 5 (emphasis added).) The Chester County Court's Order did not examine, much less decide, whether any claims other than those in the Owner's Complaint were arbitrable.

After its claims against the Surety and JMB were dismissed from the Chester County Court, the Owner returned to this Court for further consideration of its previous Motion to Dismiss. By Order dated December 6, 2021 (ECF No. 27), the Court denied without prejudice the Owner's original motion to dismiss, with the opportunity to refile by January 7, 2022 to address the arbitration issue. The Owner then filed a Demand for Arbitration and Statement of Claim with the American Arbitration Association on January 7, 2022 (the "Arbitration Demand"), the day its Motion to Dismiss was due. (Mot., Ex. B; Dkt. 28-3.) Just as with its Chester County complaint,

9

the Owner's Arbitration Demand does not seek to resolve the issue before the Court, which is whether the Owner is presently obligated to fulfill its escrow obligation under the Agreement.

## III.   ARGUMENT

The Owner's (A) Motion to Dismiss under Fed. R. Civ. P. 12(b)(7); (B) Motion to Dismiss under Fed. R. Civ. P. 12(b)(6); and (C) its request for an indefinite stay of this case, all should be denied for the reasons set forth below.

### A.   The Owner's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(7) Should Be Denied Because JMB Is Not a Required or Indispensable Party to Litigate the Surety's Causes of Action

Resolution of the Owner's present obligation to preserve the Unpaid Contract Funds in escrow is a matter of critical importance that is tailor made for declaratory and injunctive relief, as well as specific performance.  In the Settlement and Dedication of Contract Balance Agreement, the Surety bargained for the dedication of more than seven million dollars of contract funds to support project completion.  It was also agreed that, should disputes arise regarding the contract funds, the Owner would deposit the funds in an escrow account to ensure that substantial collectible monies are readily available to partially offset the Surety's more than $23 million loss.

Seeking to avoid any question whether it is improperly holding the Unpaid Contract Funds, the Owner's Motion to Dismiss contends that the Surety's Complaint should be dismissed because JMB is a necessary and indispensable party under Fed. R. Civ. P. 19 ("Rule 19") that has not joined with the Surety as a plaintiff to enforce the Owner's escrow obligation to the Surety.  However, under the requisite case-by-case Rule 19 analysis, Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 117 n. 12 & 18 (1968), which relies upon the allegations of the Complaint being taken as true, see Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1011

(3d Cir. 1987) (applying Rule 12(b)(7)), JMB is neither required[3] nor indispensable to the narrow dispute the Surety raised in its Complaint. JMB is not a required or indispensable party because JMB directed the Owner to pay remaining Unpaid Contract Funds to the Surety. Under the terms of the Settlement and Dedication of Contract Balance Agreement, JMB, thus, has no interest in litigating whether the Owner must preserve the Unpaid Contract Funds in the escrow account under the Agreement. Indeed, JMB has not sought to join as a party to this escrow account dispute.

Given these indisputable facts, the Owner's Motion to Dismiss fails to address how JMB possibly could be required to determine the Owner's obligations with respect to those specific obligations in the Settlement and Dedication of Contract Balance Agreement that flow only to the Surety. As evidenced by its complete disregard for the escrow provisions in its Motion to Dismiss, it is obvious that the Owner only deems JMB necessary to resolve its own disputed work claims and not to resolve the actual dispute raised in the Complaint. The Owner, therefore, cannot demonstrate "that the absent party [JMB] is needed for a just adjudication" and its Motion to Dismiss on the grounds of nonjoinder should be denied. F&M Distrib., Inc. v. Am. Hardware Supply Co., 129 F.R.D 494, 496 (W.D. Pa. 1990); John Hancock Prop. & Cas. Co. v. Hanover Ins. Co., 859 F. Supp. 165, 168 (E.D. Pa. 1994).

### 1.    JMB Is Not a Required Party to the Surety's Lawsuit

Rule 19(a) defines the parties who are "required" in the sense that their joinder is compulsory "if feasible." Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993). To determine whether a person is "required" for a lawsuit, Rule 19(a)(1) provides that a person must be joined if "(A) in that person's absence, the court cannot accord complete

---

[3] As observed by the court in Commonwealth v. Think Finance, Inc., 2016 WL 183289 at *3, n. 3 (E.D. Pa. 2016), "'necessary' is the old term, no longer in the Rule but still widely used. 'Required' is the current term. Both terms can be misleading; a party might be found 'required' or 'necessary' but not 'indispensable,' and so the suit may proceed without them."

relief among existing parties; (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).  Since the Owner cannot satisfy either condition with respect to JMB in the context of the Surety's declaratory judgment, injunction, and specific performance actions in this case, the Rule 19(a) analysis immediately ends, and the Owner's Motion must be denied.  Janney Montgomery Scott, Inc., 11 F.3d at 404.

