**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND,** | |
| Plaintiff, | |
| v. | Case No: 2:21-cv-03576-WB |
| **MAIN STREET PHASE II, L.P.** | |
| and | |
| **MAIN STREET PHASE III, L.P.**, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM WITH PREJUDICE,**
**OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

**ORAL ARGUMENT IS RESPECTFULLY REQUESTED**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................. 3

    1.   After F&D Filed its Complaint to Enforce Main Street's Escrow
        Obligation, Main Street Filed a Separate Action in the Court of
        Common Pleas Against F&D, JMB and Others ........................................ 6

    2.   Main Street Next Moved to Stay this Action So that Its Escrow
        Obligation Would Not Be Considered Until After Its Own Delay
        and Defect Claims Were Fully Litigated and Resolved in
        Arbitration, Rendering the Security of the Escrow Account
        Meaningless .............................................................................................. 8

    3.   Main Street Filed an Arbitration Demand Before Depositing the
        Disputed Contract Balance in Escrow and Before Holding a "Meet
        and Confer" Meeting Regarding the Disposition of Escrowed
        Funds, as Required by Section II.14 of the Agreement ........................... 9

    4.   After Its Motion to Dismiss and/or Stay this Action was Denied by
        this Court, Main Street Filed a Counterclaim Alleging Identical
        Claims that the Chester County Court Ruled Must Be Arbitrated
        and Were, In Fact, Raised by Main Street When Filing Its
        Arbitration Demand ............................................................................... 10

III.  ARGUMENT ..................................................................................... 12

  A.   Main Street Cannot, as a Matter of Law, Litigate Its Liquidated Damages
      and Defect/Warranty Claims After the Chester County Court Finally
      Decided that Main Street Must Arbitrate Those Claims..................................... 13

    1.   The Issue Preclusion Doctrine Bars a Party to a State Court Ruling
        from Attempting to Re-Litigate the Issue Finally Decided by the
        State Court in a Subsequent Federal Action ............................................ 14

    2.   The Chester County Court's Ruling that Main Street's Claims
        Against F&D are Arbitrable Should Be Accorded Preclusive Effect
        Over Main Street's Most Recent Attempt in this Action to Litigate
        Those Same Claims................................................................................. 15

        a.   The Legal and Factual Disputes Previously Before the
            Chester County Court and Now, this Court, as a Result of
            Main Street's Counterclaim, are Identical.................................... 15

        b.   The Chester County Court Order was a Final Adjudication
            Concerning the Arbitrability of Main Street's Liquidated
            Damages and Defect Claims Against F&D ................................. 17

        c.   Main Street was a Party to the Chester County Court
            Action........................................................................................ 17

## TABLE OF CONTENTS
(continued)

**Page**

   d. Main Street Had a Full and Fair Opportunity to Litigate the Arbitrability of its Claims Against F&D in the Chester County Court Action ................................................................... 17

   e. The Chester County Court's Ruling that Main Street's Liquidated Damages and Defect/Warranty Claims Against F&D were Arbitrable was Clearly Essential to the Judgment ................................................................................. 18

  3. As All Elements are Met, the Doctrine of Issue Preclusion Bars Main Street from Pursuing Its Claims in this Action Instead of in the Arbitration that Main Street Initiated ................................................ 18

 B. If the Court Does Not Find that Issue Preclusion Bars the Counterclaim, the Court Still Should Compel Arbitration of the Counterclaim Consistent with the Parties' Arbitration Agreement ............................................................ 19

IV. CONCLUSION ............................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

Adelphia Gateway, LLC v. Penn. Envtl. Hearing Bd.,
    2021 WL 5494286 (M.D. Pa. 2021) ............................................................ 16

Allen v. McCurry,
    449 U.S. 90 (1980)..................................................................................... 14

Greenleaf v. Garlock, Inc.,
    174 F.3d 352 (3d Cir. 1999)....................................................................... 17

Guidotti v. Legal Helpers Debt Resolution, L.L.C.,
    716 F.3d 764 (3d. Cir. 2013)...................................................................... 19

In re Remicade (Direct Purchaser Antitrust Litig.),
    938 F.3d 515 (3d Cir. 2019)....................................................................... 19

In re Rotavirus Vaccines Antitrust Litig.,
    30 F.4th 148 (3d Cir. 2022) ....................................................................... 19

Jaludi v. Citigroup,
    933 F.3d 246 (3d Cir. 2019)................................................................. 19, 20

Metro. Edison Co. v. Penn. Pub. Util. Comm'n,
    767 F.3d 335 (3d Cir. 2014)........................................................... 14, 15, 17

Saltzman v. Thomas Jefferson Univ. Hosps., Inc.,
    166 A.3d 465 (Pa. Super. 2017)................................................................ 19

Taylor v. Extendicare Health Facilities, Inc.,
    637 Pa. 193 (2016)..................................................................................... 19

**Statutes**

28 U.S.C. § 1738................................................................................................. 12, 14

Plaintiff Fidelity and Deposit Company of Maryland ("F&D") respectfully submits this memorandum in support of its Motion to Dismiss the Counterclaim filed by Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. (collectively, "Main Street"), with prejudice, or in the alternative, to compel arbitration in accordance with Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

## I.    **INTRODUCTION**

This Motion to Dismiss arises from Main Street's violation of an unappealable, final order of a Pennsylvania state court that determined Main Street's liquidated damages and construction defect/warranty claims against F&D are subject to an agreement to arbitrate between the parties. Main Street readily acknowledges that the state court order fully and finally decided that those claims must be resolved only through binding arbitration.  It doubled down on the finality and authority of the state court's decision by subsequently filing, on January 7, 2022, a demand with the AAA to commence the arbitration process for its claims.  On the same day, Main Street petitioned to stay resolution of F&D's action in this Court in favor of its arbitration proceeding. (See Dkt. No. 28.)  In the ensuing months, a panel of arbitrators was selected and empaneled by the parties.  The arbitrators are now resolving preliminary matters in the arbitration process, including whether to stay arbitration of Main Street's claims until this Court resolves the escrow account dispute raised in F&D's Complaint.  And yet, despite the Pennsylvania state court's order, Main Street's filing of an arbitration demand containing its liquidated damages and construction defect claims against F&D, and then engaging in the arbitration process to pursue those claims, Main Street has now filed the same exact claims as a Counterclaim in this Court.

