IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIDELITY AND DEPOSIT COMPANY | : | |
| OF MARYLAND, | : | |
| | : | No. 21-CV-3576 |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| MAIN STREET PHASE II, L.P.  and | : | |
| MAIN STREET PHASE III, L.P., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

AND NOW, this          day of                 , 2022, upon consideration of Defendants' Motion to

Compel Plaintiff's answers to Defendants' Interrogatories and responses to Defendants' Request

for Production of Documents, it is hereby ORDERED, that Defendants' Motion is GRANTED.

Plaintiff shall provide full and complete answers to Defendants' Interrogatories and responses to

Defendants' Request for Production of Documents, without objection, with five (5) days of this

Order.

BY THE COURT

_____

Wendy Beetlestone, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT COMPANY :
OF MARYLAND, :
 : No. 21-CV-3576
   Plaintiff, :
 :
 :
   v. :
 :
MAIN STREET PHASE II, L.P.  and :
MAIN STREET PHASE III, L.P., :
 :
   Defendants. :

## DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S ANSWERS TO INTERROGATORIES AND RESPONSES TO <u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. ("Main Street"), by and through undersigned counsel, move to compel Plaintiff Fidelity and Deposit Company of Maryland ("F&D") to provide full and complete responses to Defendants' Interrogatories and Defendants' Request for Production of Documents, without objection, and state as follows:

1. On April 27, 2022, Main Street served  Interrogatories and a Request for Production of Documents on Plaintiff.  True and correct copies of Main Street's Interrogatories and Request for Production of Documents are attached hereto, respectively, as **Exhibit 1** and **Exhibit 2**.

2. Plaintiff's answers to Main Street's Interrogatories and responses to Main Street's Request for Production of Documents were due on or before May 27, 2022.  See Fed.R.Civ.P. 33(b)(2) and 34(b)(2).

3. On May 13, 2022, F&D requested, and Main Street granted, a one week extension for F&D to respond to Main Street's discovery requests.  F&D's discovery responses were due on June 3, 2022 as a result of that extension.

4.      On June 6, 2022, after the expiration of the extended deadline, F&D requested an additional two week extension to submit its discovery responses.

5.      Main Street agreed to an additional one week extension.  F&D's discovery responses were due on June 10, 2022 as a result of that extension.

6.      Despite being provided two extensions, F&D has not produced its answers to Main Street's Interrogatories or responses to Main Street' Request for Production of Documents.[1]

7.      Main Street made a good faith effort to resolve this discovery dispute on May 13, 2022 and on June 6, 2022, which efforts resulted in two extensions of time provided by Main Street to F&D.

8.      Main Street respectfully requests that F&D be compelled to produce full and complete answers, without objections, to Defendants' Interrogatories and full and complete responses, without objections, to Defendants' Request for Production of Documents within five (5) days.

WHEREFORE, Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. respectfully request that their Motion to Compel be granted and Plaintiff Fidelity and Deposit Company of Maryland be compelled to produce full and complete responses, without objection, to Defendants' Interrogatories and Request for Production of Documents within five (5) days.

---

[1] The parties are drafting an ESI protocol and, as a result, the parties have agreed that F&D will produce its documents after the ESI protocol has been finalized.

Respectfully,

KAPLIN STEWART

/s/  Sandhya M. Feltes
Sandhya M. Feltes, Esquire
Marc B. Kaplin, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
mkaplin@kaplaw.com
sfeltes@kaplaw.com


Steven M. Coren, Esquire
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA  19103
(215) 735-8700
(215) 735-5170 facsimile
scoren@kcr-law.com

Attorneys for Defendants

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT COMPANY   :
OF MARYLAND,         :
             : No.  21-CV-3576
    Plaintiff,      :
             :
  v.           :
             :
MAIN STREET PHASE II, L.P.  and  :
MAIN STREET PHASE III, L.P.,   :
    Defendants.     :

## <u>CERTIFICATE OF GOOD FAITH</u>

   I, Sandhya M. Feltes, Esquire, do hereby certify that, pursuant to Fed. R. Civ. P. 37(a)(1), I attempted in good faith to confer with Plaintiff's counsel to resolve the discovery dispute.  On May 13, 2022, Plaintiff's counsel, Noah Charlson, Esquire, requested a one week extension to provide Plaintiff's answers to Defendants' Interrogatories and responses to Defendants' Request for Production of Documents.  Plaintiff's request was granted and the new deadline for Plaintiff's discovery response was June 3, 2022.

   On June 6, 2022, I sent an email to Plaintiff's counsel, Adam Tuckman, Esquire, advising that Plaintiff's responses to Defendants' discovery requests were overdue.  On that date, Plaintiff was provided an additional one week, until June 10, 2022, to provide Plaintiff's responses to Defendants' Interrogatories and Request for Production of Documents.

         KAPLIN STEWART

          /s/  Sandhya M. Feltes
         Sandhya M. Feltes, Esquire
         910 Harvest Drive
         Blue Bell, PA 19422
         (610) 941-2561
         (610) 684-2011 facsimile
         sfeltes@kaplaw.com
         Attorneys for Defendants

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| FIDELITY AND DEPOSIT COMPANY<br>OF MARYLAND, | : <br> : <br> : | No. 21-CV-3576 |
| Plaintiff, | : <br> : <br> : |  |
| v. | : <br> : |  |
| MAIN STREET PHASE II, L.P.  and<br>MAIN STREET PHASE III, L.P., | : <br> : <br> : |  |
| Defendants. | : |  |

**DEFENDANTS' INTERROGATORIES
DIRECTED TO PLAINTIFF**

Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P., by and through undersigned counsel, request that Plaintiff serve full and complete answers to the below Interrogatories within thirty (30) days in accordance with the Federal Rules of Civil Procedure:

**I.     DEFINITIONS OF TERMS**

These definitions form an integral part of these Interrogatories.

