IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **FIDELITY AND DEPOSIT COMPANY OF MARYLAND,**<br><br>    Plaintiff,<br><br>    v.<br><br>**MAIN STREET PHASE II, L.P., et al.,**<br><br><br>    Defendants. | <br><br><br><br><br>Case No: 2:21-cv-03576-WB |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIM WITH PREJUDICE, OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION**

Plaintiff Fidelity and Deposit Company of Maryland ("F&D") respectfully submits this Reply in Further Support of its Motion to Dismiss the Counterclaim filed by Defendants Main Street Phase II, L.P. and Main Street Phase III, L.P. (collectively, "Main Street"), with prejudice, or in the alternative, to compel arbitration in accordance with Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.[1]

I.      **INTRODUCTION**

In opposition to F&D's Motion to Dismiss, or in the Alternative, to Compel Arbitration ("Motion") of its Counterclaim (Dkt. No. 36), Main Street agrees with F&D that the Chester County Court's Order, dated November 24, 2021, is a final state court order that confirms arbitration is the forum for litigation of the liquidated damages and defect/warranty claims that Main Street has asserted against F&D with respect to the Project. (Main Street Br. in Opp. to

_____

[1] In this Reply, F&D relies upon all defined terms in its Memorandum in Support of its Motion to Dismiss.

F&D's Mot. to Dismiss ("Opposition" or "Opp." 1, 10).)[2]  As the Counterclaim seeks to reassert

those same claims against F&D in this Court (while also pursuing those claims in arbitration), the

Full Faith and Credit statute, 28 U.S.C. § 1738, and the companion issue preclusion doctrine,

necessarily require the dismissal of Main Street's Counterclaim from this action.

By not disputing F&D's alternative motion to compel arbitration under the FAA (9 U.S.C.

§ 4), Main Street further concedes (as it must) that the parties' arbitration agreement covers the

allegations in its Counterclaim, consistent with the Chester County Court's Order.  Nor could Main

Street legitimately contest the arbitrability of its alleged claims against F&D.  Main Street already

submitted the same exact claims alleged against F&D to arbitration in January 2022 – four months

prior to filing its Counterclaim in this Court.  It has since represented to the arbitrators that "[t]he

arbitrability of Owner's claims has been fully and finally decided.  Relitigating the scope of the

arbitration provision is barred by the doctrine of collateral estoppel."  (Mem. in Supp. of Mot. to

Dismiss 12.)

Yet, Main Street opposes F&D's Motion to Dismiss and seeks to litigate *the same exact*

*arbitribal claims* in this action via a Counterclaim.  (Dkt. No. 41.)  Main Street offers two baseless

explanations for why it should be permitted to maintain its Counterclaim against F&D, even as it

recognizes that the "plain language of Judge Sommer's Order mandates that Owner [Main Street]

---

[2] While acknowledging that the Chester County Court's Order is final and requires arbitration of the claims it has raised against F&D, Main Street nonetheless presses an unsupported interpretation of the Chester County Court's Order that would require "all claims and damages arising out of the Construction Contract, the Liquidated Damages Agreement and F&D's Performance Bond" to be arbitrated.  (Opp. 1.)  That statement does not reflect the ruling of the Chester County Court.  The Chester County Court decided only that the specific claims and allegations presented by Main Street in its original state court complaint were arbitrable.  The Court did not examine, nor decide, whether any other issues, claims or disputes between the parties, are arbitrable.  (See Dkt. No. 29, F&D Opp. to Mot. to Dismiss 9, 22 – 26.)  Nonetheless, it is immaterial to F&D's pending Motion to Dismiss whether the parties' arbitration agreement extends to issues, claims, or disputes, beyond those presented by the Counterclaim.  As Main Street's allegations in the Counterclaim are subsumed within Main Street's unduly expansive reading of the Chester County Court's analysis of the parties' arbitration agreement, both parties agree that the Chester County Court's Order requires Main Street to arbitrate its allegations against F&D.

must prosecute its claims against JMB and F&D only through binding arbitration." (Mem. in Supp. of Mot. to Dismiss 11.)  As discussed more fully below, neither of Main Street's arguments present any legitimate, principled legal basis for permitting Main Street to forge ahead with a Counterclaim of the same exact claims that it is simultaneously pursing in arbitration.  The Court, therefore, should reject Main Street's Opposition, grant F&D's Motion, and dismiss the Counterclaim and/or refer it to Main Street's previously initiated arbitration.