> a.    The Court Can Grant the Surety Relief Without JMB as a Party Because JMB Has No Legal Interest in Contract Funds Paid to the Surety or the Distribution of Those Funds from the Escrow Account

The Owner's essential misdirection in its Motion to Dismiss is that it improperly considers whether JMB is required to resolve any and all disputes between the Owner, the Surety, and JMB that have any relationship to the Project, and not whether JMB is required to resolve the narrow escrow account dispute in the Complaint.   (Mot. to Dismiss 15 ("JMB is a necessary and indispensable party for the full and final adjudication of any claim arising out of agreements to which JMB is a party, including the Construction Contract, the Agreement and the Performance Bond".).)  The proper context for determining whether an absent party is "required" under Rule 19(a)(1) is not every conceivable dispute involving the absent party, however.  Instead, the Rule 19(a)(1) inquiry is "limited to whether the district court can grant complete relief to the persons already parties to the action." Janney Montgomery Scott, Inc., 11 F.3d at 405 (emphasis added) ("the effect a decision may have on an absent party is not material"); Incubadora Mexicana, SA de CV v. Zoetis, Inc., 310 F.R.D. 166, 171 (E.D. Pa. 2015) (citing Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 705 (3d Cir. 1996) ("a party is necessary only when nonjoinder precludes the court from effecting relief not in some overall sense, but between the current parties only")).

12

The Project generally, and "any claim arising out of agreements to which JMB is a party," also is not the proper lens under Rule 19(a), as the Owner claims. Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1054 n. 5 (3d Cir. 1988) ("[T]he question of 'complete relief' may not denote final adjudications of all claims between the parties, so long as the relief actually afforded to the parties in the action is meaningful."). In particular, the Owner's allegations against JMB under the construction contract are irrelevant to the Rule 19(a) analysis and have no bearing on the purportedly required joinder of JMB in this case. See Nat'l Liability & Fire Ins. Co. v. Condran, 2021 WL 3884259, at *1, n. 1 (E.D. Pa. 2021) (citing Travelers Indem. Co. v. Pauline, 2007 WL 2318104, at *2 (M.D. Pa. 2007) ("a party's potential claims against a third party does not thereby make the third party a necessary party")).

Therefore, whether "complete relief" is available to the parties in the lawsuit must be determined by reference to the causes of action found in the Surety's Complaint. Here, the Complaint does not broadly seek "the full and final adjudication of any claim arising out agreements to which JMB is a party." (Mot. to Dismiss 15.) Concerning the declaratory judgment action in Count One of the Complaint, Paragraphs 62 through 64 frame the dispute as solely concerning the Owner's funding of the escrow account:

> 62. This controversy is limited to the issue of contractual interpretation and whether the Owner has a contractual obligation under the Settlement and Dedication of Contract Balance Agreement and the Bond to place the Balance Due the Surety into the Escrow Account while the parties arbitrate the merit (or lack thereof) of the Owner's claims.
>
> 63. An actual controversy therefore has arisen and now exists between the Surety and the Owner regarding the interpretation and performance of the Settlement and Dedication of Contract Balance Agreement and the Bond.
>
> 64. The Court's resolution of this controversy between the Owner and the Surety will guide their future conduct by: (i) determining whether and when the Owner must deposit the Balance Due the Surety into the Escrow Account under the Settlement and Dedication of Contract Balance Agreement; (ii) allowing arbitration

between the Surety and the Owner under Section II.15 of the Settlement and Dedication of Contract Balance Agreement to proceed; and (iii) permitting the arbitrator(s) to award the relief (distribution of the Escrow Account) that Section II.15 requires of the arbitration process.

(Compl. ¶¶ 62 – 64.)

Count Two, which seeks an injunction, presents the same discrete issue of the Owner's obligation to fund the escrow account, and the Owner's failure to fulfill that obligation:

69.  By using disputes that it has created as the basis for refusing to contribute the Balance Due the Surety, the Owner is nullifying the necessary protection expressly bargained for by the Surety in the Settlement and Dedication of Contract Balance Agreement, thereby changing the status quo for its own betterment and shifting to the Surety the significant risk of Owner insolvency during the pendency of the dispute.

75.  There is no possibility of harm to any third parties because, as Section II.8 of the Settlement and Dedication of Contract Balance Agreement provides, the Owner and/or Surety are only entitled to distribution of the funds in the Escrow Account at the conclusion of the agreed-upon arbitration process.

(Compl. ¶¶ 69, 75 (emphasis added).)

The allegations in Count Three are consistent with Counts One and Two in that the Surety only seeks relief from the Owner.

The reason why the Owner, and not JMB, is the only necessary party to the Surety's case is that the Owner is the only party in possession of the Unpaid Contract Funds, which were dedicated to the Surety in support of Project completion.  This promise is found most prominently in Section II.10 of the Agreement where the Owner explicitly agreed that it "dedicates the unpaid Contract Balance to the Surety."  (Id. at ¶ 30.)  The Owner further agreed in other provisions that it would pay the Unpaid Contract Funds to the Surety as the completion work progressed (Id. at ¶ 27.)  Accordingly, by Final Completion, the Owner had to pay the Surety the Unpaid Contract Funds due under the Agreement or place those funds in escrow.  (Id. at ¶ 29.)