No principled, legal basis exists for Main Street to litigate its Counterclaim in court in defiance of the Pennsylvania state court's order.  To the contrary, the doctrine of issue preclusion (collateral estoppel) prohibits such a misuse of judicial time and resources.  The final Pennsylvania

1

state court order issued against Main Street must be given preclusive effect under the Full Faith and Credit Statute, 28 U.S.C. § 1738 on the question whether Main Street may now press its identical claims in court rather than arbitration.  To not enforce the state court order under these circumstances would improperly subject F&D to potentially inconsistent decisions regarding the arbitrability of Main Street's claims, expensive and duplicative discovery in two forums, and an opportunity for Main Street to avoid the conclusive effect of a potentially unfavorable outcome in the arbitration it initiated.  As the doctrine of issue preclusion exists to prelude such unnecessary and duplicative litigation, as well as such prejudice to litigants like F&D who have prevailed in prior judicial proceedings, this Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) should be granted, with the Counterclaim dismissed in its entirety, and with prejudice.

Should the Court determine that the doctrine of issue preclusion does not bar the Counterclaim, the Court should nonetheless compel Main Street to arbitrate the claims alleged in the Counterclaim in accordance with Section 4 of the FAA.  It cannot be disputed that the parties selected arbitration as the forum to resolve the precise liquidated damages and defect claims raised in the Counterclaim as part of the agreed upon disputes procedure in their contract entitled the "Liquidated Damages Settlement Agreement and Dedication of Contract Balance."  Consistent with the Pennsylvania state court's ruling, the FAA requires enforcement of the parties' arbitration agreement and a referral of the Counterclaim to the arbitration where Main Street's identical claims are already pending.  Accordingly, in the alternative to dismissal based on the doctrine of issue preclusion, dismissal of the Counterclaim is still warranted based upon an independent determination that the claims Main Street seeks to simultaneously present to this Court and in arbitration are subject to the parties' agreement to arbitrate.

## II.    **FACTUAL BACKGROUND**

F&D commenced this action for the limited purpose of obtaining the Court's interpretation and enforcement of Main Street's escrow obligation in the "Liquidated Damages Settlement Agreement and Dedication of Contract Balance" (hereinafter abbreviated as the "Settlement and Dedication of Contract Balance Agreement" or "Agreement" and attached to the Complaint as Exhibit B).   The Settlement and Dedication of Contract Balance Agreement was executed in connection with a construction project undertaken by Main Street to build a multifamily residential and commercial property at the Main Street at Exton shopping center in Exton, Pennsylvania (the "Project").   (Dkt. No. 1, Compl. ¶ 8.)   The Settlement and Dedication of Contract Balance Agreement addresses how completion of the Project would be financed after F&D began funding JMB's performance in July 2020 at Main Street's request.  (Id. at ¶¶15, 17.)

Accordingly, it was agreed that JMB would continue to serve as the Contractor and that, absent breach by Main Street of the contract, performance bond, or the Agreement, F&D would "advance funds to JMB up to the penal sum of the Performance Bond to assist JMB in fulfilling its obligations under the Contract…"  (Compl., Ex. B at § II.9; Dkt. No. 1-2.)   Satisfying and reaffirming Main Street's obligation under the performance bond to commit contract funds to F&D, the Agreement states in Section II.7 that Main Street "dedicates the unpaid Contract Balance to F&D, except as detailed in Section 7 above."  (Id. at § II.10.)  Providing a limited carve-out of Main Street's obligation to pay the entire unpaid contract balance to F&D, Section II.7 of the Agreement further states that Main Street will release contract funds in progress payments, paid monthly, except that Main Street may retain 29% of each pay application to partially compensate Main Street for previously accrued liquidated damages settled under Section II.6 of the Agreement.  (Id. at § II.7.)  The Agreement also includes a process whereby, at final completion, retainage is used to satisfy the balance of the liquidated damages settlement.   (Id. at § II.7.)

3

In addition, Section II.7 of the Agreement addresses how the parties would resolve any claims by Main Street to withhold unpaid contract funds dedicated to F&D.  Specifically, the Agreement obligates Main Street to either pay the contract funds, or to deposit with the third-party escrow agent any portion of the unpaid contract balance that Main Street disputes is owed.  (Id.) What Main Street cannot do under the Agreement is possess contract funds based upon its self-determined right to withhold.[1]

Section II.8 provides the framework for establishing the escrow account.  Section II.8 also recognizes that unpaid contract funds deposited by Main Street in the escrow account can be released only by agreement of Main Street and F&D, or by a confirmed arbitration award.  (Compl., Ex. B at § II.8.)

As referenced in Section II.8, the agreed-upon procedures for deciding disputes regarding the escrowed funds are found in Sections II.14 and II.15.  Section II.14 requires the parties to engage in "meet and confer" negotiations to determine whether the parties can resolve any "dispute" concerning all or a portion of the escrowed funds.  (Id. at § II.14.)  If any ongoing "dispute" regarding these escrowed funds remains unresolved after these negotiations, then the parties agreed to arbitrate that dispute under the procedures in Section II.15.  (Id.)