1.     "Complaint" shall mean the Complaint filed by Plaintiff in the above captioned action and any amendments thereto.

2.     "You" or "your" shall mean the party to whom these document requests are addressed and includes any person or persons acting on behalf or at the direction of the responding party, including counsel.

3.     "He" or "she" and any other masculine or feminine pronoun includes any individual regardless of gender to whom the Interrogatory would otherwise apply.

4.     "Person" means any natural person or any entity other than a natural person,

1

including but not limited to proprietorships, partnerships, corporations and associations, as well as all divisions, departments or other units thereof, and means both the singular and plural.

5.      "And" or "or" shall mean "and/or" and shall be interpreted in the broadest sense so as to include any information otherwise within the scope of this Request.

6.      "Refer to," "referring to," "concern," "concerning," "relate to," "relating to," and "regarding" mean directly or indirectly, in whole or in part, referring to, relating to, concerning, regarding, connected with, commenting on, impinging or impacting upon, affecting, responding to, showing, describing, analyzing, reflecting, supporting or constituting.

7.      "Document(s)," shall include the plural and shall mean without limitation all written, handwritten, typewritten, printed, recorded, optic, electronic, magnetic, tape, disk, or other form of recordation of any kind, however produced or reproduced, whether sent or received or neither, whether in original, manuscript or copy form, including all drafts and copies bearing notations, marks or matter not found on the original, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, in your possession, custody or control, including without limitation: specifications, drawings, correspondence, email, memoranda, notes, diaries, statistics, letters, telegrams, telexes, teletypes, telefax, telecopies, minutes, agendas, contracts, reports, studies, surveys, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications, offers, notations of any sort of conversations (including telephone conversations and meetings), bulletins, printed matter, computer printouts and records, invoices, work sheets, accountant's notes, workpapers and all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records of representations of any kind (including but not limited to, blueprints, diagrams, drawings, sketches, pictures, models, plans, specifications, details,

2

photographs, charts, graphs, microfiche, microfilm, videotape, records, motion pictures) and electronic, mechanical or electric records or representations of any kind (including but not limited to tapes, cassettes, discs and records). "Document(s)" shall also mean every document as defined above, whether an original or a copy, and whether or not in your possession, custody or control, which is known to you and every document which can be located or discovered by reasonably diligent efforts. In each instance, specifically identify the document.

(a)     Without limiting the term "control" as used in the foregoing definition, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person, representative or public or private entity having actual possession thereof.

(b)     Without limiting the generality of the foregoing definition, but for purposes of illustration only, "document(s)" shall include, all correspondence, proposals, offers, contracts, agreements, representations, warranties, certificates, opinions, letters, telegrams, telegraphs, telecopies, cables, telexes, text messages, e-mails, memoranda, notes, log books, memoranda, writings or notes relating to telephone conversations or personal conferences, messages, phone messages, reports, studies, analyses, evaluations, books, records, journals, lists, questionnaires, surveys, summaries, work papers, audit papers, spreadsheets, computations, computer printouts, invoices, bills, receipts, graphs, projections, financial statements, balance sheets, calendars, diaries, articles, circulars, brochures, notices, deposition transcripts, instructions, manuals, minutes or transcriptions of all conversations and meetings, journal entries, confirmations, photographs, microfilms, microfiches, tapes or other electronic recordings, videotapes, databases, slides, filmstrips, job logs, time logs, job minutes, time sheets, applications for payment, scheduling charts, engineering reports, site tests, drawings, sketches, abstracts, or other items;

3

(c)     Without limiting the generality of the foregoing definition, but for purposes of illustration only, "document(s)" shall also include all electronically stored information, produced in its native format, including, but not limited to, computer files and programs, software, databases, desktops, laptops, servers, backup data, embedded data, deleted information, "cookie" files, images, e-mails and attachments, copy and blind copy e-mails, instant messages, internet cache files, internet data, internet service providers, intranets, hardware, drives, hard drives, internal hard drives, external hard drives, flash drives, removable discs including floppy discs, CDs and DVDs, Zip cartridges, memory sticks and flash media, recordings, cassettes, tapes, audio systems, audiotapes and discs, videotapes, handheld wireless devices, cell phone memory and images, voice mail, PDAs, fax machines, word processing, spreadsheets, presentations, as well as any other electronic file stored on any electronic device or any electronic filed created or maintained by computer software;

(d)     Without limiting the generality of the foregoing definition, but for purposes of illustration only, "document(s)" shall also include all metadata and hidden data, produced in its native format, relating to any document as defined herein, including, but not limited to, metadata maintained by an application program, operating system or other program; and shall include for such "document(s)" the author name and/or initials, company and/or organization name, names of previous document authors, document revisions and versions, hidden text or cells, template information, other file properties and summary information, non-visible or embedded objects, personalized views and comments, the dates and times associated with the creation, modification and last access to the electronically stored information, and the computer or server name and path upon which the electronically stored information was located.

(e)     Without limiting the generality of the foregoing definition, the term

4

"document(s)" shall also include all preliminary drafts, versions, or revisions of any of the aforementioned, to all underlying, preparatory, or supporting materials thereto, and to all studies, analyses, or other evaluative or interpretative reports thereof.

8.    "Statement" means:

(a)    a written statement signed or otherwise adopted or approved by the person making it, or

(b)    a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

9.    The terms "identify," "identity," or "identification," shall have the following meanings:

(a)    When used in reference to an individual natural person, shall mean to state the name, the present or last known business and residential addresses, and the current business affiliation and position.

(b)    When used with reference to any entity other than a natural person, state: Its full name;

(i)    Its full name;

(ii)    The address of its principal place of business; and

(iii)    Its organizational form and its purpose;

(c)    When used in reference to a document, shall mean to state the following:

(i)    The date of its preparation;

(ii)    The identity of its author and of any individual involved in its preparation and/or its production;

5

(iii)   The type of document (e.g., letter, chart, memorandum, etc.), or some other designation by which to identify it;

(iv)   Its contents;

(v)   Its present custodian or location; and

(vi)   The identification of all persons for whom it was prepared, or who received copies of it, regardless of whether or not said individuals were designated addressees of said document.