II.   **BECAUSE MAIN STREET'S CLAIMS AGAINST F&D ARE ARBITRABLE, THE CLAIMS ARE NOT COMPULSORY COUNTERCLAIMS UNDER RULE 13(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Main Street first contends that it was forced to file a Counterclaim in this action or risk having its claims against F&D barred "at a later time or in another forum" under the compulsory counterclaim rule found in Fed. R. Civ. P. 13(a). (Opp. 15 – 19.)  While Main Street spends much of its brief arguing that its claims "arise out of the same transaction and occurrence" as F&D's Complaint, any commonality that may exist is beside the point.   Even if Main Street's claims arise out of the same transaction and occurrence (which F&D does not concede), Main Street's claims fall outside the scope of a compulsory counterclaim because the claims are subject to an arbitration agreement.  See Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp., 589 F.2d 1214 (3d Cir. 1978).

The relevant dispute in the Bristol case involved whether a lessee, who was a party to prior litigation with a lessor over disputes relating to their lease agreement, was barred by res judicata from arbitrating its affirmative claims against the lessor because it did not bring those claims as a compulsory counterclaim in the parties' earlier court case. Id. at 1216 – 17.  Furthering the "strong public policy in favor of arbitration," the Third Circuit held that res judicata did not apply to the prior litigation and, consequently, the lessee's claims could be asserted in arbitration pursuant to

the parties' arbitration agreement in their lease.  Id. at 1221.  As the foundation for its decision, the Third Circuit relied upon Local 11, Int'l Bhd. of Elec. Workers, AFL-CIO v. G.P. Thompson Elec., Inc., 363 F.2d 181 (9th Cir. 1966), in which the Court of Appeals for the Ninth Circuit held that a party did not waive its contractual right to arbitrate by not raising arbitrable claims in a prior litigation.  Id. at 1221 (citing Local 11 IBEW, 363 F.2d at 185).  Adopting the reasoning of Local 11 IBEW, the Third Circuit explained in Bristol that the compulsory counterclaim rule does not supersede, or nullify, arbitration agreements because the "desired intent and purpose of arbitration agreements could be effectively frustrated" if a party to a dispute could offensively use the compulsory counterclaim procedure to bar future arbitration of arbitrable claims.  Id.

Main Street quoted Bristol for the general proposition that the compulsory counterclaim rule seeks to settle all related claims in one action (Opp. 18), but it left out the punch line.  Main Street did not address that the Third Circuit actually held in Bristol that the compulsory counterclaim rule does not bar subsequent arbitrations of claims that otherwise would have been compulsory in court.  (Compare Bristol, 589 F.2d at 1221 to Opp. 18.)  The Third Circuit explained that its holding furthers the same goals as the compulsory counterclaim rule, i.e. avoiding a wasteful multiplicity of litigation and fostering judicial economy, "since court time need not be expended in proving the counterclaim."  Id. (internal quotations and citations omitted).[3]

Succinctly stated, Bristol firmly establishes that the compulsory counterclaim rule and related res judicata doctrine yields to arbitration agreements to advance the "strong public policy

---

[3] Several other courts have held that the res judicata effect of the compulsory counterclaim rule does not apply when the parties are contractually obligated to litigate disputes in another forum, including arbitration.  See also Woodmen of the World Life Ins. Co. v. Lewis, 118 Fed. Appx. 826 (5th Cir. 2004) (finding no authority exists to transform an arbitrable claim into a non-arbitrable one because it is asserted as a compulsory counterclaim under the Federal Rules); Publicis Commc'n v. True North Commc'ns. Inc., 132 F.3d 363, 366 (7th Cir. 1997) (a party to a forum selection clause may not raise in a different forum, even as a compulsory counterclaim, a dispute within the scope of that clause); Fur Dressers Union Local 2F v. DeGeorge, 462 F. Supp. 890 (M.D. Pa. 1978) (explaining that claims within an arbitration clause are not compulsory counterclaims within Rule 13(a) and that a contrary rule would frustrate the intent and purpose of an arbitration agreement).

in favor of arbitration."  Bristol, 589 F.2d at 1220.  Rather than advance Main Street's attempt to

maintain its claims against F&D in this action, Bristol, thus, directly rejects it.  Given the holding

of Bristol, there is no legitimate basis grounded in the rule of compulsory counterclaims and related

doctrines for Main Street to assert identical claims against F&D in arbitration and in this action.