14

Given that the dispute concerning the present necessity of ordering the Owner to fund the escrow account exists solely between the Surety and Owner, complete relief can be afforded in this action without JMB.  As framed by the Complaint, JMB has no role in the Court's adjudication of this narrow dispute, or in crafting the judgment that the Surety requests from the Court. Accordingly, the Owner's Motion must be denied.

        b.    <u>JMB Does Not Have, Nor Has It Claimed, A Competing Interest in the Contract Funds or the Eventual Distribution of Those Funds from the Escrow Account</u>

Turning to the inquiry under Rule 19(a)(1)(B), the Owner's Motion does not make any serious attempt at arguing that JMB "claims an interest relating to the subject of the action" and that JMB's interest would be impaired or leave the Owner subject to substantial risk of inconsistent or multiple obligations."  Fed. R. Civ. P. 19(a)(1)(B).  Only superficially addressing this factor, the Owner asserts in conclusory fashion that "JMB has a substantial interest in the subject matter, which will be impeded if the litigation proceeds without JMB."  (Mot. to Dismiss 19 – 20.)  This single statement in the Owner's Motion to Dismiss is insufficient under Rule 19(a)(1)(B) because the Owner does not, and cannot, identify when and where JMB itself has *claimed* an interest in the matters asserted by the Surety in this case.  <u>See</u> <u>Incubadora Mexicana, SA de CV</u>, 310 F.R.D. at 171 (finding that defendants failed to establish that absent parties were necessary in that they could only argue that the absent parties *may* claim an interest in the litigation, not that the absent parties *did* claim an interest).  In this regard, the Owner provides no evidence or affidavits from JMB that shed light on the Owner's assertion that JMB would have a divergent interest in the outcome of the escrow account dispute in this action and that JMB has claimed such an interest contrary to the Surety's interest that it must litigate.  <u>See</u> <u>U.S. v. Rawlings</u>, 2010 WL 2292508, at *3 (D. Md. 2010) (Rule 12(b)(7) movant should present affidavits as well as other relevant extra-pleading evidence of persons having interest in the action); 7 Fed. Prac. & Proc. Civ. § 1609 (3d ed.).

Nor could the Owner possibly demonstrate that JMB is claiming an interest separate from the interests of the Surety in this case.  By its Letter of Direction transmitted to the Owner on August 18, 2020, JMB "directed all outstanding and future payments due under the Base Contract to be paid to the Surety."  (Compl. ¶ 18 (emphasis added).)  In addition, by signing the Settlement and Dedication of Contract Balance Agreement, JMB has agreed that, as between it and the Surety, the Surety has the only legal right to enforce the Owner's obligation to deposit the disputed Unpaid Contract Funds in escrow as provided under the Agreement.  (Id. at ¶ 27 – 31.)  Consequently, JMB has no divergent interest in the Surety's efforts to enforce the Owner's duty to fund the escrow account.  See Nat'l Liability & Fire Ins. Co., 2021 WL 3884259 at *1 (absent party is not a required party because he "does not have a legally cognizable interest in this litigation, as he is not a beneficiary of the insurance policy and is not seeking benefits from the policy").  Thus, the Owner cannot present a circumstance where depositing the Unpaid Contract Funds into the escrow account would result in any harm to JMB.  See Incubadora Mexicana, SA de CV, 310 F.R.D. at 172 ("unsubstantiated or speculative risk will not satisfy Rule 19(a)(1)(B) criteria, and the possibility that an absent party's rights will be harmed under subsection (a)(1)(B)(i) must be real").

The Owner also cannot present any scenario whereby it will be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if JMB is not joined in this lawsuit.  Fed. R. Civ. P. 19(a)(1)(B)(ii).  As set forth above, all parties to the Settlement and Dedication of Contract Balance Agreement – the Owner, the Surety, and JMB – agreed the Owner dedicated the contract funds to the Surety.  Had the Owner deposited the disputed Unpaid Contract Funds into escrow as it agreed to do, the Owner would have satisfied its obligation to the Surety, and correspondingly, to JMB, as it relates to the discrete issue in dispute in this case.  Any legal remedy that JMB may have outside of the Settlement and Dedication of Contract Balance

16

Agreement would only further the end of securing the Unpaid Contract Funds for the Surety, and therefore, achieve the same ends.  As such, JMB's and the Surety's interests in securing disputed Unpaid Contract Funds have been, and will continue to be, aligned under all circumstances.