Section II.15 is the section of the Agreement entitled "Dispute Procedure."  Unlike a provision typically found in standard form construction contracts in which the parties agree to arbitrate any dispute arising from, or relating to, their contract, Section II.15 of the Agreement defines the scope of any arbitration to be the distribution of escrowed contract funds.  Specifically, the parties agreed to arbitrate disputes regarding contract funds that were escrowed (i) because of

---

[1] According to Section II.18, the Settlement and Dedication of Contract Balance Agreement controls over any contrary provision of the construction contract.  ((Compl., Ex. B at § II.18 ("**Other than as modified herein**, the Contract, Performance Bond, and Payment Bond remain in full force and effect.") (emphasis added).)

liquidated damages assessed by Main Street, and/or (ii) because Main Street asserted a right to withhold funds from payment on any other basis.  Section II.15 provides, in part:

> If any dispute arises among the Owner, the Surety, and/or JMB with regard to **liquidated damages that are assessed and paid into the Escrow Account** under this Agreement and/or **the basis for withholding funds that are paid into the Escrow Account** under this Agreement, then the following dispute resolution procedures will apply…

(Ex. B, § II.15) (emphasis added).)

### A.  Main Street Failed to Pay F&D or Deposit Disputed Contract Funds into Escrow, Leading to the Filing of the Federal Action

After the Settlement and Dedication of Contract Balance Agreement was signed in November 2020, F&D continued to finance construction, notwithstanding Main Street's decision not to pay, or put into escrow, funds earned for progress in 2021.  (Compl. ¶ 35.)  Ultimately, F&D injected well over $25 million of its own funds into Main Street's construction Project.  (Id.)  As a result, Final Completion was achieved in accordance with the construction plans, specifications, and industry standards, leaving only disputed issues remaining.  (Id. at ¶ 36.)  Failing to uphold its end of the bargain, however, Main Street has manufactured construction defect/warranty claims and a specious assessment of liquidated damages for delay to justify its refusal to release $7,167,708.63 in contract balances.  (Id. at ¶ 38.)  This balance consists of funds requested in monthly payment applications after December 2020, as well as retainage due at the end of the Project.  (Id.)  Compounding its breach by failing to make progress payments, Main Street also has not fulfilled its commitment to deposit these contract funds into the escrow account.  In fact, Main Street has not deposited any money into the escrow account.  Instead, Main Street has adopted an illogical and unsupportable position that its escrow obligation should not be considered until *after* its disputed liquidated damages and defect claims are resolved through the Disputes Procedure.  (Id. at ¶ 44.)  For obvious reasons, however, interim security intended to be provided

during the pendency of a dispute is completely meaningless if it is not provided until after the dispute is resolved.

On August 11, 2021, F&D filed this action to seek the following relief: (1) a declaration that Main Street is obligated to pay any disputed portion of the contract balance into the escrow account (Count One); (2) injunctive relief that requires Main Street to deposit the disputed portion of the contract balance into the escrow account (Count Two); and (3) a cause of action for specific performance, in accordance with Section III.7 of the Agreement (Count Three).  (See generally, Compl.)  It bears emphasis that F&D did not request that the Court resolve who is entitled to the disputed contract balance that presently should be in the escrow account; F&D is only seeking an order that Main Street must immediately fund the escrow account to prevent any further draining of the contract balance dedicated to F&D and so the Disputes Procedure can occur once the disputed funds are in escrow.

### B.    Main Street Has Been Seeking to Litigate and Arbitrate its Claims Without Funding the Escrow Account

Eschewing its escrow obligations, Main Street has tried **four times** in three separate forums to litigate its disputed claims without funding the escrow account.  For the purpose of addressing F&D's Motion to Dismiss the Counterclaim, the importance of Main Street's legal maneuvers is that, after Main Street was ordered to arbitrate its disputed liquidated damages and defect claims against F&D, Main Street then submitted its claims to the arbitration process.  Even so, Main Street has now raised the same claims in this Court while the arbitration process is ongoing.

### 1.    After F&D Filed its Complaint to Enforce Main Street's Escrow Obligation, Main Street Filed a Separate Action in the Court of Common Pleas Against F&D, JMB and Others

A few weeks after F&D filed this action to enforce Main Street's escrow obligation, Main Street filed an action in the Court of Common Pleas of Chester County ("Chester County Court")

against F&D and JMB, among others (the "Chester County Action"), where it sought to litigate its construction defect/warranty and liquidated damages claims against F&D prior to, or concurrently with, this action to determine its escrow obligations.  In response to Main Street's complaint in the Chester County Action, F&D filed Preliminary Objections asserting, in part, that Section II.15 of the Settlement and Dedication of Contract Balance Agreement requires Main Street to arbitrate its liquidated damages and defect/warranty claims rather than litigate those claims in court.

On November 24, 2021, the Chester County Court sustained F&D's Preliminary Objection, finding that Main Street's claims against F&D and JMB were subject to alternative dispute resolution, including binding arbitration, under Section II.15 of the Agreement (the "Chester County Court Order").  While the Court has received the Chester County Court Order prior briefing of Main Street's Motion to Dismiss F&D's Complaint, the Chester County Court's Order is central to resolving this Motion to Dismiss Main Street's Counterclaim, and therefore, it is attached again for the Court's convenience as Exhibit A to this Memorandum.