10.   "Electronic Messages" means any electronic text or media content exchanged between two or more users of a software application. Electronic messages include both short message service ("SMS") messages sent over cellular networks and messages sent over the Internet using applications such as WhatsApp, iMessage, Facebook Messenger, Twitter (via direct message), Slack, Google Chat, and many others.  Emails shall be considered a different category for purposes of these Interrogatories.

11.   "Communication(s)" shall mean conversations (whether written, face to face, by telephone or otherwise), correspondence, email, electronic messages, and any other type of document or memorandum.  Where there is a request to identify a communication, state the type of communication (e.g., conversation, letter, telephone call, etc.), the date and time of the communication and all persons who participated in the communication or who observed, heard, read or otherwise received such communication at the time of its occurrence and the substance of the communication.

12.   "Main Street" shall refer to Main Street Phase II, L.P. and Main Street Phase III, L.P., its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

6

13.     "JMB" shall refer to Jeffrey M. Brown Associates, LLC, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

14.     "F&D" shall refer to Fidelity and Deposit Company of Maryland, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

15.     "Beacon Consulting" shall refer to F&D's on-site representative, Beacon Consulting, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

16.     "Project Engineer" shall refer to Advanced Engineering Incorporated, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

17.     "Project" shall refer to the property owned by Main Street identified as a mixed residential and commercial development in West Whiteland Township, Chester County, Pennsylvania; and specifically the residential portion known as Ashbridge, which is a luxury residential community consisting of six three to four story apartment buildings with amenities, such as pool, fully equipped gym, dog park and historic mansion.

18.     "Contract" shall refer to the contractual agreement(s) between Main Street and JMB for base work at the Project, including without limitation, the Basework Contract dated September 17, 2018, Change Orders, Addenda, Project Plans, Specifications, Project Manual and Submittals approved by the Project Architect, and all other Contract Documents.

19.     "Performance Bond" shall refer to the Performance Bond executed on or about October 1, 2018 between JMB as Principal and F&D as Surety in the original amount of $31,860,715.00, which was automatically increased to $45,614,207.00 during the Project for additive Change Orders and Construction Change Directives, to guarantee the furnishing by JMB of all labor and materials required under the Contract.

20.     "Payment Bond" shall refer to Payment Bond No. 9281093 executed on or about October 1, 2018 between JMB as Principal and F&D as Surety in the original amount of $31,860,715, to guarantee payment by F&D and JMB, jointly and severally, to Owner for labor, materials and equipment furnished in connection with JMB's performance of the Contract.

21.     "Notice of Default" shall refer to the Notice of Default issued by Main Street to JMB on or about June 25, 2020, in connection with the Project.

22.     "Notice of Contractor Default" shall refer to the Notice of Contractor default issued by Main Street to F&D on or about June 25, 2020, in connection with the Project.

23.     "Notice to Cure" shall refer to the Notice to Cure issued by Main Street to JMB on or about June 21, 2021.

24.     "Liquidated Damages Agreement" shall refer to the Liquidated Damages Settlement Agreement and Dedication of Contract Balance entered into on or about November 2, 2020, among Main Street, JMB and F&D.

## II.    <u>INTERROGATORIES</u>

1.     Identify all persons with knowledge or information concerning or related to any allegations set forth in the Complaint and for each person identified, please provide a detailed description of the particular information, knowledge or set of facts believed to be possessed by that person.

2.      Identify each and every witness who will testify on your behalf at the trial of this action and the subject matter upon which each individual will testify.

3.      Identify all individuals whom you expect to call as an expert at trial, and with respect to each provide their curriculum vitae and a list of testimonial history in the last five years.

4.      Identify all individuals and entities who conducted an inspection or investigation of any portion of the Project and/or the work performed by JMB and/or its subcontractors.

5.      Set forth all facts which support your contention that "[t]he Surety has fully satisfied its obligation to finance the Project…".

9

6.      Set forth all facts which support your contention that "the Project has achieved Final Completion" and state the date(s) on which you contend the Project achieved Final Completion.

7.      Set forth all facts which support your contention that there was "limited corrective work identified late in the punch list process".

8.      Set forth all facts which support your contention that "$7,126,760.00 is owed to the Surety".

9.      Set forth all facts which support your contention that "the Owner has assessed liquidated damages based on an erroneous and self-serving Substantial Completion standard".

10.     Set forth all facts which support your contention that Owner has "manufactured disputed deficiencies to which it has attached grossly inflated claims in an attempt to justify withholding all payment since December 2020".

11.     Set forth all facts which support your contention that "JMB achieved substantial Completion in accordance with the milestones established in the Liquidated Damages Settlement and Dedication of Contract Balance Agreement".

12.     Identify the date(s) on which you contend that JMB achieved substantial completion and final completion of each building at the Project.

13.     Set forth all facts which support of your contention that "JMB is entitled to time extensions based on delays resulting from the COVID-19 pandemic and concurrent delays for which the Owner is responsible due to change order work directed by the Owner".

11

14.     Set forth all facts which support your contention that the Owner's withholdings are "ill-conceived and inflated".

15.     Set forth all facts which support your contention that "Owner must now deposit amounts subject to dispute into the Escrow Account".

16.     Set forth all facts which support your contention that Owner is "irreparably harming the Surety by not depositing the Balance Due the Surety in the Escrow Account".

17.     Identify with specificity each "harm" which you contend you have or will suffer as a result of Main Street not depositing funds into an escrow account.

18.     Set forth all facts which support your contention that Owner has an obligation or duty to "compensate the Surety for its performance of the Settlement and Dedication of Contract Balance Agreement and the Bond".