Based on Bristol, the Court should reject Main Street's contention that it was "required to bring its

claims against F&D as Counterclaims in this action or be barred from asserting those claims at a

later time or in another forum."  (Opp. 19.)

## III.   THE ARBITRATION COMMENCED BY MAIN STREET IS THE PROPER FORUM TO RESOLVE ALL OF MAIN STREET'S CLAIMS THAT HAVE BEEN ALLEGED IN THE COUNTERCLAIM

Next, Main Street attempts to justify its Counterclaim by casting the blame on F&D.  Main

Street claims that F&D has made inconsistent statements about the scope of the arbitrators'

jurisdiction.  It worries that, if the arbitrators were to adopt F&D's purported position that their

powers are limited to only distributing escrowed funds, there would be "an artificial cap" on Main

Street's claimed damages, with no forum in which Main Street could recover the full extent of its

alleged damages if it prevails.  Based on the errant premise that F&D intends to deny Main Street

a forum to fully litigate its claims, Main Street then invites this Court to ignore the parties'

arbitration agreement and permit its Counterclaim.  This argument is misplaced because it does

not represent F&D's position regarding the Panel's jurisdiction.

Accurately presented, the issue raised in Main Street's Opposition – whether the arbitration

Panel's jurisdiction permits the award of damages to any party that exceeds the amount deposited

in the escrow account (once Main Street fulfills this obligation) – has never been submitted by the

parties to any forum for decision.  Thus, the selective quotes that Main Street presents on pages 21

and 22 of its Opposition were not made in reference to the jurisdictional question that Main Street

posits in its Opposition as the reason for filing a Counterclaim that is identical to the claims it is

simultaneously pressing in arbitration.  The table is simply a list of cherry-picked, irrelevant quotes

that Main Street has taken out of context.

F&D is addressing Main Street's new issue regarding the Panel's jurisdiction for the first

time here in this Reply.  F&D maintains that the arbitration Panel must determine the distribution

of the disputed contract funds that belong in the escrow account by deciding whether Main Street's

bases for withholdings are improper or proper.  F&D further maintains that, as long as the Panel's

decision resolves the parties' disputes regarding the bases for Main Street's withholdings and

thereby distributes funds in escrow, the Panel's jurisdiction under Section II.15 of the Agreement

also extends to awarding damages to any party (i.e. F&D or Main Street) beyond the amount

deposited into the escrow account (assuming liability exists and damages are otherwise legally

awarded).  In other words, F&D does not contend that a jurisdictional damages cap exists in

arbitration for any arbitrable claims.  As F&D concurs with Main Street that its claims in its

Arbitration demand will be arbitrable without any jurisdictional cap (for any party) once Main

Street deposits the disputed contract funds in escrow,[4] Main Street must now acknowledge that its

Counterclaim serves no purpose and must not proceed in Court, but rather, in arbitration.

Although the foregoing resolves Main Street's contrived jurisdictional concern, F&D is

compelled to address Main Street's brazen accusation against F&D of bad faith concerning the

proper forum for claims that Main Street has filed in three different forums (state court, the AAA,

and now this Court).  When making its accusations of bad faith against F&D, Main Street has

blended two distinct inquiries that occur when the arbitrability of a claim or dispute is in question

---

[4] The arbitration tribunal is presently considering the parties' dispute whether the claims Main Street has alleged are
presently ripe for arbitration, or whether, as F&D maintains, that the claims alleged must be deferred until after Main
Street funds the escrow account that is the subjection of this action before the Court.  Thus, the arbitrators will be
deciding *when and under what conditions*, Main Street's asserted claims are arbitrable, and not *if* the claims are
arbitrable.  The question of *if* the claims alleged are arbitrable was previously decided by the Chester County Court.
Nothing in this Reply should be construed as suggesting Main Street's claims are presently ripe for arbitration.