For these reasons, JMB shares the Surety's interests in enforcing the Owner's obligation to fund the escrow account and is not at cross purposes with the Surety's position in this case.  Having the Unpaid Contract Funds in escrow provides all the same benefits to JMB as it would to the Surety – safeguarding funds to protect against the risk of the Owner's depletion of assets or insolvency during the resolution of the parties' underlying construction disputes.  Since the Surety's and JMB's interests in preserving disputed Unpaid Contract Funds in the escrow account are aligned (see also Mot. to Dismiss 19 (Owner acknowledges that "JMB's and F&D's interests are aligned")), the Surety can represent both its interests and JMB's interests without any need to join JMB as a party.  Think Finance, Inc., 2016 WL 183289 at *6 (citing Owens-Illinois, Inc. v. LakeShore Land Co., Inc., 610 F.2d 1185, 1191 (3d Cir. 1979) ("The fact that the absent person may be affected by the judgment does not of itself require his joinder if his interests are fully represented by parties present.")).

Accordingly, there is no risk at all of the Owner incurring double, or otherwise inconsistent, obligations if the Court orders the Owner to deposit disputed Unpaid Contract Funds into the escrow account.  As such, the Owner cannot prevail on the second factor under Rule 19 as well.

### 2.      JMB is Not Indispensable Under Rule 19(b)

Because JMB is not a necessary party to this action, it cannot be found indispensable. Warren Hill, LLC v. Neptune Investors, LLC, 2021 WL 2102559, at *6 (E.D. Pa. 2021) (citing Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 319 (3d Cir. 2007) ("A finding that an absent party is necessary under Rule 19(a) is a necessary predicate to a district court's discretionary

determination under Rule 19(b)…")).  Moreover, the Owner's Motion fails for the separate reason that the Owner cannot meet its burden of proving that JMB is indispensable under Rule 19(b).

To determine whether an absent party is indispensable, courts consider four factors:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

      (A) protective provisions in the judgment;
      (B) shaping the relief; or
      (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

As demonstrated below, JMB is not an indispensable party under the Rule 19(b) test.

> a.   <u>Courts Have Not Created a Rule that All Contracting Parties are Indispensable to a Lawsuit Involving Their Contract</u>

Without meaningfully engaging in any discussion of the four Rule 19(b) factors, the Owner superficially posits that JMB is indispensable simply because it signed the Settlement and Dedication of Contract Balance Agreement.  (Mot. to Dismiss 17.)  The Owner relies upon several cases for its contention that all contracting parties are indispensable to a lawsuit rooted in the contract they executed.  The Owner's cases, however, undermine the supposed bright-line rule that the Owner presents to the Court.  As a practical matter, if courts had created such a rule for contract cases, no reason would exist for evaluating any of the Rule 19(a)(1) factors, since execution of the contract would be the sole inquiry in both the "required" and "indispensable" analysis.  <u>Cf.</u> <u>Provident Tradesmens Bank & Trust Co.</u>, 390 U.S. at 742 ("Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be

determined in the context of particular litigation."); see also Janney Montgomery, 11 F.3d at 406 (holding that, if a contract imposed joint and several liability on its co-obligors, "complete relief may be granted in a suit against only one of them").  Indeed, the Owner has misstated the rationale presented in every single one of its cases.  Far from a rule that all the parties to a contract must be joined, regardless of their connection to the allegations in the operative pleading, the Owner's cited authorities stand for varied propositions, none of which require a finding that JMB is a required or indispensable party to the Surety's action.

The primary case that the Owner relies upon is Rashid v. Kite, 957 F. Supp. 70, 74 (E.D. Pa. 1997).  In Rashid, the court dismissed the plaintiff's state law claims because they were brought against a non-diverse defendant who the plaintiff alleged, on the face of his complaint, was the actual contracting party who committed the claimed fraud.  Rashid, 957 F. Supp. at 74 ("according to Plaintiff's Complaint, Kurtz [the non-diverse party] executed the Agreement on behalf of a corporation that does not exist and is therefore himself a party to the Agreement").

Similarly unremarkable, the Owner's other cases enforce the rudimentary principle that, when a plaintiff alleges claims arising under a contract, the plaintiff must name as a defendant the party who owed the contractual duties that the plaintiff claims were breached.  In other words, a plaintiff generally cannot seek damages from one party for another party's alleged breach.  See Gregoria v. Total Asset Recovery, Inc., 2015 WL 115501 (E.D. Pa. 2015) (requiring plaintiff to join lender in a suit arising from their loan agreement when the plaintiff brought statutory claims against other parties who were not signatories to the loan agreement with the plaintiff and the absent lender); Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co. Ltd., 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (dismissing plaintiff's claims for breach of contract and tortious interference against a defendant who did not sign the contract, stating "[t]he court does not see how Plaintiff

19

can maintain its contract-based claims against a corporation that was not a party to the contract");

F&M Distrib., Inc., 129 F.R.D. at 498 (dismissing action by plaintiff where defendant on breach

of contract claim had not contracted with plaintiff, stating "F&M did not enter into any contract

with American.  Rather it signed a contract with CMI and now seeks damages from American for

CMI's alleged breach of that agreement"); and Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil,

Inc., 456 F. Supp. 831 (D. Del. 1978) (plaintiff sued the wrong entity, Ashland Oil, Inc., which

was not a party to the subject contract).  Nothing in these decisions support the Owner's claim that

the Surety should have sought to join JMB in a lawsuit focused on resolving the Owner's duty to

fund an escrow account in favor of the Surety.