In the briefing of F&D's Preliminary Objections in the Chester County Action, no dispute existed that Section II.15 of the Settlement and Dedication of Contract Balance Agreement consisted of an agreement to arbitrate.  (Ex. A. at 5.)  Consequently, the Chester County Court's Order focused on the parties' dispute whether the arbitration agreement covered Main Street's delay and defect claims.  (Id.)  Interpreting Section II.15 of the Agreement, the Chester County Court concluded that the agreement to arbitrate in Section II.15 "broadly encompasses any disputes that arise with regard to liquidated damages that are assessed or the 'basis for withholding funds that are paid into the Escrow Account."  (Id. at 7 (internal quotations omitted).)  Applying this interpretation to the claims alleged by Main Street, the Court then concluded that Main Street's claims of defective construction work and delayed substantial completion resulting in the

assessment of liquidated damages "fall squarely within the scope of Section II.15." (Id.) Due to the Court's conclusion that Main Street's claims were arbitrable, the Court sustained F&D's Preliminary Objection and F&D and JMB were therefore dismissed from the Chester County Action.[2]

> **2.  Main Street Next Moved to Stay this Action So that Its Escrow Obligation Would Not Be Considered Until After Its Own Delay and Defect Claims Were Fully Litigated and Resolved in Arbitration, Rendering the Security of the Escrow Account Meaningless**

After F&D and JMB were dismissed from the Chester County Action, Main Street returned to this Court to renew its earlier motion to dismiss F&D's Complaint to enforce Main Street's escrow obligation. This time, Main Street coupled its renewed motion to dismiss with filing an Arbitration Demand with the American Arbitration Association (discussed below in Section II.B.3). Main Street further moved the Court to indefinitely stay this action until the conclusion of the arbitration it commenced. The upshot of Main Street's motion to stay was, once again, that consideration of its escrow obligations should be deferred until after the arbitration fully resolved Main Street's claims. In its Order dated April 25, 2022, the Court denied Main Street's motion to dismiss, denied Main Street's motion to stay, and lifted the stay of discovery. (Dkt. Nos. 34, 35.) As such, this action to determine Main Street's escrow obligations in advance of the parties' Disputes Procedure is proceeding.

---

[2] Notably, in reaching this determination, the Chester County Court recognized that the dispute whether Main Street must presently fund the escrow was pending in this Court. (Ex. A at 3.) As such, the Chester County Court did not address, comment on, or decide, *when* it would be appropriate for Main Street, F&D and/or JMB to arbitrate Main Street's claims and whether any obligations or conditions must precede the commencement of arbitration (i.e. with, or without a funded escrow account, and before or after a "meet and confer" meeting under Section II.14 of the Agreement). (See generally, Ex. A.)

3. **Main Street Filed an Arbitration Demand Before Depositing the Disputed Contract Balance in Escrow and Before Holding a "Meet and Confer" Meeting Regarding the Disposition of Escrowed Funds, as Required by Section II.14 of the Agreement**

As noted above, Main Street filed its Demand for Arbitration and Statement of Claim with the American Arbitration Association on January 7, 2022 (the "Arbitration Demand"), concurrently with renewing its motion to dismiss in this Court.  A copy of the Arbitration Demand, without voluminous exhibits, is attached hereto as Exhibit B.

The sum and substance of Main Street's Arbitration Demand was a carbon copy of Main Street's allegations in the Chester County Action that the state court held were arbitrable under Section II.15 of the Agreement.  More specifically, Main Street alleges in its Arbitration Demand that it may withhold the remaining contract balance (that should now be in escrow) under the Settlement and Dedication of Contract Balance Agreement based upon claims of defective construction work, warranty claims, and liquidated damages for alleged delay to substantial completion of the Project.  (See, e.g., Ex. B at ¶ 86.)  Main Street also alleges in arbitration that it may recover additional damages from F&D and JMB exceeding its unilateral, disputed withholdings.  (Id. at ¶¶ 87 and 88.)

At a preliminary conference held on April 18, 2022 with the panel of three arbitrators selected by the parties ("Panel"), Main Street asserted that its disputed claims should proceed to a hearing as soon as possible and without the escrow dispute in this Court being resolved.  Main Street's filing of an Arbitration Demand, and then its request to schedule the arbitration hearings with the escrow dispute still pending, compelled F&D to file a Motion to Stay Arbitration until this Court resolves whether Main Street has a present duty to deposit the unpaid contract balance into the escrow account in advance of either party invoking the Disputes Procedure.  Having been presented to the Panel, F&D's Motion to Stay Arbitration is not presented herein for determination.

Instead, F&D brings the briefing of F&D's Motion to Stay Arbitration to the Court's attention for the limited purpose of raising admissions made by Main Street when opposing the Motion to Stay Arbitration that bear directly on whether Main Street's Counterclaim now should be dismissed (see infra § II.B.4).

**4.     After Its Motion to Dismiss and/or Stay this Action was Denied by this Court, Main Street Filed a Counterclaim Alleging Identical Claims that the Chester County Court Ruled Must Be Arbitrated and Were, In Fact, Raised by Main Street When Filing Its Arbitration Demand**

Seemingly, the forum for Main Street's liquidated damages and defect claims was no longer in question after Main Street did not appeal the Chester County Court's Order and submitted its claims to arbitration on January 7, 2022.  (Ex. B.)  And yet, four months later, Main Street now seeks to litigate its liquidated damages and defect claims in a Counterclaim filed with the Court on May 4, 2022.  (Dkt. No. 36.)

In its Counterclaim, Main Street alleges the same claims that it already alleged in its Arbitration Demand.  Generally, both pleadings allege that Main Street should be allowed to withhold the over seven-million-dollar contract balance that it dedicated to F&D in the Liquidated Damages Settlement and Contract Balance Agreement, without any consideration of its escrow obligation.  Indeed, all of the allegations in the Counterclaim are essentially a copy and paste reproduction of the Arbitration Demand.  (Compare Dkt. No. 36 to Ex. B.)  The Arbitration Demand itself was virtually a copy-and-paste reproduction of Main Street's allegations and claims from its earlier Complaint in its Chester County Action that the state court ruled must be arbitrated. Raising the same claims in every forum that it has appeared, Main Street has, thus, reasserted its allegations in identical fashion and written verbatim starting with the original state court complaint, then the Arbitration Demand, and now in its Counterclaim.  (E.g., Compare Dkt. No. 36, Countercl. ¶¶ 93 – 95 to Ex. B., Arb. Demand ¶¶ 86 – 88.)  The only noticeable differences are stylistic

10

flourishes and the inclusion of some new electrical claims, which were the product of another series of inspections that apparently occurred after the Arbitration Demand was filed in January 2022.