19.     Set forth all facts which support your contention that "[t]he Surety has satisfied all conditions precedent necessary to filing each of the causes of action raised in this Complaint".

20.     Set forth all facts which support your contention that JMB's work on the Project was 99.53% complete as of April 30, 2021.

21.     Identify with specificity each and every construction defect and non-conforming work identified by Main Street which you dispute and for each, state all facts which support your dispute of the defective/non-conforming work.

22.      Identify with specificity each loss identified by Main Street which you dispute, and for each, state all facts which support your dispute.

23.      Set forth all facts which support your denial of "the existence of any appropriately assessed liquidated damages".

24.      Set forth all facts which support your contention that "[t]he entire purpose of the Settlement and Dedication of Contract Balance was to ensure that the Unpaid Balance of Contract was available to assist in financing the remaining work and make certain that any disputed funds were preserved through an escrow account".

25.      Set forth all facts which support your contention that you bargained for "specific security protections" in the Settlement and Contract Balance Agreement.

14

KAPLIN STEWART

_Sandhya M. Feltes_

Marc B. Kaplin, Esquire
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
mkaplin@kaplaw.com
sfeltes@kaplaw.com


Steven M. Coren, Esquire
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA  19103
(215) 735-8700
(215) 735-5170 facsimile
scoren@kcr-law.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT COMPANY :
OF MARYLAND, :
  : No. 21-CV-3576
      Plaintiff, :
  :
      v. :
  :
MAIN STREET PHASE II, L.P. and :
MAIN STREET PHASE III, L.P., :
      Defendants. :

## **CERTIFICATE OF SERVICE**

I, Sandhya M. Feltes, Esquire, do hereby certify that on April 27, 2022, a true and correct

copy of Defendants' Interrogatories Directed to Plaintiff was served on the following via Email:

Noah H. Charlson, Esq.
Charlson Braber McCabe & Denmark, P.C.
1628 JFK Blvd., suite 1803
Philadelphia, PA 19103

Christopher J. Brasco, Esquire
Noah R. Meissner, Esquire
Adam M. Tuckman, Esquire
Watt Tieder Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 100
McLean, VA 22102

KAPLIN STEWART

_____
Marc B. Kaplin, Esquire
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
sfeltes@kaplaw.com
Attorneys for Defendants

16

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT COMPANY　　　　:
OF MARYLAND,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　: No. 21-CV-3576
　　　　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
MAIN STREET PHASE II, L.P.  and　　　:
MAIN STREET PHASE III, L.P.,　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendants.　　　　　　　:

**DEFENDANTS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS DIRECTED TO PLAINTIFF**

Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P., by and through undersigned counsel, request that Plaintiff serve full and complete responses to below Requests for Production of Documents within thirty (30) days in accordance with the Federal Rules of Civil Procedure:

**I.**　　**DEFINITIONS OF TERMS**

These definitions form an integral part of this Request for Production of Documents.

1.　　"Complaint" shall mean the Complaint filed by Plaintiff in the above captioned action and any amendments thereto.

2.　　"You" or "your" shall mean the party to whom these document requests are addressed and includes any person or persons acting on behalf or at the direction of the responding party, including counsel.

3.　　"He" or "she" and any other masculine or feminine pronoun includes any individual

1

regardless of gender to whom the Request for Production of Documents would otherwise apply.

4.      "Person" means any natural person or any entity other than a natural person, including but not limited to proprietorships, partnerships, corporations and associations, as well as all divisions, departments or other units thereof, and means both the singular and plural.

5.      "And" or "or" shall mean "and/or" and shall be interpreted in the broadest sense so as to include any information otherwise within the scope of this Request.

6.      "Refer to," "referring to," "concern," "concerning," "relate to," "relating to," and "regarding" mean directly or indirectly, in whole or in part, referring to, relating to, concerning, regarding, connected with, commenting on, impinging or impacting upon, affecting, responding to, showing, describing, analyzing, reflecting, supporting or constituting.

7.      "Document(s)," shall include the plural and shall mean without limitation all written, handwritten, typewritten, printed, recorded, optic, electronic, magnetic, tape, disk, or other form of recordation of any kind, however produced or reproduced, whether sent or received or neither, whether in original, manuscript or copy form, including all drafts and copies bearing notations, marks or matter not found on the original, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, in your possession, custody or control, including without limitation: specifications, drawings, correspondence, email, memoranda, notes, diaries, statistics, letters, telegrams, telexes, teletypes, telefax, telecopies, minutes, agendas, contracts, reports, studies, surveys, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications, offers, notations of any sort of conversations (including telephone conversations and meetings), bulletins, printed matter, computer printouts and records, invoices, work sheets, accountant's notes, workpapers and all drafts, alterations, modifications, changes and amendments

2

of any of the foregoing, graphic or oral records of representations of any kind (including but not limited to, blueprints, diagrams, drawings, sketches, pictures, models, plans, specifications, details, photographs, charts, graphs, microfiche, microfilm, videotape, records, motion pictures) and electronic, mechanical or electric records or representations of any kind (including but not limited to tapes, cassettes, discs and records). "Document(s)" shall also mean every document as defined above, whether an original or a copy, and whether or not in your possession, custody or control, which is known to you and every document which can be located or discovered by reasonably diligent efforts. In each instance, specifically identify the document.

(a) Without limiting the term "control" as used in the foregoing definition, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person, representative or public or private entity having actual possession thereof.