– 1) the scope of the arbitration provision, and 2) whether the arbitration provision applies to the claim or dispute at issue.  Regarding the former inquiry, F&D has consistently maintained that the scope of the arbitration provision in Section II.15 of the parties' Agreement is narrow in the sense that the arbitration clause does not apply to every possible dispute between the parties.  See Compucom Sys. Inc. v. Getronics Fin. Holdings B.V., 635 F. Supp. 2d 371, 378 (D. Del. 2009) ("Broad arbitration provisions are generally defined as those that apply to any dispute arising from an agreement.  Narrow arbitration provisions, on the other hand, have been found to expressly limit the range of arbitrable disputes to a single category or function").  It is entirely consistent for F&D to maintain that the arbitration agreement is narrow in scope but that it broadly applies to the specific claims that Main Street has alleged.  In that way, F&D's interpretation is right in line with the conclusion of the Chester County Court.  In its Order, the Chester County Court stated that Section II.15 of the Agreement "broadly encompasses any disputes that arise with regard to liquidated damages that are assessed or the basis for withholding funds that are paid into the Escrow Account.  The court agrees with F&D that Main Street's claims against F&D and JMB fall squarely within the scope of Section II.15."  (Mem. in Supp. of Mot. to Dismiss, Ex. A at 7.)

Far from constituting bad faith, F&D's position is a defensible, consistent, and correct interpretation of the parties' arbitration agreement (as found by the Chester County Court).  The Court should, therefore, reject Main Street's judicial estoppel theory.  Bensalem Lodging Assocs., LLC v. Holiday Hospitality Franchising, LLC, 20121 WL 5882113, at *4, n. 6 (for judicial estoppel to apply, the two positions taken must be "irreconcilably inconsistent.")

IV.     **CONCLUSION**

The grounds for dismissal, or referral of the Counterclaim to arbitration, are simple.  By filing its Counterclaim, Main Street has violated an unappealable, final order of the Chester County Court that determined Main Street's liquidated damages and construction defect/warranty claims against F&D are subject to an agreement to arbitrate between the parties.  Main Street readily acknowledges that the state court order fully and finally decided that those claims must be resolved only through binding arbitration.  It doubled down on the finality and authority of the state court's decision by subsequently filing, on January 7, 2022, a demand with the AAA to commence the arbitration process for its claims.  The Chester County Court's Order must be given preclusive effect under the Full Faith and Credit Statute, 28 U.S.C. § 1738 on the question whether Main Street may now press its identical claims in court rather than arbitration.  Alternatively, 9 U.S.C. § 4 requires enforcement of the parties' arbitration agreement and a referral of the Counterclaim to the arbitration where Main Street's identical claims are already pending.  Nothing in Main Street's Opposition justifies any different conclusion.

Thus, for the reasons set forth in its Memorandum and in this Reply, F&D respectfully requests that the Court grant is Motion and either dismiss Main Street's Counterclaim with prejudice, or compel arbitration of Counterclaim consistent with the Chester County Court's Order.

Dated: June 22, 2022                              Respectfully Submitted,

/s/ *Noah H. Charlson*

Noah H. Charlson
Charlson Braber McCabe & Denmark, P.C.
1628 JFK Blvd., Suite 1803
Philadelphia, PA 19103
Tel: 215-447-7401
noah@charlsonlaw.com

Christopher J. Brasco, *pro hac vice*
Adam M. Tuckman, *pro hac vice*
Noah C. Meissner, *pro hac vice*
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, VA 22102
Tel: 703-749-1000
cbrasco@watttieder.com
atuckman@watttieder.com
nmeissner@watttieder.com

*Attorneys for Plaintiff*
*Fidelity and Deposit Company of Maryland*

## <u>CERTIFICATE OF SERVICE</u>

I certify, that on the 22nd day of June, 2022, the foregoing Reply Memorandum in Further Support of F&D's Motion to Dismiss, or in the Alternative, to Compel Arbitration, was served upon the following by the Court's ECF system:

Sandhya M. Feltes
Kaplin Stewart
910 Harvest Drive
Blue Bell, PA 19422

Steven M. Coren
Kaufman, Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103

*Attorneys for Defendants*

/s/
Noah H. Charlson