> b.   The Remaining Rule 19(b) Factors Weigh Heavily in Favor of
> Finding that JMB is Not Indispensable to this Action

Should the Court nevertheless deem it warranted to analyze the Rule 19(b) factors, despite

the Owner's failure to demonstrate that JMB is required to resolve the Surety's actions, the Court

should conclude that the Rule 19(b) factors weigh heavily against the Owner's theory that JMB is

indispensable to this case.  As addressed at length above in the Surety's application of the Rule

19(a) factors, JMB's absence from the Surety's declaratory judgment and injunction actions will

not result in any prejudice to the existing parties, or to JMB.  See Gen. Refractories, 500 F.3d at

320 (The first factor "overlaps considerably with the Rule 19(a) analysis").  Once again, no

prejudice would result if JMB is not joined because the Owner's performance of its obligation to

fund the escrow account flows only to the Surety, not to JMB.  Moreover, JMB shares the Surety's

interest in having the Court declare that the Owner is presently obligated to fulfill its escrow

account obligation as the Surety requests.  Since no prejudice would result if JMB is not joined in

this case, the second 19(b) factor, which evaluates whether a court could shape its relief to

minimize prejudice, also would place this consideration squarely on the Surety's side of the ledger.

The third factor, which evaluates whether a judgment rendered in this case without JMB "would be adequate," also strongly supports leaving JMB on the sidelines here.  Relying upon Provident Tradesmens Bank & Trust Co., the U.S. Court of Appeals for the Third Circuit ("Third Circuit") has stated that this factor "considers the extent to which exclusion of an interested person would leave significant matters unadjudicated."  HB Gen'l Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1197 (3d Cir. 1996).  As the Agreement contains a dispute procedure that applies to certain types of disputes only, the parties contemplated litigating other types of disputes that are distinct from those that are arbitrable, such as the Surety's causes of action here.  See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983) (resolution of certain disputes in court and others in arbitration is necessary to give effect to the terms of an arbitration agreement).

Finally, the fourth factor – whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder – bears little weight because "the availability of an alternative forum cannot be the sole basis for dismissing a suit commenced in the federal courts."  Bank of America, 844 F.2d at 1055 (citation and internal quotation omitted).  While the Owner contends that the arbitration it commenced is a better forum for "all claims arising from the Project" (Mot. to Dismiss 25), this assertion contradicts Section II.15, which is not a broad form arbitration agreement that encompasses "all claims arising from the Project."  In light of the limited scope of Section II.15, the Owner's analysis of this factor also fails to address why its arbitration, which seeks to arbitrate its construction claims and not its duty to fund the escrow account, should supplant the Court's jurisdiction in this case.

In sum, the Owner has not shown that JMB is a necessary, much less an indispensable party to this action.  Accordingly, the Owner's Motion under Rule 12(b)(7) should be rejected.

**B.      The Owner's Claim that the Chester County Action Resolved the Arbitrability of the Surety's Action is Baseless and Should Be Rejected**

The Owner's Motion to Dismiss also claims that the Surety's Complaint should be dismissed "due to the pending private AAA arbitration" that it filed on the same day as its Motion to Dismiss.  (Mot. to Dismiss 1.)  The Owner's theory for dismissal contends that both the Surety and the Chester County Court acknowledged that the arbitration clause in Section II.15 of the Agreement envelopes the Surety's causes of action in this case.  (Mot. to Dismiss 21.)  This assertion is pure sophistry and should be rejected.

### 1.      The Surety Never Conceded that Its Causes of Action Are Arbitrable

The Surety did not "admit" in briefing its Preliminary Objections that its causes of action pending before this Court are arbitrable.  (Mot. to Dismiss 21.)  In no uncertain terms, the Surety's Preliminary Objection focused solely on the arbitrability of the Owner's causes of action *in that state court case*.  The Owner's complaint in the Chester County Action sought damages from the Surety and JMB allegedly arising from delay to completion of the Project, and other construction-related issues such as alleged non-conforming work.  The Owner's complaint did not bring any causes of action under the Settlement and Dedication of Contract Balance Agreement, let alone raise the question whether the Owner had a present obligation to deposit the Unpaid Contract Funds into the escrow account.  Indeed, the Owner's complaint never once mentioned the word "escrow."

The fact that the Surety's Preliminary Objection concerned only Main Street's delay and construction claims alleged in its state court complaint is succinctly stated in the Questions Presented to the Chester County court in the Surety's memorandum supporting its Preliminary Objections:

IV.     **QUESTIONS PRESENTED**

1.      Whether Plaintiff's Complaint against F&D and JMB should be dismissed in accordance with Pa. Civ. P. R. 1028(a)(6) because Main Street is improperly attempting to litigate claims and disputes it agreed to submit to alternative dispute resolution, including binding arbitration, under Sections II.8, II.14, and II.15 of the Settlement and Dedication of Contract Balance Agreement?