Irreconcilable with filing a Counterclaim in this Court, Main Street readily acknowledges that its claims against F&D (now appearing in this Court) are subject to the Chester County Court's Order, and therefore, belong in arbitration. Bearing directly on Main Street's violation of the Chester County Court Order, Main Street made the following statements to the Panel in its Opposition to F&D's Motion to Stay Arbitration:

- Page 14 of Main Street's Opposition – "The plain language of Judge Sommer's Order mandates that Owner [Main Street] must prosecute its claims against JMB and F&D only through binding arbitration."

- Page 14 of Main Street's Opposition – "Owner's Statement of Claim [Arbitration Demand] mirrors the claims against F&D and JMB made by Owner in the Chester County Action."

- Page 18 of Main Street's Opposition – "The Chester County Court has already decided that the arbitration provision in the Liquidated Damages Agreement is 'broad and all encompassing' and that Owner's claims against JMB and F&D for breach of contract and breach of warranty fall within the scope of the arbitration provision ["broad and all encompassing" is Main Street's description, not the court's].[3] Owner asserts the identical claims for breach of contract and breach of

---

[3] The significance of this entire quote is that Main Street admits its breach of contract/warranty claims against F&D fall within the scope of the parties' arbitration agreement. The preceding sentence, where Main State claims that the Chester County Court found the arbitration provision to be "broad and all encompassing," is a mischaracterization of the Chester County Court's Order and is included here only to accurately quote Main Street's brief. The Chester County Court's Order actually states: "As for the agreement to arbitrate, it broadly encompasses 'any disputes' that

warranty against JMB and F&D in the arbitration action as it did in the Chester County Action."

- Page 18 of Main Street's Opposition – "The arbitrability of Owner's claims has been fully and finally decided.  Relitigating the scope of the arbitration provision is barred by the doctrine of collateral estoppel."

Main Street's Opposition to F&D's Motion to Stay Arbitration (without exhibits) is attached hereto as Exhibit C.

## III.   <u>ARGUMENT</u>

For two independent reasons, Main Street's Counterclaim should be dismissed with prejudice.

*First*, the Chester County Court Order prohibits Main Street's attempt to litigate its Counterclaim alleging liquidated damages and construction defect/warranty claims in court rather than in arbitration.  The Chester County Court has already conclusively determined that Main Street must arbitrate its liquidated damages and defect/warranty claims against F&D under Section II.15 of the parties' Settlement and Dedication of Contract Balance Agreement.  That ruling is final and binding upon Main Street in this action under the Full Faith and Credit Statute, 28 U.S.C. § 1738.  According to 28 U.S.C. § 1738 and the companion common law doctrine of issue preclusion (collateral estoppel), Main Street cannot now raise a dispute whether this Court, or the arbitration it initiated, is the proper forum for its liquidated damages and defect/warranty claims against F&D. By the Chester County Court's Order, Main Street's Counterclaim containing those claims cannot be brought in this Court, or any court.  Therefore, the Counterclaim must be dismissed from this action with prejudice.

---

arise 'with regard to liquidated damages that are assessed' or the basis for withholding funds that are paid into the Escrow Account.'"  (Ex. A (emphasis added).)

*Second*, even if the Court does not apply collateral estoppel to the Chester County Court Order, the Court should compel Main Street to arbitrate its Counterclaim under 9 U.S.C § 4.  An independent review of Main Street's Counterclaim makes clear that the entirety of the Counterclaim, which consists of allegations of liquidated damages and defect/warranty claims attempting to justify withholdings, are subject to alternative dispute resolution, including binding arbitration, under the parties' Settlement and Dedication of Contract Balance Agreement.

A.    **Main Street Cannot, as a Matter of Law, Litigate Its Liquidated Damages and Defect/Warranty Claims After the Chester County Court Finally Decided that Main Street Must Arbitrate Those Claims**

As summarized in the Background of Section II above, Main Street previously attempted to litigate its liquidated damages and defective work claims against F&D in the Chester County Action.  (See Ex. A at 3 (where the Chester County Court summarized Main Street's claims as follows: "[b]ased upon what it contends are substantial losses and damages caused by the defective and incomplete work of JMB, Main Street withheld Contract funds.  According to Main Street, its estimated damages, which include liquidated damages, far exceed the amount of Contract funds withheld by Main Street.").)  Main Street's pursuit of these claims in court rather in accordance with the parties' Disputes Procedure in the Settlement and Dedication of Contract Balance Agreement prompted F&D to file Preliminary Objections in the Chester County Action.  (Id. at 4.)  On November 24, 2021, the Chester County Court sustained F&D's preliminary objection based upon the arbitration requirement in the Disputes Procedure.  (Ex. A.)  Given that Main Street's allegations raised "claims of defective construction work and delayed substantial completion resulting in the assessment of liquidated damages," the Court ruled that "Main Street's claims against F&D and JMB fall squarely within the scope of Section II.15" and must be arbitrated.  (Id. at 7 (internal citations omitted).)  Main Street did not appeal the Chester County Court's Order.