(b) Without limiting the generality of the foregoing definition, but for purposes of illustration only, "document(s)" shall include, all correspondence, proposals, offers, contracts, agreements, representations, warranties, certificates, opinions, letters, telegrams, telegraphs, telecopies, cables, telexes, text messages, e-mails, memoranda, notes, log books, memoranda, writings or notes relating to telephone conversations or personal conferences, messages, phone messages, reports, studies, analyses, evaluations, books, records, journals, lists, questionnaires, surveys, summaries, work papers, audit papers, spreadsheets, computations, computer printouts, invoices, bills, receipts, graphs, projections, financial statements, balance sheets, calendars, diaries, articles, circulars, brochures, notices, deposition transcripts, instructions, manuals, minutes or transcriptions of all conversations and meetings, journal entries, confirmations, photographs, microfilms, microfiches, tapes or other electronic recordings, videotapes, databases, slides,

3

filmstrips, job logs, time logs, job minutes, time sheets, applications for payment, scheduling charts, engineering reports, site tests, drawings, sketches, abstracts, or other items;

(c)     Without limiting the generality of the foregoing definition, but for purposes of illustration only, "document(s)" shall also include all electronically stored information, produced in its native format, including, but not limited to, computer files and programs, software, databases, desktops, laptops, servers, backup data, embedded data, deleted information, "cookie" files, images, e-mails and attachments, copy and blind copy e-mails, instant messages, internet cache files, internet data, internet service providers, intranets, hardware, drives, hard drives, internal hard drives, external hard drives, flash drives, removable discs including floppy discs, CDs and DVDs, Zip cartridges, memory sticks and flash media, recordings, cassettes, tapes, audio systems, audiotapes and discs, videotapes, handheld wireless devices, cell phone memory and images, voice mail, PDAs, fax machines, word processing, spreadsheets, presentations, as well as any other electronic file stored on any electronic device or any electronic filed created or maintained by computer software;

(d)     Without limiting the generality of the foregoing definition, but for purposes of illustration only, "document(s)" shall also include all metadata and hidden data, produced in its native format, relating to any document as defined herein, including, but not limited to, metadata maintained by an application program, operating system or other program; and shall include for such "document(s)" the author name and/or initials, company and/or organization name, names of previous document authors, document revisions and versions, hidden text or cells, template information, other file properties and summary information, non-visible or embedded objects, personalized views and comments, the dates and times associated with the creation, modification and last access to the electronically stored information, and the computer or server name and path

4

upon which the electronically stored information was located.

(e)     Without limiting the generality of the foregoing definition, the term "document(s)" shall also include all preliminary drafts, versions, or revisions of any of the aforementioned, to all underlying, preparatory, or supporting materials thereto, and to all studies, analyses, or other evaluative or interpretative reports thereof.

8.     "Statement" means:

(a)     a written statement signed or otherwise adopted or approved by the person making it, or

(b)     a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

9.     The terms "identify," "identity," or "identification," shall have the following meanings:

(a)     When used in reference to an individual natural person, shall mean to state the name, the present or last known business and residential addresses, and the current business affiliation and position.

(b)     When used with reference to any entity other than a natural person, state: Its full name;

(i)     Its full name;

(ii)    The address of its principal place of business; and

(iii)   Its organizational form and its purpose;

(c)     When used in reference to a document, shall mean to state the following:

(i)     The date of its preparation;

(ii)     The identity of its author and of any individual involved in its preparation and/or its production;

(iii)    The type of document (e.g., letter, chart, memorandum, etc.), or some other designation by which to identify it;

(iv)    Its contents;

(v)     Its present custodian or location; and

(vi)    The identification of all persons for whom it was prepared, or who received copies of it, regardless of whether or not said individuals were designated addressees of said document.

10.     "Electronic Messages" means any electronic text or media content exchanged between two or more users of a software application. Electronic messages include both short message service ("SMS") messages sent over cellular networks and messages sent over the Internet using applications such as WhatsApp, iMessage, Facebook Messenger, Twitter (via direct message), Slack, Google Chat, and many others.  Emails shall be considered a different category for purposes of these Interrogatories.

11.     "Communication(s)" shall mean conversations (whether written, face to face, by telephone or otherwise), correspondence, email, electronic messages, and any other type of document or memorandum.  Where there is a request to identify a communication, state the type of communication (e.g., conversation, letter, telephone call, etc.), the date and time of the communication and all persons who participated in the communication or who observed, heard, read or otherwise received such communication at the time of its occurrence and the substance of the communication.

12.     "Main Street" shall refer to Main Street Phase II, L.P. and Main Street Phase III,

6

L.P., its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

13.     "JMB" shall refer to Jeffrey M. Brown Associates, LLC, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

14.     "F&D" shall refer to Fidelity and Deposit Company of Maryland, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

15.     "Beacon Consulting" shall refer to F&D's on-site representative, Beacon Consulting, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

16.     "Project Engineer" shall refer to Advanced Engineering Incorporated, its agents, employees, and all other persons, including counsel, acting or purporting to act on its behalf.

17.     "Project" shall refer to the property owned by Main Street identified as a mixed residential and commercial development in West Whiteland Township, Chester County, Pennsylvania; and specifically the residential portion known as Ashbridge, which is a luxury residential community consisting of six three to four story apartment buildings with amenities, such as pool, fully equipped gym, dog park and historic mansion.

18.     "Contract" shall refer to the contractual agreement(s) between Main Street and JMB for base work at the Project, including without limitation, the Basework Contract dated September 17, 2018, Change Orders, Addenda, Project Plans, Specifications, Project Manual and Submittals approved by the Project Architect, and all other Contract Documents.

19.     "Performance Bond" shall refer to the Performance Bond executed on or about October 1, 2018 between JMB as Principal and F&D as Surety in the original amount of $31,860,715.00, which was automatically increased to $45,614,207.00 during the Project for

additive Change Orders and Construction Change Directives, to guarantee the furnishing by JMB of all labor and materials required under the Contract.

20.     "Payment Bond" shall refer to Payment Bond No. 9281093 executed on or about October 1, 2018 between JMB as Principal and F&D as Surety in the original amount of $31,860,715, to guarantee payment by F&D and JMB, jointly and severally, to Owner for labor, materials and equipment furnished in connection with JMB's performance of the Contract.