**Suggested Answer: Yes.**

(ECF No. 28-14, Mot. to Dismiss, Ex. M at 25 of 36 (emphasis added).)

Nor did the Surety "admit" by inference that its causes of action here are arbitrable.  The Owner mischaracterizes the Surety's position in the Chester County Action as contending that the arbitration agreement encompasses "all disputes regarding the contract balance."  (Mot. to Dismiss 20.)  In its Preliminary Objections, the Surety, plainly, did not paint the scope of the arbitration agreement with such a broad brush.  More precisely, the Surety consistently emphasized that the Owner's specific liquidated damages and defective work claims in its complaint were subject to alternative dispute resolution, including arbitration under Section II.15, because the Owner's claims sought to resolve issues bearing on the ultimate disposition of disputed Unpaid Contract Funds "that are paid in the Escrow Account."  The Surety explained to the Chester County Court that the Owner is presently "holding the contractual disputes process hostage" at the outset by refusing to deposit the Unpaid Contract Funds into the escrow account, which necessitated the Surety commencing this federal action.  In no way did the Surety imply that its causes of action in front of this Court, which are needed to "break this impasse" concerning the Owner's duty to escrow disputed funds, were somehow arbitrable along with the Owner's claims that sought to determine who was entitled to the funds after they were secured in the escrow account.[4]

---

[4] The Owner's Motion to Dismiss creates unnecessary confusion by referring to the escrow account dispute before this Court as a "dispute over the Owner's _withholding_ of contract funds…"  (Motion to Dismiss 21 (emphasis added).)  The Owner's use of the term "withholding" in that context is sleight of hand to give the impression that the Surety's

Despite the Owner twisting the state court briefing on its head after-the-fact, what really occurred in the Chester County Action is that the Owner interpreted the arbitration provision in the same manner as the Surety.  As noted above, the Owner stated in its state court briefing that the Settlement and Dedication of Contract Balance Agreement "<u>clearly and unequivocally requires arbitration only to resolve disputes over funds deposited into the Escrow Account.</u>"  (Ex. A at 11 (emphasis added).)  Thus, the Owner's opposition to the Surety's Preliminary Objections did not quarrel with the scope of Section II.15 of the Agreement.

Instead, the Owner's defense focused on the application of Section II.15 to the specific claims that the Owner raised in its Complaint.  When arguing that its claims in the Chester County Action were not arbitrable, the Owner posited an argument that it could, in essence, avoid application of the arbitration agreement indefinitely by never depositing the Unpaid Contract Funds into the escrow account.  (Opp. 12 ("Here, no funds have been deposited into an Escrow Account.  Therefore, the arbitration provision is not implicated at all").)  If nothing else, the Owner's defense to the Surety's Preliminary Objections validated the Surety's thesis that the Owner has been holding the dispute process hostage by not funding the escrow account.  Nonetheless, the Owner's position did not negate the fact that both parties have viewed arbitration as a limited forum to resolve disputes over the ultimate disposition of funds <u>that already exist in the escrow account</u>. The converse also is necessarily true.  As this case does not seek to resolve the disposition of funds

---

causes of action in this case fall within the ambit of the arbitration agreement in Section II.15 because the word "withholding" also appears in that provision.  However, the Owner's failure to deposit disputed Unpaid Contract Funds into the escrow account is not a "withholding" as the term is used in Section II.15.  In the arbitration provision, the term "withholding" is employed in the context of describing "funds that are paid into the Escrow Account under this Agreement."  The Owner's refusal to fund the escrow account cannot be a "withholding" under Section II.15 because it would lead to a nonsensical construction of the provision in that a "withholding" of funds from the escrow account also cannot be simultaneously "paid into the Escrow Account."  The proper way to frame this case is "a dispute over the Owner's decision not to deposit disputed contract funds into the escrow account."

already in the escrow account, but instead, to compel the Owner to deposit the funds, this case cannot fall under the scope of Section II.15 of the Agreement.

> ### 2.    The Chester County Court Did Not Decide that the Surety's Causes of Action Are Arbitrable

Likewise, the Chester County Court's Order did not address, much less rule upon, the arbitrability of the Surety's causes of action in this case.  Simply put, the court had no reason to do so, as the Surety's causes of action were not before the court.  Given that the only dispute before the court was the Owner's construction claims against the Surety and JMB, the court fashioned its order to decide only the arbitrability of those causes of action.  Confining its ruling on arbitrability to the Owner's construction claims, the court found that those claims against the Surety and JMB should be dismissed, stating "[t]he court agrees with F&D that Main Street's claims against F&D and JMB fall squarely within the scope of Section II.15."  (Mot. to Dismiss, Ex. A at 7.)