As Main Street has since recognized, "[t]he plain language of Judge Sommer's Order

13

mandates that [it] must prosecute its claims against JMB and F&D only through binding arbitration." (Ex. C at 14, 18.)  That is a correct summation of the Chester County Court Order, and by extension, it necessarily mandates dismissal of Main Street's Counterclaim.  Since the Counterclaim raises identical liquidated damages and defect/warranty claims that the Chester County Court determined are subject to arbitration, and Main Street did, in fact, submit its claims to arbitration on January 7, 2022, the Chester County Court Order bars the Counterclaim from being presented to this Court as a matter of law.

1. **The Issue Preclusion Doctrine Bars a Party to a State Court Ruling from Attempting to Re-Litigate the Issue Finally Decided by the State Court in a Subsequent Federal Action**

Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980).  28 U.S.C. § 1738 provides, in relevant part, that "judicial proceedings [of any court of any State], so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, territory or Possession from which they are taken." See also Allen, 449 U.S. at 96.  The United States Court of Appeals for the Third Circuit has recognized that "Federal courts give preclusive effect to issues decided by state courts, to not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." Metro. Edison Co. v. Penn. Pub. Util. Comm'n, 767 F.3d 335, 350 (3d Cir. 2014) citing Allen, 449 U.S. at 96.

The doctrine of issue preclusion (collateral estoppel), as applied by the law of the state where the prior state decision was rendered, determines whether the state decision precludes relitigating the issue decision in a subsequent federal action. Id. at 350 – 51. In Pennsylvania,

14

collateral estoppel attaches when five factors are satisfied:

(1) the issue decided in the prior case is identical to the one presented in the later action;

(2) there was a final adjudication on the merits;

(3) the party against whom the plea is asserted was a party or in privity with a party in the prior case;

(4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5) the determination in the prior proceeding was essential to the judgment.

Metro. Edison Co., 767 F.3d at 351.

> **2.    The Chester County Court's Ruling that Main Street's Claims Against F&D are Arbitrable Should Be Accorded Preclusive Effect Over Main Street's Most Recent Attempt in this Action to Litigate Those Same Claims**

Applying these elements, the doctrine of issue preclusion bars Main Street from challenging the arbitrability of its claims asserted against F&D in the Counterclaim, and therefore, those claims cannot proceed here in court.  Instead, Main Street must arbitrate its liquidated damages and defect claims against F&D in arbitration.  Nor could Main Street legitimately contest the preclusive effect of the Chester County Court Order, as it has already acknowledged that "[t]he arbitrability of Owner's claims has been fully and finally decided.  Relitigating the scope of the arbitration provision is barred by the doctrine of collateral estoppel."  (Ex. C at 18.)

> a.    The Legal and Factual Disputes Previously Before the Chester County Court and Now, this Court, as a Result of Main Street's Counterclaim, are Identical

Turning to the first of the issue preclusion elements, the issue decided in the Chester County Action was whether Main Street's claims against F&D for (i) liquidated damages due to alleged delayed substantial completion, and (ii) construction defect/warranty claims, both of which were

15

the basis for Main Street's withholding of Contract funds, may be properly litigated in court, or, are those claims subject to alternative dispute resolution, including arbitration, under Sections II.14 and II.15 of the Agreement.  That legal question resolved by the Chester County Court is exactly the same threshold issue arising from Main Street's attempt to assert its liquidated damages and defect claims against F&D as a Counterclaim in this action.

The legal issue presented by Main Street's Counterclaim is identical to the dispute resolved by the Chester County Court Order because the allegations made by Main Street in the Chester County Action and the Counterclaim are similarly identical.  Main Street's Counterclaim is essentially a copy-and-paste reproduction of the Arbitration Demand that Main Street filed in this Arbitration on January 7, 2022.  The Arbitration Demand, itself, is virtually a copy and paste reproduction of Main Street's allegations and claims from its earlier Chester County Action.  (See Ex. C at 18 ("Owner asserts the identical claims for breach of contract and breach of warranty against JMB and F&D in the arbitration action as it did in the Chester County Action.").)  Almost every allegation in the Counterclaim, Arbitration Demand, and original state court Complaint, are identical and written verbatim except for minimal stylistic differences and the inclusion of some new electrical claims that are attributable to yet another inspection after Main Street began renting units.  See comparison of the pleadings supra, § II.B.3.  The gravamen of each pleading filed chronologically first in state court, then in arbitration, and now in Federal Court, is that Main Street alleges it may withhold the over seven-million-dollar contract balance due to its claims of liquidated damages, defects and breach of warranty.  Cf. Adelphia Gateway, LLC v. Penn. Envtl. Hearing Bd., 2021 WL 5494286, at *8 (M.D. Pa. 2021) ("When the issues are identical, a difference in the party's requested relief from one proceeding to another does not prevent a court from applying collateral estoppel.")

Accordingly, there can be no question that the first element of the issue preclusion test – whether the issue decided by the prior case is identical to the one presented in the later action – has been satisfied by Main Street's "cut and paste" reproduction of the allegations raised first in the Chester County Action and now in its Counterclaim.

> b.   The Chester County Court Order was a Final Adjudication Concerning the Arbitrability of Main Street's Liquidated Damages and Defect Claims Against F&D

The second factor in the issue preclusion test is whether there was a final adjudication on the merits.  Metro. Edison Co., 767 F.3d at 351.  This factor needs only a brief discussion because there can be no dispute that the Chester County Court Order was a final adjudication on the merits of the arbitrability of Main Street's claims against F&D.  The Chester County Court Order was a final order stating the grounds for the court sustaining F&D's preliminary objection under Pa. R. Civ. P. 1028(a)(6) that Main Street's claims were arbitrable.  (Ex. A.)  Main Street did not appeal the Chester County Court Order.  It is, thus, undoubtedly a final adjudication for purposes of according the decision preclusive effect.  See Greenleaf v. Garlock, Inc., 174 F.3d 352, 358 (3d Cir. 1999).