21.     "Notice of Default" shall refer to the Notice of Default issued by Main Street to JMB on or about June 25, 2020, in connection with the Project.

22.     "Notice of Contractor Default" shall refer to the Notice of Contractor default issued by Main Street to F&D on or about June 25, 2020, in connection with the Project.

23.     "Notice to Cure" shall refer to the Notice to Cure issued by Main Street to JMB on or about June 21, 2021.

24.     "Liquidated Damages Agreement" shall refer to the Liquidated Damages Settlement Agreement and Dedication of Contract Balance entered into on or about November 2, 2020, among Main Street, JMB and F&D.

## II.     **INSTRUCTIONS**

1.     The following Requests for Production of Documents shall be deemed to be continuing, and any additional documents which you acquire subsequent to the date of answering these Requests for Production of Documents, up to and including the date of trial, shall be furnished to the attorneys for the defendants promptly after such information is acquired.

2.     When producing a document or documents, you are to indicate the specific Request(s) to which the document(s) responds.

3.     If the document produced is responsive to more than one Request, the document

need only be produced once, but you are to specify the Requests to which it responds.

4.      If a document is responsive to a Request and is in your control, but is not in your possession or custody, identify the person or entity with possession or custody, and also identify the document.

5.      If any document was, but is no longer, in your possession or subject to your control, identify the document and also state what disposition was made of it, by whom, and the date or dates or approximate date or dates on which such disposition was made and why.

6.      If any form of privilege or other protection from disclosure is claimed as a basis for withholding a document or for objecting to one of the following Requests, set forth the legal basis for your claim that a document is privileged or protected from discovery and state each and every fact on which you base your claim of privilege or other protection from discovery sufficient to allow the Court to make a full determination as to the propriety of the refusal to produce the document or respond to the Request.

III.      **REQUEST FOR PRODUCTION OF DOCUMENTS**

1.       All documents referred to and/or relied upon in preparing F&D's Complaint.

2.      All documents and Correspondence relating to, referring to and/or regarding any and all of your claims and defenses in this action.

3.      The information required to be produced under Fed.R.Civ.P. 26(a)(2) for any person you may use at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

4.      The Statements of any individual and/or entity regarding the Project, Payment Bond, Performance Bond, Contract, Liquidated Damages Agreement and/or any other matter related to the claims and/or defenses asserted in this action.

9

5.      All documents and Correspondence relating to, referring to and/or regarding your claim that "[t]he Surety has fully satisfied its obligation to finance the Project…".

6.      All documents and Correspondence relating to, referring to and/or regarding your claim that "the Project has achieved Final Completion".

7.      All documents and Correspondence relating to, referring to and/or regarding your contention that there was "limited corrective work identified late in the punch list process".

8.      All documents and Correspondence relating to, referring to and/or regarding your contention that "$7,126,760.00 is owed to the Surety".

9.      All documents and Correspondence relating to, referring to and/or regarding your contention that "the Owner has assessed liquidated damages based on an erroneous and self-serving Substantial Completion standard".

10.      All documents and Correspondence relating to, referring to and/or regarding your contention that Owner has "manufactured disputed deficiencies to which it has attached grossly inflated claims in an attempt to justify withholding all payment since December 2020".

11.      All documents and Correspondence relating to, referring to and/or regarding your contention that "JMB achieved substantial Completion in accordance with the milestones established in the Liquidated Damages Settlement and Dedication of Contract Balance Agreement".

12.      All documents and Correspondence relating to, referring to and/or regarding your contention that "JMB is entitled to time extensions based on delays resulting from the COVID-19 pandemic and concurrent delays for which the Owner is responsible due to change order work directed by the Owner".

13.      All documents and Correspondence relating to, referring to and/or regarding your

contention that the Owner's withholdings are "ill-conceived and inflated".

14.     All documents and Correspondence relating to, referring to and/or regarding your contention that "Owner must now deposit amounts subject to dispute into the Escrow Account".

15.     All documents and Correspondence relating to, referring to and/or regarding your contention that Owner is "irreparably harming the Surety by not depositing the Balance Due the Surety in the Escrow Account".

16.     All documents and Correspondence relating to, referring to and/or regarding your contention that Owner has an obligation or duty to "compensate the Surety for its performance of the Settlement and Dedication of Contract Balance Agreement and the Bond".

17.     All documents and Correspondence relating to, referring to and/or regarding your contention that "[t]he Surety has satisfied all conditions precedent necessary to filing each of the causes of action raised in this Complaint".

18.     A full and complete copy of Plaintiff's underwriting file, including, but not limited to, home office, regional office, local or other office, pertaining to the Performance Bond and Payment Bond from the time JMB's application was submitted up to and including the present.

19.     A full and complete copy of Plaintiff's claims file regarding the Performance Bond and Payment Bond.

20.     The complete claims manuals and/or procedures manuals, policy statements, documents, bulletins, communications or other memoranda which set forth Plaintiff's practices or policies regarding the handling, processing and/or investigation of performance bond and/or payment bond claims which were in effect or which were utilized by you from 2018 to the present.

21.     Any other documents and Correspondence, including, but not limited to, inter-

11

office memoranda, notes, files or reports outlining or describing Plaintiff's procedures for the handling, processing and investigation of payment bond and/or performance bond claims and which were in effect and/or which were utilized by you from 2018 to the present.

22.     All documents relating or evidencing Plaintiff's handling, review and/or investigation of claims made on the Performance Bond and/or Payment Bond.

23.     All documents and Communications relating to, referring to and/or regarding agreements, contracts and/or understandings between Plaintiff and JMB.

24.     All documents and Communications relating to, referring to and/or regarding all funds advanced by F&D to JMB for the Project.