The Owner has not, and otherwise cannot, point to any statement in the Chester County Court's Order in which the court determined the arbitrability of the Surety's causes of action here, or any other cause of action or dispute besides the claims alleged in the Owner's complaint.  No such ruling could exist because the Owner's duty to deposit disputed Unpaid Contract Funds into the escrow account was not raised in the Chester County Action in any way.

Having been advised of this action where the Surety's claims are pending, the Chester County Court simply did not (and could not) determine the proper forum for the Surety's causes of action.  Nor did the Chester County Court determine the ripeness of the Owner's claims for arbitration in relation to the Surety's causes of action before this Court.  In other words, the Chester County Court did not make any ruling that the Owner must submit its claims to arbitration by any deadline, under any specific conditions, or in the absence of the Owner depositing the disputed Unpaid Contract Balance in the escrow account.  Simply put, the Chester County Court's Order

cannot be construed to resolve any issue other than whether the Owner's allegations in its Complaint belonged in court or should be arbitrated.

> **3.** **The Owner's Commitment to Deposit Disputed Unpaid Contract Funds into the Escrow Account is Not a Mere Precondition to Arbitration of the Owner's Construction Claims, But Instead, is a Material Obligation of the Owner Under the Agreement**

Unable to provide any grounds for dismissal of this case from the Chester County Action, the Owner resorts to rebutting a hypothetical position that the Surety has not adopted. Setting up its straw man, the Owner suggests that the Surety "may argue that the deposit of contract balances into an escrow account is a predicate to arbitration" and that the Court should decide whether the condition has been met before the arbitration commences. (Mot. to Dismiss 22.) The Owner then tries to defeat its own argument by citing cases holding that arbitrators, and not courts, should decide whether procedural conditions to arbitration have been satisfied. The Owner's attempt to predict the Surety's opposition turned out to be incorrect.

The Surety does not argue that the Owner's obligation to fund the escrow account is merely a step in the dispute resolution procedure. A condition precedent to arbitration involves a purely procedural function incident to the disputes process itself, such as whether a conference occurred prior to submitting a dispute to arbitration, the timeliness of the filing, or if a party submitted a proper notice requesting that arbitration commence. See, e.g., BG Group, PLC v. Rep. of Arg., 572 U.S. 25, 35-36 (2014) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964)). The Owner's duty to disburse dedicated contract funds either to the Surety, or to the escrow account, on the other hand, is not a contractual trigger to commencing arbitration. Instead, it is a material, independent obligation of the Owner that was established outside the Dispute Procedure of the Agreement and is subject to enforcement, including specific performance under Section III.7 of the Agreement, like any other

material breach of contract.  Notwithstanding the Owner's filings, initially in state court and then in arbitration, this Court remains the only forum where the Owner's breach of its escrow obligation is at issue.

The Owner has breached its fundamental obligation to dedicate the contract balance in support of the completion work.  Moreover, when the Owner agreed to the escrow provisions in the Agreement, the Surety obtained certainty that the millions of dollars the Owner dedicated to the Surety would be readily collectible should the Owner breach its duty to dedicate the contract funds to the Surety.  Compounding its failure to make payments to the Surety as the construction work was performed, each day that continues to pass without the escrow account being funded is another day in which the Owner deprives the Surety of bargained-for security protections, and in which the Surety faces increasing risks that the Unpaid Contract Funds will be non-collectible. All the while, the Owner benefits from maintaining the Unpaid Contract Funds in its possession with no accountability.

In the hypothetical circumstance posited by the Owner where this case is dismissed and the escrow obligation is viewed as nothing more than a step in the procedure to arbitrating the Owner's Arbitration Demand, the Owner's obligation to deposit the Unpaid Contract Funds in escrow would never be enforced.  That untenable circumstance is so because a decision from an arbitration panel that the Owner missed a step in the process to arbitrating its claims would only mean that the Owner's claims are unripe until the escrow account is funded.  As Section II.15 only authorizes the arbitrators to decide the disposition of funds already in the escrow account, a ruling that the Owner's claims cannot proceed until it deposits the Unpaid Contract Funds in escrow does not constitute an affirmative command that the Owner must fulfill its escrow obligation to provide the Surety with its bargained-for security.  The only tribunal in which the Owner's escrow account

obligation has been raised,[5] and which has been vested with jurisdiction to compel the Owner to perform its duty to fund the escrow account, is this Court.

C.    **The Court Should Not Indefinitely Stay This Action in Favor of the Owner's Arbitration**

Lastly, the Court should deny the Owner's request to stay this case for the following reasons.

As an initial matter, the Owner's request for a stay under either 9 U.S.C. § 3, or 42 Pa. C.S. § 7304(d), fails because a stay in favor of arbitration under either statute necessarily requires that the issues in the case belong in arbitration. Here, the Owner's request for a stay is based upon the false premise that the Chester County Court previously issued an Order that would make the Surety's causes of action in this case arbitrable. As discussed at length above, no such ruling ever occurred. For this reason alone, the Owner's request for a stay under either statute must be rejected.