> c.   Main Street was a Party to the Chester County Court Action

The third factor – whether the party against whom issue preclusion is asserted, was a party in the prior case, also warrants only a brief mention.  Main Street was the Plaintiff in the Chester County Action, and consequently, was a party to the case.

> d.   Main Street Had a Full and Fair Opportunity to Litigate the Arbitrability of its Claims Against F&D in the Chester County Court Action

As the Plaintiff in the Chester County Action, Main Street sought to present its claims against F&D in court, and accordingly, it submitted a brief in opposition to F&D's Preliminary Objections.  (See, e.g., Ex. A at 5 (summarizing Main Street's arguments in response to F&D's

17

preliminary objection).)   Main Street, thus, had a full and fair opportunity to address the arbitrability of its claims against F&D in the Chester Court.  The fourth factor of the issue preclusion test is, therefore, satisfied as well.

> e.    <u>The Chester County Court's Ruling that Main Street's Liquidated Damages and Defect/Warranty Claims Against F&D were Arbitrable was Clearly Essential to the Judgment</u>

Finally, the Chester County Court's determination that Main Street's liquidated damages and defects claims are subject to arbitration was more than just "essential to the judgment" as the threshold for the last factor requires.  The Court's ruling on the arbitrability of Main Street's claims *was* the sole grounds for the Chester County Court order sustaining F&D's Preliminary Objections that dismissed F&D from the Chester County Action.  (Ex. A.)

> **3.    As All Elements are Met, the Doctrine of Issue Preclusion Bars Main Street from Pursuing Its Claims in this Action Instead of in the Arbitration that Main Street Initiated**

Based on the foregoing, the Chester County Court Order should be afforded preclusive effect and control the disposition of the Counterclaim.  According to that Order, Main Street's liquidated damages and defect/warranty claims asserted in the Counterclaim are subject to binding alternative dispute resolution, including arbitration, under Section II.15 of the Settlement and Dedication of Contract Balance Agreement.  Main Street has no genuine, good faith basis to pursue its claims against F&D in this action, let alone to do so as those same claims are pending in the arbitration that it commenced.  As a matter of law, the doctrine of issue preclusion bars Main Street from trying to press its claims in this Court and its Counterclaim should, therefore, be dismissed.

**B.**     **If the Court Does Not Find that Issue Preclusion Bars the Counterclaim, the Court Still Should Compel Arbitration of the Counterclaim Consistent with the Parties' Arbitration Agreement[4]**

Should the Court find that dismissal of the Counterclaim is not warranted based upon the Chester County Court's Order, the Court should nevertheless find that the substance of Main Street's claims fall within the scope of the Disputes Procedure, including Section II.15 of the Settlement and Dedication of Contract Balance Agreement, and therefore, compel arbitration of the Counterclaim in the pending arbitration already instituted by Main Street in January 2022.[5]

The Federal Arbitration Act establishes a national policy favoring the enforcement of arbitration agreements.   In re Rotavirus Vaccines Antitrust Litig., 30 F.4th 148, 154 (3d Cir. 2022).[6]  To determine if a dispute is arbitrable, a two-part test is employed.   In re Remicade (Direct Purchaser Antitrust Litig.), 938 F.3d 515, 519 (3d Cir. 2019).[7]  First, courts determine whether a valid agreement to arbitrate exists (i.e., its enforceability).   Id. at 519.   Second, courts determine whether a concededly binding arbitration clause applies to a certain type of controversy (i.e., its scope).   Id.   In conducting this analysis, courts apply state law principles governing the formation of contracts.   Jaludi v. Citigroup, 933 F.3d 246, 254-55 (3d Cir. 2019).   For the first part of the test, no presumption of arbitrability applies.   Id. at 255.   However, at step two, when the scope of an

---

[4] Where, as here, the face of the Counterclaim and its attachments have sufficient clarity as to the scope of the dispute and establish the existence of an arbitration agreement, it is appropriate to resolve a motion to compel arbitration under a motion to dismiss standard without the need for any discovery.   Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773-74 (3d. Cir. 2013).

[5] This motion to compel arbitration should not be construed as waiving F&D's pending motion in the arbitration proceeding that Main Street's claims are not ripe for resolution unless and until Main Street's escrow obligations concerning the disputed contract funds are determined by this Court or voluntarily fulfilled by Main Street.  Nor should this motion to compel arbitration be construed as presently requesting that the Court decide the order in which the parties' disputes should be resolved.  This motion to compel arbitration narrowly requests that the Court confirm that Main Street's claims in the Counterclaim are arbitrable, consistent with Main Street prior submission of its claims to arbitration, so that the claims can be resolved in the pending arbitration proceeding at the appropriate time.

[6] Pennsylvania courts have similarly invoked the same policy when applying state arbitration law.   See Taylor v. Extendicare Health Facilities, Inc., 637 Pa. 193, 195 (2016) (courts in the Commonwealth must "consider questions of arbitrability with a healthy regard for the federal policy favoring arbitration.").

[7] The inquiry is the same whether the agreement is governed by the FAA or Pennsylvania law.   Saltzman v. Thomas Jefferson Univ. Hosps., Inc., 166 A.3d 465, 471-72 (Pa. Super. 2017).

arbitration agreement is weighed, "due regard must be given to the federal policy favoring arbitration."  Id.