25.     All documents and Correspondence relating to, referring to and/or regarding the payment of any amounts by F&D to any individual and/or entity in connection with the Project, Performance Bond and/or Payment Bond, including but not limited to checks, wire transfers, transaction registers and financial reports.

26.     All documents and Correspondence relating to, referring to and/or regarding the funds received by F&D from any individual and/or entity in connection with the Project, Performance Bond and/or Payment Bond.

27.      All documents and Correspondence relating to, referring to and/or regarding claims made by F&D for payment, indemnification and/or contribution against any individual and/or entity in connection with the Project, Performance Bond and/or Payment Bond.

28.     All documents and Communications relating to, referring to and/or regarding the Contract.

29.     All documents and Communications relating to, referring to and/or regarding the Project.

30.    All documents and Communications relating to, referring to and/or regarding the Project schedule.

31.    All documents and Communications relating to, referring to and/or regarding the critical path for the Project.

32.    All documents and Communications relating to, referring to and/or regarding any delay on the Project.

33.    All documents and Communications relating to, referring to and/or regarding the completion of work on the Project and/or under the Contract.

34.    All documents and Communications relating to, referring to and/or regarding correction and/or remediation of any defective and/or non-confirming work performed on the Project.

35.    All documents and Communications relating to, referring to and/or regarding the storm water system(s) for each building on the Project, including but not limited to:

(a)  the installation of trap guards in each apartment in each building on the Project;

(b)  the installation of pipes to the underground storm drainage main(s);

(c) the size(s) of piping, drains, laterals, conductors and storm drainage mains;

(d)  completion of the drainage system(s) connections to the main(s);

(e)  the storm drainage main in Building C on the Project being damaged;

(f)  installation of cleanouts on the horizontal drains and/or watertight plugs/caps installed on horizontal drains;

(g)  rocks, debris and other sediment in or around the underground storm drainage piping; and

(h)  location and accessibility of mechanical closet drains.

36.     All documents and Communications relating to, referring to and/or regarding repair and/or remediation of any portion of the storm water system(s) for each building on the Project.

37.     All documents and Communications relating to, referring to and/or regarding the windows installed in each building on the Project, including but not limited to, warranty(ies) for the windows, ASTM E283 test standards, window submittals, thermal glass and window seals, and silicone coated glazing.

38.     All documents and Communications relating to, referring to and/or regarding repair, remediation and/or replacement of the windows for each building on the Project.

39.     All documents and Communications relating to, referring to and/or regarding the roofs installed on each building on the Project, including but not limited to,

(a)  inspection and approval by the roof manufacturer;

(b)  punchlist items identified by the roof manufacturer or any other person or entity;

(c)  roof leaks; and

(d)  roof warranties.

40.     All documents and Communications relating to, referring to and/or regarding repair, remediation and/or replacement of the roofs for each building on the Project.

41.     All documents and Communications relating to, referring to and/or regarding leaks and/or water infiltration at the Project.

42.     All documents and Communications relating to, referring to and/or regarding the plumbing systems installed at each building on the Project, including but not limited to, shower drains, hose bib connections, pipe fittings, HVAC units, drain lines, toilets, dishwashers, bathroom fixtures, showers and/or plumbing manifolds.

43.     All documents and Communications relating to, referring to and/or regarding gas meters installed at the Project, including but not limited to, piping to the gas meters.

44.     All documents and Communications relating to, referring to and/or regarding elevators installed at the Project, including but not limited to, damage to the elevators.

45.     All documents and Communications relating to, referring to and/or regarding the electrical systems installed at the Project.

46.     All documents and Communications relating to, referring to and/or regarding duplex receptacles installed at each building on the Project.

47.     All documents and Communications relating to, referring to and/or regarding balcony fire sprinklers installed in each building on the Project.

48.     All documents and Communications relating to, referring to and/or regarding appliances installed in each building on the Project, including but not limited to, damages and/or missing components.

49.     All documents and Communications relating to, referring to and/or regarding secondary dryer lint taps installed in each building on the Project, including but not limited to, lint build-up behind traps and inside walls.

50.     All documents and Communications relating to, referring to and/or regarding the substituted materials installed at the Project without Main Street's or Project architect's approval, including but not limited to, sinks, phone jacks, sprinkler heads, expansion tanks, secondary lint traps.

51.     All documents and Communications relating to, referring to and/or regarding the location(s) of building systems and components to those systems installed in each building on the

15

Project.

52.    All documents and Communications relating to, referring to and/or regarding international, national and/or local electrical, plumbing, building and other codes, rules and regulations applicable to the work performed by JMB and/or its subcontractors on the Project.

53.    All documents and Communications relating to, referring to and/or regarding request(s) and/or applications for deviation from any international, national and/or local electrical, plumbing, building or other codes, rules or regulations applicable to the work performed by JMB and/or its subcontractors on the Project.

54.    All documents and Communications relating to, referring to and/or regarding the defective and non-conforming items identified in the preliminary Remedial Construction Cost Estimate issued on June 16, 2021.

55.    All documents and Communication relating to, referring to and/or regarding the following items on the Project:

      (a)  balcony decks in Buildings D, E and F;

      (b) leading door and yoga door repairs;

      (c) canopies at Buildings C, D, E and F;

      (d) Building D, E and F expansion water tanks;

      (e)  Building E irrigation leak;

      (f)  toilets installed at the Project;

      (g)  tub installation and tub cracks;

      (h)  ceiling fan installation;

      (i)  smoke detectors;

      (j)  fire alarm system; and

(k) mold and bacteria.

56.     All documents and Communications relating to, referring to and/or regarding substantial completion and/or denial thereof by the Project architect, of Buildings A, B and C on the Project by January 10, 2021.

57.     All documents and Communications relating to, referring to and/or regarding substantial completion and/or denial thereof by the Project architect, of Buildings D, E, and F on the Project by April 10, 2021.