Equally unavailing, the Owner also requests an indefinite stay pending arbitration of its claims under the Court's inherent powers to control its docket. (Mot. to Dismiss 23-24.) However, the Owner's stay request applies the wrong standard. To abrogate the Surety's right to litigate in this federal forum in favor of proceedings in an alternate forum, the Owner must demonstrate a "clear case of hardship or inequity in being required to go forward." CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 138-140 (3d Cir. 2004) (district court effectively denied a plaintiff the right to litigate in a federal forum by entering an indefinite stay pending the outcome of a separate arbitration). The Owner's request for a stay does not, and otherwise cannot, demonstrate "any clear case of hardship or inequity." Instead, the Owner appeals to "justice and judicial economy" as purportedly favoring a stay. (Mot. to Dismiss 24.) Not only are these terms just a smokescreen for the Owner's attempt to avoid accountability for its obligations under the

---

[5] As discussed in Section II above, the Owner's Arbitration Demand does not seek to arbitrate the parties' dispute over whether the Owner's obligation presently must be fulfilled. Thus, the Owner's contemplated arbitration is no different than the Chester County Action before it.

escrow funding provisions of the Agreement, but they were also rejected in CTF Hotel Holdings, Inc. as the sole basis for a district court "to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum."  381 F.3d at 139.  The Surety, on the other hand, would suffer extreme prejudice by any decision to indefinitely postpone an adjudication of the Owner's duty to fund the escrow agreement until after the merits of the parties' underlying disputes are resolved.  In fact, the Surety's bargained-for right to have the Unpaid Contract Funds secured in an escrow account would be completely negated.  Without question, the "clear case of hardship or inequity" has been made by the Surety, not vice versa as CTF Hotel Holdings, Inc. requires from the Owner to obtain a stay.

Making no legitimate attempt to satisfy the "clear case of hardship or inequity" standard set forth in CTF Hotel, the Owner then improperly cites to MEI, Inc. v. JCM Am. Corp., 2009 WL 3335866 at *4 (D. N.J. 2009) to support its claim that the Court should invoke its inherent power to indefinitely stay this action.  MEI, Inc., however, is both non-precedential and inapplicable in this case.  The court in MEI, Inc. did not consider whether to stay a federal action in favor of arbitration.  Instead, the court examined whether to stay the matter before it while a federal appellate proceeding addressed a legal issue directly bearing on the court's resolution of a pending motion for summary judgment.  As such, the Surety's concern, as expressed in CTF Hotel Holdings, Inc. that a stay would effectively deny a litigant its day in court, was not weighed in MEI, Inc.

Nonetheless, the Owner's request for a stay does not even satisfy the discretionary stay standard applied in MEI, Inc.  According to MEI, Inc., a discretionary stay should not be considered unless the outcome of the other federal case "may substantially affect or be dispositive of the issues in a case pending before a district court" (internal quotations omitted and emphasis added).  Clearly, MEI, Inc. is distinguishable from this case because the parties' dispute regarding

the Owner's obligation to presently fund the escrow account was not raised by the Owner in its Arbitration Demand and has otherwise not been submitted to arbitration. Given that the Owner fails to address its obligation to pay funds to the Surety or to the escrow account before arbitrating, nothing will occur in the arbitration that would "substantially affect" or "be dispositive of" the declaratory judgment, injunctive relief, and specific performance requested by the Surety in its Complaint.

IV.   **CONCLUSION**

For all of the foregoing reasons, the Owner's Motion to Dismiss, or in the alternative, to stay this action, should be denied in its entirety.

**ORAL ARGUMENT IS RESPECTFULLY REQUESTED**

Dated: January 28, 2022                    Respectfully Submitted,

*/s/ Noah H. Charlson*
Noah H. Charlson
Charlson Braber McCabe & Denmark, P.C.
1628 JFK Blvd., Suite 1803
Philadelphia, PA 19103
Tel: 215-447-7401
noah@charlsonlaw.com

Christopher J. Brasco, *pro hac vice*
Adam M. Tuckman, *pro hac vice*
Noah R. Meissner, *pro hac vice*
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, VA 22102
Tel: 703-749-1000
cbrasco@watttieder.com
atuckman@watttieder.com
nmeissner@watttieder.com

*Attorneys for Plaintiff*
*Fidelity and Deposit Company of Maryland*

## CERTIFICATE OF SERVICE

I certify, that on the 28th day of January, 2022, the foregoing Opposition to Motion to Dismiss, or in the Alternative, Stay Action, was served upon the following by the Court's ECF system:

Sandhya M. Feltes
Marc B. Kaplin
Kaplin Stewart
910 Harvest Drive
Blue Bell, PA 19422

Steven M. Coren
Kaufman, Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103

*Attorneys for Defendants*

/s/ *Noah H. Charlson*
Noah H. Charlson