As set forth below, both elements are unquestionably satisfied in this case.  An arbitration agreement exists among F&D, Main Street and JMB, in the Settlement and Dedication of Contract Balance Agreement, and that agreement covers the Counterclaim against F&D.  Accordingly, Main Street cannot pursue its Counterclaim in court, but instead, it is obligated to pursue its claims against F&D through the Disputes Procedure, including the arbitration that Main Street already commenced.[8]

1.      **An Arbitration Agreement Exists Among Main Street, F&D and JMB**

As described in the Background in Section II above, the Settlement and Dedication of Contract Balance Agreement contains a "Disputes Procedure" that contains an agreement to submit certain controversies to "binding arbitration" in accordance with the Construction Industry Rules of the American Arbitration Association ("AAA").  (Compl. Ex B, § II.15.)   As Main Street pled the existence of the Settlement and Dedication of Contract Balance Agreement and attached a copy of it to the Complaint, Main Street cannot legitimately contest the fact that the parties executed an agreement to refer certain disputes to binding arbitration with the AAA.   (Dkt. No. 36, Countercl. ¶ 33, Ex. F.)  Accordingly, the first element of the arbitrability test is easily satisfied.

2.      **The Complaint as Against F&D and JMB Falls Within the Scope of Main Street's Agreement to Arbitrate**

The second factor – whether the parties' dispute falls within the scope of the parties' Disputes Procedure, including the arbitration provision – also is easily satisfied in this case.

According to its express terms, the arbitration provision in Section II.15 "will apply" to

---

[8] F&D emphasizes, again, that the question of timing and conditions for arbitration are presently before the Panel for consideration.  The question before the Court in this Motion is simply whether Main Street's claims are arbitrable.

"<u>any</u> dispute" among Main Street, F&D and/or JMB "with regard to liquidated damages that are assessed and paid into the Escrow Account under this Agreement and/or the basis for withholding funds that are paid into the Escrow Account under this Agreement."  (Compl., Ex. B at § II.15.)  The term "funds" addressed in Section II.15 are the unpaid construction contract funds that Main Street dedicated to Project completion as the work progressed (i.e. the Contract Balance).  Consequently, by the plain language of Section II.15, the binding arbitration agreement applies to "any dispute" which led Main Street to assert a "withholding" of the "funds," including "liquidated damages that are assessed," which Main Street had already dedicated to F&D's completion effort.  Indeed, for any dispute regarding escrowed funds, the Settlement and Dedication of Contract Balance Agreement requires a "court order enforcing an arbitration award" as a precondition to the distribution of funds.  (Ex. 1 at ¶ II.8.)  Taken together, these provisions demonstrate that the parties' binding arbitration agreement covers any affirmative claim of Main Street that is alleged as a basis to withhold any portion of the contract funds that it dedicated to F&D for the completion work.

Main Street's claims against F&D and JMB are clearly within the scope of Section II.15.  In its Counterclaim, Main Street alleges claims of defective construction work (Countercl. ¶¶ 41 – 84, 93 – 98) and delayed substantial completion resulting in the assessment of liquidated damages (<u>Id.</u> at ¶¶ 85 – 92, 99 – 107).  Main Street expressly contends in Paragraph 93 of the Counterclaim that these claims justified the withholding of "Contract funds to repair JMB's defective and non-conforming Work and for the liquidated damages due and owing to Main Street" (<u>Id.</u> at 93.)  It is logically impossible for the Court to resolve Main Street's claim for monetary damages without adjudicating either the "liquidated damages that are assessed" or Main Street's "basis for withholding funds," both of which are expressly arbitrable under the Settlement and Dedication of

Contract Balance Agreement.  Indeed, it merits repeated emphasis that Main Street has already submitted these identical claims to arbitration in its Arbitration Demand.  In so doing, Main Street plainly acknowledged that its claims against F&D fall within the scope of Section II.15 as determined by the Chester County Court.  Thus, the subject matter of the Counterclaim falls squarely under the types of disputes that the parties referred to arbitration under Section II.15 – the assessment of liquidated damages and Main Street's bases for withholding contract funds from payment to F&D.  Accordingly, F&D's motion, in the alternative, to compel arbitration, should be granted.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, F&D respectfully requests that the Court find that Main Street's Counterclaim fails to state a claim upon which relief can be granted because Main Street is required by the Chester County Court Order to arbitrate the claims alleged in the Counterclaim.  Should the Court independently review whether the Counterclaim should be arbitrated, F&D respectfully requests in the alternative that the Court find Main Street's Counterclaim falls within the scope of Section II.15 of the Settlement and Dedication of Contract Balance Agreement, and therefore, compel arbitration of the Counterclaim.

**ORAL ARGUMENT IS RESPECTFULLY REQUESTED**

Dated: June 1, 2022                    Respectfully Submitted,

                                       /s/ *Noah H. Charlson*
                                       Noah H. Charlson
                                       Charlson Braber McCabe & Denmark, P.C.
                                       1628 JFK Blvd., Suite 1803
                                       Philadelphia, PA 19103
                                       Tel: 215-447-7401
                                       noah@charlsonlaw.com

                                       Christopher J. Brasco, *pro hac vice*
                                       Adam M. Tuckman, *pro hac vice*
                                       Noah C. Meissner, *pro hac vice*
                                       Watt, Tieder, Hoffar & Fitzgerald, LLP
                                       1765 Greensboro Station Place, Suite 1000
                                       McLean, VA 22102
                                       Tel: 703-749-1000
                                       cbrasco@watttieder.com
                                       atuckman@watttieder.com
                                       nmeissner@watttieder.com

                                       *Attorneys for Plaintiff*
                                       *Fidelity and Deposit Company of Maryland*

## <u>CERTIFICATE OF SERVICE</u>

I certify, that on the 1st day of June 2022, the foregoing Memorandum in Support of F&D's Motion to Dismiss, or in the Alternative, to Compel Arbitration, was served upon the following by the Court's ECF system:

Sandhya M. Feltes
Kaplin Stewart
910 Harvest Drive
Blue Bell, PA 19422

Steven M. Coren
Kaufman, Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103

*Attorneys for Defendants*

/s/ *Noah H. Charlson*
Noah H. Charlson

24