58.     All documents and Communications relating to, referring to and/or regarding all punchlist items for the Project.

59.     All documents and Communications relating to, referring to and/or regarding the Notice to Cure.

60.      All documents and Communications relating to, referring to and/or regarding the Performance Bond.

61.     All documents and Communications relating to, referring to and/or regarding the Payment Bond.

62.     All documents and Communications relating to, referring to and/or regarding the Liquidated Damages Agreement.

63.     All documents and Communications relating to, referring to and/or regarding Beacon Consulting.

64.     All documents and Communications relating to, referring to and/or regarding the Project, the Performance Bond, the Payment Bond, the Notice of Default, the Notice to Cure and/or the Liquidated Damages Agreement.

65.     All documents and Communications relating to, referring to and/or regarding the

Notice of Default.

66.     All documents and Communications relating to, referring to and/or regarding the Notice of Contractor Default.

67.     All diaries and/or other documents relating to the events which occurred at the Project.

68.     All logs, diaries, labor reports, daily time sheets, or other documents reflecting the labor force used by JMB or any of its subcontractors in the performance of any work on the Project.

69.     All memoranda, reports, minutes, documents, information or databases of Project meetings, including pre-bid, pre-construction, coordination, progress, subcontractor, safety or other meetings between any persons performing work on the Project.

70.     All documents and Communications relating to, referring to and/or regarding requests for payment made by JMB and/or F&D to Main Street on the Project.

71.     All documents and Communications relating to, referring to and/or regarding payments made by Main Street to JMB and/or F&D on the Project.

72.     All documents and Communications relating to, referring to and/or regarding the claim that there remain contract balances due and owing to JMB and/or F&D.

73.     All cost reports, whether final or interim, concerning the work performed by JMB, its subcontractors, material suppliers, or laborers on the Project.

74.     All documents regarding any company and/or person who performed work on the Project, including but not limited to all contracts, subcontracts, change orders, work orders, material purchase orders, and other similar documents, as well as all invoices and payment documentation.

75.     All photographs and video pertaining to the Project, including negatives, electronic

disks or files.

76.     All change orders, field orders, work orders, construction change directives and proposals for extra work or changes in the work on the Project, whether or not approved and whether or not actually performed by JMB or any party with whom it had a contractual relationship, and any other document relating to extra work or changes in the work.

77.     All documents, drawings, information or databases depicting or purporting to depict "as-built" conditions for this Project or the work performed by JMB.

78.     All daily reports, field reports, logs, records, diaries, and other documents, reflecting the progress, conditions and activities on the Project.

79.     All logs, documents, information or databases concerning submittals, shop drawings and samples submitted by JMB and its subcontractors, suppliers and vendors.

80.     All design documents, including Project concept descriptions, design criteria, specifications, preliminary and schematic drawings, diagrammatic drawings, working drawings, design calculations and related documents.

81.     All requests for information, interpretation and clarification of the contract documents, plans, specifications and all related logs, files and responses.

82.     All records relating to the procurement, fabrication and delivery of material and equipment to the Project.

83.      All final and draft reports prepared by any person and/or entity in connection with an investigation or inspection of any portion of the Project.

19

84.     All documents and Communication relating to, referring to and/or regarding the inspection performed by Allied Electric at the Project.


85.     All documents and Communications between F&D and any person or entity which conducted an investigation or inspection of any portion of the Project.

86.     All internal memoranda, correspondence, documents, information or databases prepared by or used for scheduling, monitoring, reviewing or coordinating the Project.


KAPLIN STEWART


_____
Marc B. Kaplin, Esquire
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
mkaplin@kaplaw.com
sfeltes@kaplaw.com


Steven M. Coren, Esquire
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA  19103
(215) 735-8700
(215) 735-5170 facsimile
scoren@kcr-law.com

Attorneys for Defendants

20

21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT COMPANY    :
OF MARYLAND,    :
    : No.  21-CV-3576
       Plaintiff,    :
    :
       v.    :
    :
MAIN STREET PHASE II, L.P.  and    :
MAIN STREET PHASE III, L.P.,    :
       Defendants.    :

## **CERTIFICATE OF SERVICE**

I, Sandhya M. Feltes, Esquire, do hereby certify that on April 27, 2022, a true and correct copy of Defendants' First Request for Production of Documents Directed to Plaintiff was served on the following via Email:

Noah H. Charlson, Esq.
Charlson Braber McCabe & Denmark, P.C.
1628 JFK Blvd., suite 1803
Philadelphia, PA 19103

Christopher J. Brasco, Esquire
Noah R. Meissner, Esquire
Adam M. Tuckman, Esquire
Watt Tieder Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 100
McLean, VA 22102

KAPLIN STEWART

Marc B. Kaplin, Esquire
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
sfeltes@kaplaw.com

22

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT COMPANY : 
OF MARYLAND, :
: No.  21-CV-3576
      Plaintiff, :
:
      v. :
:
MAIN STREET PHASE II, L.P.  and :
MAIN STREET PHASE III, L.P., :
      Defendants. :

## CERTIFICATE OF SERVICE

I, Sandhya M. Feltes, Esquire, do hereby certify that on June 13, 2022, a true and correct copy of Defendants' Motion to Compel Plaintiff's Answers to Interrogatories and Responses to Request for Production of Documents was served on the following via ECF Electronic Notification

Noah H. Charlson, Esq.
Charlson Braber McCabe & Denmark, P.C.
1628 JFK Blvd., suite 1803
Philadelphia, PA 19103

Christopher J. Brasco, Esquire
Noah R. Meissner, Esquire
Adam M. Tuckman, Esquire
Watt Tieder Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 100
McLean, VA 22102

KAPLIN STEWART

/s/  Sandhya M. Feltes
Sandhya M. Feltes, Esquire
910 Harvest Drive
Blue Bell, PA 19422
(610) 941-2561
(610) 684-2011 facsimile
sfeltes@kaplaw.com
Attorneys for Defendants